IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| VALEO NORTH AMERICA, INC., | |
| Plaintiff, | Court No. 21-00581 |
| v. | |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

**COMPLAINT**

Plaintiff, Valeo North America, Inc. ("Valeo"), a U.S. manufacturer of automotive heating and cooling systems and an importer of certain heat-treated T-series aluminum sheet, by and through its counsel, brings this action against the United States. Plaintiff alleges and states as follows:

**Introduction**

1. Valeo is part of the Valeo Group, a global designer, manufacturer and supplier of auto parts with manufacturing facilities, research and design centers, and sales and distribution offices in over thirty countries. In the United States, Valeo manufactures automotive heating and cooling systems and imports certain heat-treated T-series aluminum sheet from the People's Republic of China ("China") to manufacture components for automotive heat exchangers as well as heat, ventilation and air conditioning systems.

2. Certain antidumping and countervailing duty orders cover certain aluminum common alloy sheet from China. *See Common Alloy Aluminum Sheet from the People's Republic of China*, 84 Fed. Reg. 2,813 (Dep't of Commerce February 8, 2019) (antidumping duty order), and 84 Fed. Reg. 2,157 (Dep't of Commerce February 6, 2019) (countervailing duty order) (collectively, the "Orders").

3. Within 45 days of the date of receipt of an application for a scope ruling, Commerce is required by regulations to either (1) issue a final ruling under 19 C.F.R. §351.225(d) (April 1, 2021), *i.e.*, a ruling based upon the scope ruling application and descriptions of merchandise referred to in 19 C.F.R. §351.225(k)(1), or (2) initiate a scope inquiry under 19 C.F.R. §351.225(e), *i.e.*, considering additional factors under 19 C.F.R. §351.225(k)(2). *See* 19 C.F.R. §351.225(c)(2).

4. Valeo submitted a scope ruling request to the U.S. Department of Commerce ("Commerce"), on May 1, 2020. demonstrating that heat-treated T-series sheet is outside the scope of the Orders. *See* Letter from Crowell & Moring LLP to Sec'y of Commerce, *Common Alloy Aluminum Sheet from the People's Republic of China: Request for Scope Ruling on Heat-Treated T-Series Aluminum Sheet*, Case Nos. A-570-073; C-570-074 (May 1, 2020) (ACCESS Barcode: 3970516-01) ("1st Scope Ruling Request").

5. On June 5, 2020, August 7, 2020, and March 24, 2021, Valeo provided supplemental information in response to inquiries from Commerce. *See* Letter from Crowell & Moring LLP to Sec'y of Commerce, *Common Alloy Aluminum Sheet from the People's Republic of China: Request for Scope Ruling on Heat-Treated T-Series Aluminum Sheet*, Case Nos. A-570-073; C-570-074 (June 5, 2020) (ACCESS Barcode: 3982800-01) ("2nd Scope Ruling Request"); Letter from Crowell & Moring LLP to Sec'y of Commerce, *Common Alloy Aluminum Sheet from the People's Republic of China: Request for Scope Ruling and Response to Supplemental Questionnaire on Heat-Treated T-Series Aluminum Sheet*, Case Nos. A-570-073; C-570-074 (August 7, 2020) (ACCESS Barcode: 4013607-01) ("3rd Scope Ruling Request"); Letter from Crowell & Moring LLP to Sec'y of Commerce, *Common Alloy Aluminum Sheet from the People's Republic of China: Request for Additional Information*, Case Nos. A-570-073;

C-570-074 (March 23, 2021) (ACCESS Barcode: 4102655-01) ("4th Scope Ruling Request") (submitted after hours and considered to be a submission of March 24).

6. In response to Valeo's scope ruling requests, Commerce neither issued a final scope ruling based upon application and factors under 19 C.F.R. §351.225(k)(1) nor did it initiate a formal scope inquiry to consider additional factors under 19 C.F.R. §351.225(k)(2) within the applicable time limit. Instead, Commerce either rejected Valeo's scope ruling requests (thereby resetting the 45-day deadline) or extended the deadline under 19 C.F.R. §351.302(b) ("Unless expressly precluded by statute, {Commerce} may, for good cause, extend any time limit established by this part.").

7. On June 3, 2020, Commerce rejected Valeo's first scope ruling application alleging errors in Valeo's bracketing of business proprietary information, company certification, and certificate of service. *See* Letter from Commerce to Crowell & Moring LLP, *Rejection of Requests for a Scope Inquiry on Heat-Treated T-Series Aluminum Sheet*, Case Nos. A-570-073; C-570-074 (June 3, 2020) (ACCESS Barcode: 3981743-01) ("1st Rejection of Scope Ruling Request").

8. On July 20, 2020, Commerce rejected Valeo's second scope ruling application filed on June 5, 2020, and issued supplemental questions for Valeo to address when resubmitting its application. *See* Letter from Commerce to Crowell & Moring LLP, *Common Alloy Aluminum Sheet from the People's Republic of China: Supplemental Questionnaire on Heat-Treated T-Series Aluminum Sheet*, Case Nos. A-570-073; C-570-074 (July 20, 2020) (ACCESS Barcode: 4003318-01) ("2nd Rejection of Scope Ruling Request"). In its supplemental questionnaire, Commerce stated that "the record of this scope inquiry does not currently contain all information required to make a scope ruling." Furthermore, Commerce requested information concerning the

"heat treatment and/or annealing process which the heat-treated T-series aluminum sheet undergoes," the "distinction between 'heat treatment' and 'annealing' for Valeo's T-series aluminum sheet," when heat-treatment or annealing occurs in the production process, and whether in the production of heat-treated T-series aluminum sheet "the temperature of the aluminum sheet {is} increased to temperatures at or above 850° Fahrenheit." *Id.* at 4.

9. On August 7, 2020, Valeo submitted its third scope ruling application which included responses to Commerce's supplemental questions. *See* 3rd Scope Ruling Request.

10. On September 18, 2020, Commerce extended the 45-day regulatory deadline by 45 days for "good cause." *See* Letter from Commerce to Crowell & Moring LLP, Case Nos. A-570-073; C-570-074 (Sept. 18, 2020) (ACCESS Barcode: 4029697-01) (extension of scope ruling). Commerce's letter did not detail the basis justifying the "good cause" extension. On November 2, 2020, Commerce extended the deadline again by 45 days for "good cause." *See* Letter from Commerce to Crowell & Moring LLP, Case Nos. A-570-073; C-570-074 (Nov. 2, 2020) (ACCESS Barcode: 4047583-01) (extension of scope ruling). Commerce's letter again did not detail the basis justifying the "good cause" extension. On December 17, 2020, Commerce extended that deadline again by 45 days for "good cause" to February 3, 2021. *See* Letter from Commerce to Crowell & Moring LLP, Case Nos. A-570-073; C-570-074 (Dec. 17, 2020) (ACCESS Barcode: 4066396-01) (extension of scope ruling). As with the previous two instances, Commerce's letter did not detail the basis justifying the "good cause" extension.

11. On February 3, 2021, Commerce again rejected Valeo's scope ruling application and issued another supplemental questionnaire containing questions to be addressed in the next application. *See* Letter from Commerce to Crowell & Moring LLP, *Common Alloy Aluminum Sheet from the People's Republic of China: Second Supplemental Questionnaire on Heat-*

*Treated T-Series Aluminum Sheet*, Case Nos. A-570-073; C-570-074 (Feb. 3, 2021) (ACCESS Barcode: 4083979-01) ("3rd Rejection of Scope Ruling Request").  In its supplemental questionnaire, Commerce stated that "the record of this scope inquiry does not currently contain all information required to make a scope ruling."  In that regard, Commerce requested information concerning the following:  the differences between the "diffusion and integration of particles between original boundaries" from the "diffusion between the core and cladding" as described by the Aluminum Association; whether "the proprietary core of Valeo's T-series aluminum sheet have a higher melting point than the 4045 aluminum alloy outer layers"; mechanical properties for "heat-treated T-series aluminum sheet and pre-heat-treated center/inner layer of T-series aluminum"; and steps taken after importation "to change the imported heat-treated T-series sheet from an intermediate product to a finished brazing sheet."  *Id.* at 3-5.

12.     Notwithstanding its failure to issue a scope ruling under 19 C.F.R. § 351.225(k)(1) or initiate a formal scope inquiry pursuant to 19 C.F.R. § 351.225(k)(2) as required by its regulations, Commerce's supplemental questions revealed that it had transitioned into an analysis of the (k)(2) factors, *e.g.*, the physical characteristics of the product.  *Id.*

13.     On March 24, 2021, Valeo submitted its fourth scope ruling application, this time requesting a formal scope ruling and consideration of the factors under 19 C.F.R. §351.225(k)(2) ("(k)(2)" factors).  *See* 4th Scope Ruling Request.

14.     Commerce extended its 45-day deadline for "good cause" three times: first on May 10, again on June 22, and then yet again on August 6, 2021.  *See* Letter from Commerce to Crowell & Moring LLP, Case Nos. A-570-073; C-570-074 (May 10, 2021) (ACCESS Barcode: 4119631-01) ("1st Extension on 4th Scope Ruling Request"); Letter from Commerce to Crowell

& Moring LLP, Case Nos. A-570-073; C-570-074 (June 22, 2021) (ACCESS Barcode: 4135945-01) ("2nd Extension on 4th Scope Ruling Request"); Letter from Commerce to Crowell & Moring LLP, Case Nos. A-570-073; C-570-074 (Aug. 6, 2021) (ACCESS Barcode: 4150473-01) ("3rd Extension on 4th Scope Ruling Request").  None of the extension letters detailed the basis for the "good cause" justifying the extensions.

15.     On August 17, 2021, Valeo filed its complaint in Court No. 21-00426 challenging Commerce's lack of good cause for serially violating the regulatory deadlines that resulted in an unreasonable delay of either the issuance of a scope ruling based upon the application under 19 C.F.R. § 225(d) or the initiation of a scope inquiry under 19 C.F.R. § 225(e).

16.     On September 20, 2021, Commerce again extended its deadline by 45 days for "good cause" to November 4, 2021.  *See* Letter from Commerce to Crowell & Moring LLP, Case Nos. A-570-073; C-570-074 (Sept. 20, 2021) (ACCESS Barcode: 4162459-01) ("4th Extension on 4th Scope Ruling Request").

17.     On October 15, 2021, Commerce issued a memorandum asserting that Valeo's T-series aluminum was in scope.  Commerce's determination was issued in an unpublished memorandum.  *See* Memorandum, from Frank Schmitt, Case Analyst, Office VI, AD/CVD Operations, to Scot Fullerton, Associate Deputy Assistant Secretary for Antidumping and Countervailing Duty Operations, *Antidumping and Countervailing Duty Orders on Aluminum Sheet from the People's Republic of China; Final Scope Ruling Determination: Valeo's Heat-Treated T-Series Aluminum Sheet*, Case Nos. A-570-073; C-570-074 (Oct. 15, 2021) (ACCESS Barcode: 4172205-01) ("Decision Memorandum").

## Administrative Decision To Be Reviewed

18.Valeo brings this action to contest Commerce's failure to either (1) issue a final scope ruling based upon an application of the (k)(1) factors or (2) initiate a formal scope inquiry to consider (k)(2) factors within the regulatory time period.

## Jurisdiction

19.The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c), which confers "exclusive jurisdiction" to the Court over "any civil action commenced under section 516A {} of the Tariff Act of 1930," as amended (the "Act"), *i.e.*, 19 U.S.C. § 1516a. This action is commenced under 19 U.S.C. § 1516a(a)(2)(A)(ii) and (B)(vi).

## Standing

20.Valeo is an importer of aluminum alloy sheet from China. Valeo participated in the scope proceeding that is the subject of this action through submission of the scope ruling requests, questionnaire responses, and arguments. Valeo therefore is an interested party and party to the proceeding within the meaning of 19 U.S.C. § 1677(9)(A) and has standing to bring this action under 28 U.S.C. § 2631(c) and 19 U.S.C. § 1516a(d).

## Timeliness

21.A plaintiff must commence an action under 28 U.S.C. § 1581(c) and 19 U.S.C. § 1516a(a)(2)(A)(ii) and (B)(vi) "{w}ithin thirty days after – the date of mailing of a determination described in clause (vi) of subparagraph (B)" {*i.e.*, a determination as to "whether a particular type of merchandise is within the class or kind of merchandise"}. Commerce mailed its determination on October 15, 2021. This action is timely because it is commenced within thirty days of October 15, 2021, by filing the summons and complaint on November 12, 2021.

**Background**

22. Paragraphs 1 to 21 are incorporated herein by reference.

23. The Orders covering certain aluminum common alloy sheet from China were issued in February 2019. The plain language of the Orders provides that the scope covers both clad (*i.e.*, multi-alloy) and un-clad aluminum sheet, but specifies that the covered un-clad sheet is "manufactured from a 1XXX-, 3XXX-, or 5XXX-series alloy as designated by the Aluminum Association," and the covered clad sheet is produced from a 3XXX-series core, "to which cladding layers are applied to either one or both sides of the core." *Common Alloy Aluminum Sheet from the People's Republic of China*, 84 Fed. Reg. 2,813 (Dep't of Commerce February 8, 2019) (antidumping duty order).

24. Valeo submitted four successive scope ruling requests explaining that its heat-treated T-series aluminum sheet is not covered by the scope of the Orders because it is not manufactured from a designated 1XXX-, 3XXX-, or 5XXX-series alloy. *See* 1st Scope Ruling Request; 2nd Scope Ruling Request; 3rd Scope Ruling Request; 4th Scope Ruling Request. Additionally, Valeo argued that its heat-treated T-series aluminum sheet is not covered by the scope of the Orders because the underlying investigation did not encompass alloys that are heat treated. *Id.*

25. Valeo's fourth scope ruling application included responses to two supplemental questionnaires with detailed data regarding the physical properties of Valeo's product, that are to be analyzed pursuant to 19 CFR 351.225(k)(2)(i) ("{t}he physical characteristics of the product"). The physical characteristics submitted by Valeo at the Department's request extend well beyond the "descriptions of the merchandise" contained in the petition, the original investigation, and prior determinations by Commerce (including prior scope determinations) and

the U.S. International Trade Commission ("Commission") and as such are beyond the ambit of the factors set out in 19 C.F.R. § 351.225(k)(1).  *See* 4th Scope Ruling Request.

26. Commerce refused to issue a scope ruling based upon Valeo's application pursuant to 19 C.F.R. § 351.225(k)(1) and yet also refused to initiate a formal scope inquiry to consider the additional (k)(2) factors, notwithstanding the fact that it requested and analyzed (k)(2) factors.  *See* 1st Extension on 4th Scope Ruling Request; 2nd Extension on 4th Scope Ruling Request; 3rd Extension on 4th Scope Ruling Request; 4th Extension on 4th Scope Ruing Request.

27. In its Decision Memorandum, Commerce determined that Valeo's heat-treated T-series aluminum sheet are clad sheet with a 3xxx-series core as designated by the Aluminum Association and thus covered by the scope of the orders.  Commerce engaged in extensive analysis of the series of aluminum alloys designated by the Aluminum Association, distinctions between clad and un-clad aluminum, and heat treated and non-heat-treated products, to reach its determination that Valeo's merchandise was subject to the Orders.  Commerce relied on its analysis of the physical characteristics of the product rather than simply relying on the description and scope language, thus revealing that it was in fact conducting a "(k)(2)" analysis despite not having initiated the requisite inquiry.

28. Commerce relied on the physical characteristics to interpret the terms of the scope – not to determine whether Valeo's products meets those terms.

29. Commerce also discussed the end use of the product, again suggesting a "(k)(2)" analysis.  Decision Memorandum at 20 ("Valeo also argues that its T-series aluminum sheet is an intermediate product….").

30. Commerce defined a "clad" product as one consisting of a core and metallurgically bonded layers wherein some diffusion between the core and each layer takes

place. *Id.* at 12. Commerce then concluded that clad and "heat-treated" are mutually exclusive but provided no support for this conclusion. Commerce misinterpret the associated technical terms. What it defined as "cladding" is actually diffusion-annealing, which is not the same as cladding.

31. Without determining or quantifying the extent of diffusion needed to convert clad into un-clad alloy, Commerce found that Valeo's heat-treated T-series aluminum sheet are clad because the manganese content is higher near the center and the silicon content is higher near the surface of the product after the heat treatment. *Id* at 11. Commerce provided no explanation of how these facts supported this conclusion.

32. Commerce found that the Aluminum Association does not have a 3xxx-series alloy identical to Valeo's product. *Id.* at 14.

33. Commerce interpreted that 3xxx-series alloy means any alloy with manganese as the main alloying element. To make this interpretation, Commerce relied on the Aluminum Association's publications and declarations of the Vice President of Standards and Technology for the Aluminum Association submitted by certain domestic producers in the proceeding at issue. *See* Decision Memorandum at 11. Commerce conflated the terms "group" and "series" to find that the first numerical digit designating a particular group based on primary alloying element meant that all aluminum sheet with primarily that alloying element belong to the series. Commerce also determined that "as designated by the Aluminum Association" also means to include any aluminum sheet having major alloying element of manganese. *Id.* at 14-15.

34. Commerce determined that proprietary alloys can be classified by the Aluminum Association. *Id*. at 13-14. Commerce, however, did not consider that the Aluminum Association sets limits to what may be considered an "equivalent." In the same publication upon which

Commerce relied, the Aluminum Association provided the limits for the variations for the chemical elements. Valeo's proprietary grade heat-treated T-series aluminum sheet does not meet those parameters to be considered an equivalent. Commerce did not address these evidence and argument, nor did it explain or even attempt to explain how Valeo's product can be in scope notwithstanding the fact that it is not manufactured from a designated 1XXX-, 3XXX-, or 5XXX-series alloy as required by the scope of the Orders.

35. Commerce refused to consider the meaning or significance of the word "common" in the applicable scope language. *Id.* at 21

36. In conjunction with the Commission investigation investigation, a preliminary hearing was held before the International Trade Commission ("ITC") in December 2017.

37. Valeo participated in the Commission's hearing, testifying that its T-series were not included within the scope of the Commission's investigation and that it did not meet the 3xxx specifications. Valeo's testimony on these points was part of the administrative record.

38. At the Commission's hearing, chemical specifications outlining the distinction between excluded heat-treatable alloys and in-scope heat-treatable alloys was publicly presented.

39. In December 2018, Valeo filed a post-hearing brief reiterating the distinctions between alloys included and excluded from the investigation.

40. At the conclusion of the investigation, the Commission unequivocally stated that "{a}luminum sheet subject to these investigations are of 1XXX, 3XXX, and 5XXX series alloys that are non-heat treatable." *See Common Alloy Aluminum Sheet from China, Inv. Nos. 701-TA-591 and 731-TA-1399 (Final)*, USITC Pub. No. 4861 (Jan. 2019) at I-11, I-12 (emphasis added). Additionally, the Commission stated that "heat-treated aluminum sheet (*e.g.*, 6xxx alloy series) is not covered by Commerce's scope." *Id.* (emphasis added).

41. At the conclusion of the investigation, new Harmonized Tariff Schedule of the United States ("HTSUS") subheadings were created to capture out-of-scope heat-treatable alloys. HTSUS defines "heat-treatable" alloy as "aluminum containing by weight 3.0 percent or less of magnesium and 3.0 percent or less of silicon, and/or are designated as series 6xxx in the Aluminum Association's specifications of registered alloy." *See* Letter from Crowell & Moring to Sec'y of Commerce, *Request for Additional Information*, Case Nos. A-570-073; C-570-074 (Mar. 23, 2021) at Exhibit SUPP-4, 76-3.

42. At the inception of a series of new investigations involving common alloys, identically defined, the petition notes that HTSUS subheading 7606.12.3091 covers "imports of out-of-scope heat-treatable sheet." *See* Memorandum to the File, Factual Information Relevant to the Final Scope Ruling Determination: Valeo's Heat-Treated T-Series Aluminum Sheet, Case Nos. A-570-073; C-570-074 (Oct. 15, 2021) at Attachment 6, p.11 and Exhibit GEN-3. This subheading provides for "{h}eat-treatable industrial alloys" described in Statistical Note 6 to Chapter 76, which is defined as "aluminum containing by weight 3.0 percent or less of magnesium and 3.0 percent or less of silicon, and/or are designated as series 6xxx in the Aluminum Association's specifications of registered alloys."

43. It is uncontested that Valeo's T-series alloys meet the definition of a heat-treatable alloy as defined in the HTSUS and confirmed by the petitioners as capturing out-of-scope heat-treatable sheet.

44. Commerce failed to consider that the Commission excluded heat-treatable aluminum sheet from its injury analysis and improperly disregarded the Commission's determination on the issue, finding that the two referenced statements are contradictory.

45.     The Commission's statements are not contradictory; rather, they yield the logical conclusion that registered alloys prefaced with a 3 (*i.e.*, not heat-treatable alloys) are included in Commerce's scope and the International Trade Commission's injury analysis, but heat-treated alloys that are <u>not</u> registered alloys (or variants thereof) are excluded from the International Trade Commission's injury analysis and the scope of the Orders.

46.     The designation system cited by Commerce is inapplicable to unregistered alloys. The header prefacing the grouping system cited by Commerce notes that "{a} numerical designation assigned in conformance with this Recommendation should <u>only</u> be used to indicate an aluminum or an aluminum alloy having chemical composition limits <u>identical</u> to <u>those registered</u> with the Signatories to the Declaration of Accord on an International Alloy Designation System for Wrought Aluminum and Wrought Aluminum Alloys.  *See* 4th Scope Ruling Request at Attachment III, Attachment 1, Exhibit 3, p.28 (emphasis added).

47.     Commerce disregarded that header and instead wrongly applied the numerical designation system to an alloy that does not feature chemical composition limits within the parameters of those registered with the signatories.

48.     Commerce stated that "Valeo has not demonstrated that ITC's statement regarding the scope of the *Orders* not covering heat-treatable alloys was applicable to 1xxx, 3xxx, and 5xxx-series alloys that the ITC explicitly stated were included in the scope of the *Orders*." *Id.* at 17-18.  This presupposes that Valeo's products fell within one of the enumerated alloy series (which as noted above they did not) and at a minimum should have been examined in the contest of a (k)(2) analysis.

## STATEMENT OF CLAIMS

### Count One

49. Paragraphs 1 to 48 are incorporated herein by reference.

50. Commerce concedes that it relied on information outside the (k)(1) factors and cannot claim that it was merely soliciting information not dispositive to its determination.

51. The extensive discussion of heat-treatability demonstrates that the physical characteristics of the product (a k(2) factor) were central to its analysis. Commerce's memorandum also discusses the end use of the product ("Valeo also argues that its T-series aluminum sheet is an intermediate product…"). End-use, again, is a (k)(2) factor.

52. Pursuant to 19 C.F.R. § 351.225(e) and (k)(2), if Commerce finds that the issue of whether a product is included within the scope of an order cannot be determined based solely upon the application and the description of the merchandise in (k)(1) sources, Commerce is obliged to initiate a scope inquiry.

53. Commerce's failure to either rely on a (k)(1) analysis or initiate a scope inquiry to consider the (k)(2) factors was not in accordance with the law.

### Count Two

54. Paragraphs 1 to 53 are incorporated herein by reference.

55. While the (k)(1) sources may guide the interpretation, "they cannot substitute for language in the order itself." *Duferco Steel, Inc. v. United States*, 296 F. 3d 1087, 1097 (Fed. Circ. 2002); *see also Allegheny Bradford Corp. v. United States*, 342 F. Supp. 2d 1172, 1183 (Ct. Int'l Trade 2004) (holding that Commerce '"interpreted"' the order contrary to its terms by determining that beveled edges were not necessary for inclusion in the scope when the plain language was clear that they were). Scope language must be read in a manner that is

"informative and non-superfluous." *King Supply Co. v. United States*, 674 F.3d 1343, 1350 (Fed. Cir. 2012).

56. If a term is not defined in by the scope language, the common meaning applies. See *OMG, INC. v. United States*, 972 F. 3d 1358, 1366 (Fed. Cir. 2020) (affirming U.S. Court of International Trade's reliance on dictionary definitions of a nail). Trade usage and industry jargon terms could also be considered for discerning a common meaning. *ArcelorMittal Stainless Belgium N.V. v. United States*, 694 F.3d 82, 88, n.8 (Fed. Cir. 2012) ("{C}onsideration of industry jargon is not the same as conducting a full-fledged analysis of the factors embodied in 19 C.F.R. § 351.225(k)(2).").

57. The plain language of the scope requires that aluminum sheet be "common" and "designated" within "3xxx-series," among others, by the Aluminum Association to be subject to the Orders.

58. Commerce interpreted those terms in a way that is contrary to the Aluminum Association's publications, including those concerning "proprietary equivalents," aided by dictionary definition of "common," which demonstrate that not all aluminum sheet with primary alloying element of manganese is a 3xxx-series alloy. Indeed, the Aluminum Association itself explicitly forecloses such as reading. Valeo's T-series aluminum sheet is neither registered nor registrable as a 3xxx-series alloy because it does meet the chemistry requirement to be considered a proprietary equivalent as designated by the Aluminum Association.

59. Commerce's decisions not to issue a scope ruling based upon Valeo's fourth, March 24, 2021, scope ruling application and the common meaning of the scope terms was not in accordance with the law.

**Count Three**

60. Paragraphs 1 to 59 are incorporated herein by reference.

61. Commerce's regulations require that it consider the determinations of the Commission. 19 C.F.R. 355.225(k)(1). "{A}llow{ing} Commerce to assess antidumping duties on products intentionally omitted from the ITC's injury investigation would frustrate the purpose of the antidumping laws." *Ad Hoc Shrimp Trade Action Comm. v. United States*, 515 F.3d 1372, 1380 (Fed. Cir. 2008) (citation omitted). "It is the responsibility of the agency, not those who initiated the proceedings, to determine the scope of the final orders." *Duferco Steel*, 296 F.3d at 1097.

62. Commerce's failure to account for the fact that the Commission determined that heat-treat treated products were not covered by the scope of the orders was not in accordance with the law.

**Count Four**

63. Paragraphs 1 to 62 are incorporated herein by reference.

64. "Substantial evidence is more than a mere scintilla." *See Universal Camera v. National Labor Relations Board,* 340 U.S. 474, 477 (1951). "The substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *See Universal Camera v. National Labor Relations Board,* 340 U.S. 474, 488 (1951). Commerce referred to no evidence on the record to support its finding that Valeo's heat-treated T-series aluminum sheet was not heat-treated. Record evidence contained exhaustive documentation and technical information on this point, which was never rebutted. Moreover, Commerce's own scope ruling memorandum acknowledges that Valeo's product at issue undergoes "thermal treatment." Not

only there is ample evidence on the record that Valeo's products are heat-treated, Commerce does not provide any support to find that they are not.

65. "The reviewing court {}may not supply a reasoned basis for the agency's action that the agency itself has not given." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (citation omitted). However, the reviewing court will "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Id.* at 43 (citation omitted).

66. Commerce found that Valeo's heat-treated T-series aluminum was not heat-treated by presuming that clad and heat-treated products are mutually exclusive, not attempting to discern a definition of heat treatment, and shifting the burden to Valeo to demonstrate that its product is heat-treated without explaining its understanding of that term.

67. Evidence on the record defines "heat-treated" and Valeo demonstrated that its T-series aluminum sheet met those definitions.

68. Commerce's determination that Valeo's T-series aluminum sheet was not heat-treated was not supported by substantial evidence and Commerce's failure to define "heat-treated" was contrary to law.

## Count Five

69. Paragraphs 1 to 68 are incorporated herein by reference.

70. Commerce determined that clad products include those with "some diffusion" among the layers, and that "some diffusion" means any diffusion short of complete homogeneity.

71. Neither the scope language, the Aluminum Association publications, nor (k)(1) factors support this interpretation.

72. Commerce's interpretation of "clad" was contrary to the law.

**Count Six**

73. Paragraphs 1 to 72 are incorporated herein by reference.

74. Although courts have allowed relying on industry jargon to assess whether a term in the scope language is ambiguous, similar to relying on dictionary definitions, Commerce's analysis here went beyond interpretation of a common meaning of a term. *ArcelorMittal Stainless Belgium N.V. v. United States*, 694 F.3d 82, 88, n.8 (Fed. Cir. 2012). ("{C}onsideration of industry jargon is not the same as conducting a full-fledged analysis of the factors embodied in 19 C.F.R. § 351.225(k)(2).").

75. Commerce's regulations provide for procedures to initiate formal scope inquiries to consider (k)(2) factors. *See* 19 C.F.R. 351.225(e), (f) and (k)(2).

76. Commerce primarily relied upon various publications by the Aluminum Association and declarations of the Vice President of Standards and Technology for the Aluminum Association. Commerce relied on those sources to define various terms, such as "clad," "heat-treated," and "3xxx-series." Those are not appropriate regulatory (k)(1) sources.

77. Commerce's analysis involved connecting various publications and declarations in its attempt to discern a dispositive meaning. These declarations were not an appropriate (k)(1) source because they are not the same type of publicly available sources, such as dictionary definitions or scientific authorities, which define a common meaning. And, Commerce's analysis of the Aluminum Association publications went beyond defining a common meaning.

78. Alternatively, Commerce's interpretations based on those sources were not dispositive when considering contradicting evidence in the same sources.

79. Commerce's failure to initiate a formal scope ruling pursuant to its regulations was contrary the law.

**PRAYER FOR RELIEF AND JUDGMENT**

WHEREFORE, Valeo respectfully requests that the Court enter judgment:

1. Holding that the Decision Memorandum is unsupported by substantial evidence and not in accordance with law.

2. Remanding Commerce's determination at issue with instructions to issue a new determination consistent with the Court's opinion.

3. Ordering Commerce to make a determination pursuant to 19 C.F.R. § 351.225(d) or initiate a formal scope inquiry pursuant 19 C.F.R. § 351.225(e), and conduct the scope inquiry according to the regulations in effect at the time of the scope ruling application.

4. Providing such other relief as this Court may deem just and proper.

Respectfully submitted,

Dated: November 12, 2021

Daniel Cannistra
John Anwesen

CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC  20004-2595
Tel: 202.624.2902
E-mail: DCannistra@crowell.com