IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE
_____

|  |  |  |
|---|---|---|
| VALEO NORTH AMERICA, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Court No. 21-00581 |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| ALUMINUM ASSOCIATION COMMON | ) | |
| ALLOY ALUMINUM SHEET TRADE | ) | |
| ENFORCEMENT WORKING GROUP | ) | |
| ET AL., | ) | |
| | ) | |
| Defendant-Intervenors. | ) | |

_____)

**DEFENDANT'S RESPONSE TO PLAINTIFF'S RULE 56.2**
**MOTION FOR JUDGMENT UPON THE AGENCY RECORD**

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

REGINALD T. BLADES, JR.
Assistant Director

OF COUNSEL:

LESLIE M. LEWIS
Attorney
Office of the Chief Counsel
    for Trade Enforcement and Compliance
U.S. Department of Commerce
Washington, D.C.

KYLE S. BECKRICH
Trial Attorney
U.S. Dept. of Justice
Civil Division/National Courts
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044

June 27, 2022

Attorneys for Defendant

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES............................................................................iii

STATEMENT PURSUANT TO RULE 56.2.................................................2

    I.    Administrative Determination Under Review......................................2

    II.   Issues Presented For Review ...............................................................2

STATEMENT OF FACTS ............................................................................2

    I.    The Antidumping And Countervailing Duty *Orders* ...........................2

    II.   Prior Scope Determination Under The *Orders* ...................................4

    III.  Valeo T-Series Aluminum Sheet Scope Proceeding............................4

SUMMARY OF ARGUMENT.....................................................................10

ARGUMENT..............................................................................................12

    I.    Standard Of Review............................................................................12

    II.   Commerce's Determination That Valeo's T-Series Aluminum Sheet Falls Within The *Orders*' Scope Is Supported By Substantial Evidence And In Accordance With Law....................................................................................................13

        A.   Legal Framework............................................................................13

        B.   Commerce Lawfully Determined That Valeo's T-Series Aluminum Sheet Is Subject To The *Orders* Based On The Scope Language And (k)(1) Factors ...................................................................................................15

            1.   Commerce Reasonably Determined That Valeo's T-Series Aluminum Sheet Constitutes Clad Aluminum Sheet .................16

            2.   Commerce Reasonably Determined That Valeo's T-Series Aluminum Sheet Was Produced From A 3XXX-Series Core......21

        C.   Commerce Did Not Conduct A (k)(2) Analysis......................................24

        D.   Commerce Reasonably Determined That The Scope Term "Common" Did Not Render Proprietary Alloys Excluded From The *Orders*' Scope........29

E.   Commerce Reasonably Determined That The *Orders*' Scope Covers 3XXX-Series Alloys As Designated By The Alumunim Association Rather Than Specific Chemical Compositions Of Registered Alloys...... 31

F.   Substantial Evidence Supports Commerce's Consideration And Interpretation Of The ITC's Determination............................................. 35

III.   Commerce Issued Lawful *Ex Parte* Meeting Memoranda ................................ 38

CONCLUSION ......................................................................................................... 42

## TABLE OF AUTHORITIES

**Cases**                                                                      **Page(s)**

*Am. Silicon Techs. v. United States*,
    261 F.3d 1371 (Fed. Cir. 2001)................................................................ 12, 21

*Arcelormittal Stainless Belgium N.V. v. United States*,
    694 F.3d 82 (Fed. Cir. 2012)................................................................ passim

*Atlantic Sugar Ltd. v. United States*,
    744 F.2d 1556 (Fed. Cir. 1984)............................................................ 25, 26

*Carolina Tobacco Co. v. Bureau of Customs & Border Prot.*,
    402 F.3d 1345 (Fed. Cir. 2005)................................................................ 42

*Consol. Edison Co. v. NLRB*,
    305 U.S. 197 (1938)................................................................................ 12

*Crawfish Processors Alliance v. United States*,
    483 F.3d 1358 (Fed. Cir. 2007)............................................................ 12, 20

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
    582 F.3d 1288 (Fed. Cir. 2009)................................................................ 39

*Fujitsu Gen. Ltd. v. United States*,
    88 F.3d 1034 (Fed. Cir. 1996)................................................................ 13

*Global Commodity Grp. LLC v. United States*,
    709 F.3d 1134 (Fed. Cir. 2013)................................................................ 13

*Goldlink Indus. Co. v. United States*,
    431 F. Supp. 2d 1323 (Ct. Int'l Trade 2006)............................................ 13

*Hung Vuong Corp. v. United States*,
    483 F. Supp. 3d 1321 (Ct. Int'l Trade 2020)............................................ 38

*Hyundai Elecs. Indus. Co. v. United States*,
    28 Ct. Int'l Trade 517 (2004)............................................................ 40, 41

*INS v. Elias-Zacarias*,
    502 U.S. 478 (1992)................................................................................ 12

*King Supply Co. v. United States*,
    674 F.3d 1343 (Fed. Cir. 2012)................................................................ 12

*Mid Continent Nail Corp. v. United States*,
    725 F.3d 1295 (Fed. Cir. 2013)................................................................ 13

*Nucor Corp. v. United States*,
    612 F. Supp. 2d 1264 (Ct. Int'l Trade 2009) ........................................................ 12

*Perfectus Aluminum, Inc. v. United States*,
    391 F. Supp. 3d 1341 (Ct. Int'l Trade 2019) ........................................................ 14

*Sandvik Steel Co. v. United States*,
    164 F.3d 596 (Fed. Cir. 1998) .............................................................................. 12

*Sango Int'l L.P. v. United States*,
    484 F.3d 1371 (Fed. Cir. 2007) ............................................................................ 12

*Tak Fat Trading Co. v. United States*,
    396 F.3d 1378 (Fed. Cir. 2005) ............................................................................ 15

*Universal Camera Corp. v. N.L.R.B.*,
    340 U.S. 474 (1951) ........................................................................................ 25, 26

*Walgreen Co. of Deerfield v. United States*,
    620 F.3d 1350 (Fed. Cir. 2010) ............................................................................ 13

*Wheatland Tube Co. v. United States*,
    161 F.3d 1365 (Fed. Cir. 1998) ............................................................................ 30

*Whirlpool Corp. v. United States*,
    890 F.3d 1302 (Fed. Cir. 2018) ...................................................................... 14, 29

**Statutes**

19 U.S.C. § 1516a ...................................................................................................... 2, 39

19 U.S.C. § 1677f ..................................................................................................... passim

28 U.S.C. § 1581 ............................................................................................................... 9

**Regulations**

19 C.F.R. § 351.104 ................................................................................................. passim

19 C.F.R. § 351.225 ................................................................................................. passim

19 C.F.R. § 351.302 ...................................................................................................... 27

**Other Authorities**

*Aluminum Sheet from the People's Republic of China*, 84 Fed. Reg. 2,813 (Dep't of Commerce Feb. 8, 2019) (antidumping duty order) .................................................................2, 3, 4, 5

*Antidumping Duty Investigation of Common Alloy Aluminum Sheet From China*, 83 Fed. Reg. 57,421 (Nov. 15, 2018) .......................................................................................................33

*Common Alloy Aluminum Sheet from Bahrain, Brazil, Croatia, Egypt, Germany, India, Indonesia, Italy, Oman, Romania, Serbia, Slovenia, South Africa, Spain, Taiwan, and the Republic of Turkey: Antidumping Duty Orders*, 86 Fed. Reg. 22,139 (Dep't of Commerce April 27, 2021) ................................................................................................................ 34, 35

*Countervailing Duty Investigation of Common Alloy Aluminum Sheet From China*, 83 Fed. Reg. 57,427 (Nov. 15, 2018) .......................................................................................................33

*Policy Statement Regarding Issuance of Ex Parte*, 66 Fed. Reg. 16,906 (Dep't of Commerce Mar. 28, 2001) ....................................................................................................................40

*Regulations To Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws*, 86 Fed. Reg. 52,300 (Dep't of Commerce Sept. 20, 2021) ................................ 10

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

_____
                                          )
VALEO NORTH AMERICA, INC.,                )
                                          )
            Plaintiff,                    )
                                          )
      v.                                  )          Court No. 21-00581
                                          )
UNITED STATES,                            )
                                          )
            Defendant,                    )
                                          )
      and                                 )
                                          )
ALUMINUM ASSOCIATION COMMON               )
ALLOY ALUMINUM SHEET TRADE                )
ENFORCEMENT WORKING GROUP                 )
ET AL.,                                   )
                                          )
            Defendant-Intervenors.        )
_____ )

## **ORDER**

Upon consideration of the motion for judgment upon the administrative record, responses

thereto, reply, and all other papers, it is hereby

ORDERED that the motion is denied, and it is further

ORDERED that judgment shall enter in favor of the United States.


Dated: _____, 2022        _____
          New York, NY                              JUDGE

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

_____

|                                      |   |
|--------------------------------------|---|
| VALEO NORTH AMERICA, INC.,           | ) |
|                                      | ) |
| Plaintiff,                           | ) |
|                                      | ) |
| v.                                   | ) |
|                                      | ) |
| UNITED STATES,                       | ) |
|                                      | ) |
| Defendant,                           | ) |
|                                      | ) |
| and                                  | ) |
|                                      | ) |
| ALUMINUM ASSOCIATION COMMON          | ) |
| ALLOY ALUMINUM SHEET TRADE           | ) |
| ENFORCEMENT WORKING GROUP            | ) |
| ET AL.,                              | ) |
|                                      | ) |
| Defendant-Intervenors.               | ) |

Court No. 21-00581

_____)

## DEFENDANT'S RESPONSE TO PLAINTIFF'S RULE 56.2
## MOTION FOR JUDGMENT UPON THE AGENCY RECORD

Pursuant to Rule 56.2 of the Rules of the United States Court of International Trade, defendant, the United States, respectfully opposes the motion for judgment upon the agency record submitted by plaintiff, Valeo North America, Inc. (Valeo).  Valeo challenges the final scope ruling by the United States Department of Commerce (Commerce), finding that heat-treated T-series aluminum sheet imported by Valeo falls within the scope of the antidumping and countervailing duty (AD/CVD) orders on common alloy aluminum sheet from the People's Republic of China.  As demonstrated below, Commerce's determination is supported by substantial evidence and in accordance with law.  Accordingly, the United States respectfully requests that this Court sustain Commerce's scope ruling and deny Valeo's motion.

**STATEMENT PURSUANT TO RULE 56.2**

**I.     Administrative Determination Under Review**

The administrative determination under review is Commerce's final scope ruling on Valeo's heat-treated T-series aluminum sheet pursuant to antidumping and countervailing duty orders (the *Orders*) on common alloy aluminum sheet (aluminum sheet) from the People's Republic of China (China). *See Antidumping and Countervailing Duty Orders on Aluminum Sheet from the People's Republic of China: Final Scope Ruling Determination: Valeo's Heat-Treated T-Series Aluminum Sheet* (Dep't of Commerce Oct. 15, 2021) (Final Scope Ruling) (P.R. 40) and Factual Information Memorandum (P.R. 41).[1]

**II.     Issue Presented For Review**

1.     Whether Commerce's determination that T-series aluminum sheet imported by Valeo falls within the scope of the *Orders* is supported by substantial evidence and in accordance with law.

2.     Whether Commerce's *ex parte* memoranda satisfy 19 U.S.C. § 1516a(b)(2)(A), 19 U.S.C. § 1677f(a)(3) and 19 C.F.R. § 351.104(b).

**STATEMENT OF FACTS**

**I.     The Antidumping And Countervailing Duty *Orders***

In February 2019, Commerce issued antidumping and countervailing duty orders on common alloy aluminum sheet from China. *See Aluminum Sheet from the People's Republic of China*, 84 Fed. Reg. 2,813 (Dep't of Commerce Feb. 8, 2019) (antidumping duty order);

---

[1] For ease of reference, the record citations refer to documents filed under the antidumping duty case number, A-570-073, although duplicate documents were filed under the countervailing duty case number and both records were filed with the Court. *See* Dkt. No. 18. Additionally, Federal Register short citations to the *Orders*' scope corresponds with the AD Order, *i.e.*, 84 Fed. Reg. at 2,815. The *Orders*' scope language is identical.

*Aluminum Extrusions from the People's Republic of China*, 84 Fed. Reg. 2,157 (Dep't of

Commerce Feb. 8, 2019) (countervailing duty order); *see also* Valeo Br. at 2.

The scope of the *Orders* covers both multi-alloy, clad and not clad aluminum common

alloy sheet, which is "a flat-rolled aluminum product having a thickness of 6.3 mm or less, but

greater than 0.2 mm, in coils or cut-to-length, regardless of width." *Orders*, 84 Fed. Reg. at

2,815.  In relevant part, the scope specifies:

> With respect to not clad aluminum sheet, common alloy sheet is
> manufactured from a 1XXX-, 3XXX-, or 5XXX-series alloy as
> designated by the Aluminum Association. With respect to multi-
> alloy, clad aluminum sheet, common alloy sheet is produced from
> a 3XXX-series core, to which cladding layers are applied to either
> one or both sides of the core.

> Common alloy sheet may be made to ASTM specification B209–
> 14, but can also be made to other specifications. Regardless of
> specification, however, all common alloy sheet meeting the scope
> description is included in the scope. Subject merchandise includes
> common alloy sheet that has been further processed in a third
> country, including but not limited to annealing, tempering,
> painting, varnishing, trimming, cutting, punching, and/or slitting,
> or any other processing that would not otherwise remove the
> merchandise from the scope of the order if performed in the
> country of manufacture of the common alloy sheet.

> Excluded from the scope of this order is aluminum can stock,
> which is suitable for use in the manufacture of aluminum beverage
> cans, lids of such cans, or tabs used to open such cans.

> . . . .

> Common alloy sheet is currently classifiable under HTSUS
> subheadings 7606.11.3060, 7606.11.6000, 7606.12.3090,
> 7606.12.6000, 7606.91.3090, 7606.91.6080, 7606.92.3090, and
> 7606.92.6080.  Further, merchandise that falls within the scope of
> this order may also be entered into the United States under HTSUS
> subheadings 7606.11.3030, 7606.12.3030, 7606.91.3060,
> 7606.91.6040, 7606.92.3060, 7606.92.6040, 7607.11.9090.
> Although the HTSUS subheadings are provided for convenience
> and customs purposes, the written description of the scope of this
> order is dispositive.

*Id.*

## II.    **Prior Scope Determination Under The *Orders***

In March 2020, Commerce issued a scope determination under the *Orders* that "not clad aluminum sheet" manufactured from a 6061-alloy aluminum sheet did not fall within the *Orders'* scope.  *See* Memorandum, "Antidumping and Countervailing Duty Orders on Common Alloy Aluminum Sheet from China: Final Scope Ruling on Not Clad Aluminum Sheet," dated March 20, 2020 (Not Clad Aluminum Sheet Scope Ruling) (P.R. 41) at Attachment 5.  Commerce determined that "not clad aluminum sheet" manufactured from a 6061-alloy aluminum fell within the 6XXX-series alloy designation, and, therefore, was not subject merchandise because the scope of the *Orders* covers "not clad aluminum sheet" manufactured only from a 1XXX-, 3XXX-, or 5XXX-series alloy as designated by the Aluminum Association.  *Id.*

## III.    **Valeo T-Series Aluminum Sheet Scope Proceeding**

On May 1, 2020, Valeo applied to Commerce for a scope ruling and requested that Commerce find Valeo's imports of certain heat-treated T-series aluminum sheet from China outside the scope of the *Orders*.  *See* Valeo's Letter, "Common Alloy Aluminum Sheet from the People's Republic of China: Request for Scope Ruling on Heat-Treated T-Series Aluminum Sheet," dated May 1, 2020 (Valeo's First Submission) (P.R. 1; C.R. 1); *see also* Final Scope Ruling at 1; Valeo Br. at 2.

On May 28, 2020, the Common Alloy Aluminum Sheet Trade Enforcement Working Group and its individual members (domestic parties) commented on Valeo's application, asserting that Valeo's T-series aluminum sheet fell within the scope of the *Orders* because it is a clad product with a 3XXX-series alloy core.  *See* Letter, "Domestic Industry's Response to Scope Ruling Request by Valeo Group," dated May 27, 2020 (Domestic Parties First Comments)

4

(P.R. 9 – P.R. 11), (P.R. 9) at 1-2.  Domestic parties placed on the record the Aluminum

Association's definition of "clad sheet" as "flat-rolled, sheet-gauge aluminum product"

consisting of "an aluminum core to which a thin layer of aluminum or another metal is

metallurgically bonded on one side or both sides, typically by rolling."  *Id*. at 2 (quoting from the

Aluminum Association's "Aluminum Standards and Data 2017," Domestic Parties' First

Comments (P.R. 9) at Attachment 2).  They asserted that a clad product "involves at least two

layers (a core and one or more cladding layers) where the core and the cladding layer(s) are

made from different alloys (i.e., possess different chemistries)," and "not clad" aluminum sheet

involves a single-layered flat-rolled product with a common chemistry.  *Id*. at 4.

On June 3, 2020, Commerce rejected Valeo's scope ruling application because it was not

properly filed pursuant to Commerce's regulations.  *See* Commerce's Letter, "Rejection of

Requests for a Scope Inquiry on Heat-Treated T-Series Aluminum Sheet," dated June 3, 2020

(Commerce's Rejection Letter) (P.R. 12) (identifying nine filing errors); Commerce

Memorandum, "Rejection of Scope Request," dated June 3, 2020 (P.R. 13); *see also* Final Scope

Ruling at 1-2.

On June 5, 2020, Valeo resubmitted its application.  *See* Valeo's Letter, "Common Alloy

Aluminum Sheet from the People's Republic of China: Request for Scope Ruling on Heat-

Treated T-Series Aluminum Sheet," dated June 5, 2020 (Valeo's Second Submission) (P.R. 14;

C.R. 5); *see also* Final Scope Ruling at 1; Valeo Br. at 3.  In its second submission, Valeo

asserted that its product is a proprietary aluminum sheet that "does not correspond with any

registered 1XXX, 3XXX, or 5XXX alloy composition of the Aluminum Association."  *Id*.

Valeo's Second Submission (P.R. 14; C.R. 5) at 2.  Valeo acknowledged that "the use of

Aluminum Association specifications is an explicit requirement that defines any aluminum sheet

that is covered by the scope," *see id.* 8, and provided the Aluminum Association's alloy designations and chemical composition publication, known as "Teal Sheets," as follows:

> Aluminum, 99.0 percent and greater … 1XXX
> Aluminum alloys grouped by major alloying elements
>> Copper … 2XXX;
>> Manganese … 3XXX;
>> Silicon … 4XXX;
>> Magnesium … 5XXX;
>> Magnesium and silicon … 6XXX;
>> Zinc … 7XXX;
>> Other elements … 8XXX;
>> Unused series … 9XXX.

Valeo's Second Submission (P.R. 14) Exhibit 3 at 28; *see also id.* at 8 (citing the Aluminum Association, "International Alloy Designations and Chemical Composition Limits for Wrought Aluminum and Wrought Aluminum Alloys," dated Jan. 2015) (P.R. 14) Exhibit 3 at 28, 17.

Valeo described T-series sheet as aluminum sheet manufactured using multiple aluminum sheet layers which are heat-treated such that "the center layer diffuses outwards" resulting in an alloy "not classifiable within any 1XXX, 3XXX or 5XXX series alloy." *Id.* at 7. Despite the multiple aluminum layers used to produce T-series sheet, Valeo described its product as non-clad product. *Id.* at 10. According to Valeo:

> T-series aluminum is not a 1XXX series alloy as designated by the Aluminum Association because the material is not 99.00 percent aluminum. T-series aluminum is also not a 5XXX alloy because its major alloying element is not magnesium. . . . The chemical composition of T-series aluminum indicates that its major alloying element is manganese, not magnesium. . . . T-series aluminum is also not a 3XXX alloy because it does not correspond to any individual Aluminum Association specification within the series.

*Id.* at 9.

On June 12, 2020, Commerce held a telephone conference with counsel for the domestic parties. Thereafter, Commerce placed on the record a memorandum summarizing the *ex parte*

6

meeting in accordance with 19 U.S.C. § 1677f(a)(3) and 19 C.F.R. § 351.104(b). *See* Memorandum, "Telephone Meeting," dated June 17, 2020 (First Ex Parte Memo) (P.R. 16).

On June 15, 2020, Valeo submitted a rebuttal response to Domestic Parties First Comments. *See* Valeo's Letter, "Rebuttal Comments to Petitioners' Comments on Valeo's Scope Ruling Request," dated June 15, 2020 (Valeo First Rebuttal Comments) (P.R. 15). In its rebuttal, Valeo argued that heat-treated alloys are not within the *Orders*' scope based on the scope language, information from the initial AD/CVD investigation, a prior scope ruling, United States Harmonized Tariff Subheadings, Aluminum Association standards and recent AD/CVD petitions. *Id.*

On June 26, 2020, domestic parties responded to Valeo's rebuttal. *See* Letter, "Domestic Industry's Response to Valeo Group's Rebuttal Comments," dated June 25, 2020 (Domestic Parties Surrebuttal Comments) (P.R. 17). They contested Valeo's assertion that because the product is heat-treated, it is outside the scope, and provided evidence including a declaration from the Aluminum Association's vice president of standards and technology to that effect. *Id.* They also contested that the product is in fact heat-treated. *Id.* at Attachment 1 (declaration of John Weritz).

On July 9, 2020, Valeo further commented on the Domestic Parties Surrebuttal Comments. *See* Valeo Letter, "Response to the Domestic Producers' Comments on Valeo's Rebuttal Comments," dated July 9, 2020 (Valeo Second Rebuttal Comments) (P.R. 22) at 2.

On July 20, 2020, Commerce notified Valeo that it would not consider its second submission and that the 45-day regulatory time period would not commence until Valeo submitted all the necessary information, which it had not yet done. *See* Commerce's Letter, "Common Alloy Aluminum Sheet from the People's Republic of China: Supplemental

7

Questionnaire on Heat-Treated T-Series Aluminum Sheet," dated July 20, 2020 (Commerce's First Notification) (P.R. 23; C.R. 9); *see also* Final Scope Ruling at 2; Valeo Br. at 3. Commerce enclosed with the notice questions to assist Valeo with completing its scope ruling application by clarifying its product description. Commerce's First Notification (P.R. 23; C.R. 9) Attachment 2 at 3. Specifically, for Commerce to consider Valeo's application complete, Valeo needed to explain and to provide support for its assertion that T-series aluminum sheet is a non-3XXX-series alloy product and "not a clad product" when, as described by Valeo, the product's proprietary core has a principal alloying element of manganese and multiple layers. *Id*. Commerce also asked Valeo to identify the aluminum alloy series of the layers. *Id*. at 3.

On August 7, 2020, Valeo resubmitted its application, which included Valeo's Second Submission and responsive information requested by Commerce. *See* Valeo's Letter, "Common Alloy Aluminum Sheet from the People's Republic of China: Request for Scope Ruling and Response to Supplemental Questionnaire on Heat-Treated T-Series Aluminum Sheet," dated August 7, 2020 (Valeo's Third Submission) (P.R. 24; C.R. 10); *see also* Final Scope Ruling at 2. Domestic parties responded to Valeo's resubmission. *See* Letter, "Domestic Industry's Response to Valeo Group's Resubmitted Scope Ruling Request," dated August 25, 2020 (Domestic Parties Third Comments) (P.R. 25). On February 3, 2021, Commerce rejected Valeo's third submission as insufficient. *See* Commerce's Letter, "Common Alloy Aluminum Sheet from the People's Republic of China: Second Supplemental Questionnaire on Heat-Treated T-Series Aluminum Sheet," dated February 3, 2021 (Commerce's Second Notification) (identifying areas in Valeo's scope ruling application which require clarification) (P.R. 30; C.R. 12).

On March 23, 2021, Valeo submitted a complete scope ruling application that comprised Valeo's Third Submission and Valeo's Second Submission and responsive information requested

by Commerce.  *See* Valeo Letter, "Common Alloy Aluminum Sheet from the People's Republic of China: Request for Additional Information," dated March 23, 2021 (Valeo's Scope Ruling Application) (P.R. 31; C.R. 14); *see also id*. at Attachments II and III; Final Scope Ruling at 2. In its application, Valeo asserted that the plain scope language and (k)(1) factors demonstrate that T-series aluminum sheet is outside the scope of the *Orders* because it is heat-treated and produced from proprietary alloys that are not "designated" by the Aluminum Association.  *See* Valeo's Scope Ruling Application (P.R. 31) at 2-3.  Despite its claim, Valeo also asserted that Commerce must initiate a formal scope inquiry.  *Id*. at 3.

On April 19, 2021, Commerce held a virtual meeting with counsel for the domestic parties, and thereafter, placed on the record a memorandum summarizing the *ex parte* meeting in accordance with 19 U.S.C. § 1677f(a)(3).  *See* Memorandum, "Meeting with Counsel for the Domestic Industry," dated April 22, 2021 (Second Ex Parte Memo) (P.R. 33).

On May 11, 2021, Valeo commented on Commerce's *ex parte* memorandum.  *See* Valeo's Letter, "Response to Department's Memorandum Regarding Petitioner's Ex Parte Meeting," dated May 11, 2021 (Valeo's Ex Parte Comments).  On May 27, 2021, Commerce responded to Valeo's comment regarding the *ex parte* meeting memorandum.  *See* Letter to Valeo, "Response to Request for Information," dated May 27, 2021 (Commerce's Response to Valeo's Ex Parte Comments) (P.R. 36).

Commerce extended for "good cause" the 45-day regulatory time limit to issue a scope ruling four times.  *See* Commerce's Letters to Extend the Scope Determination, dated May 10, 2021 (P.R. 34), June 22, 2021 (P.R. 37), August 6, 2021 (P.R. 38), and September 20, 2021 (P.R. 39).  On August 17, 2021, Valeo filed a complaint with this Court alleging 28 U.S.C. § 1581(i) jurisdiction, challenging Commerce's extension of the regulatory scope determination deadline.

Court No. 21-00426, ECF No. 2; *see also* Valeo's Br. at 5.  On November 30, 2021, the Court dismissed Court No. 21-00426 pursuant to Valeo's request for voluntary dismissal.  Court No. 21-00426, ECF No. 10.

On October 15, 2021, upon its finding that the scope language and (k)(1) sources were dispositive as to whether Valeo's T-series aluminum sheet is subject merchandise based on Valeo's complete scope ruling application, Commerce issued a final scope determination pursuant to 19 C.F.R. § 351.225(d),[2] finding that Valeo's imports of heat-treated T-series aluminum sheet from China are within the scope of the *Orders*.  *See* Final Scope Ruling (P.R. 40) at 11, 22; and Attachments (P.R. 41); *see also* Valeo's Br. at 5.

Following issuance of the Final Scope Ruling, Commerce notified Valeo, petitioner and U.S. Customs and Border Protection (CBP) of its determination.  *See* Memorandum, "Final Scope Ruling on the Antidumping Duty Order and Countervailing Duty Order on Common Alloy Aluminum Sheet from the People's Republic of China: Proof of Certified Mailing," dated October 15, 2021 (P.R. 42); Cash Deposit Instructions, October 22, 2021 (P.R. 43).

On November 12, 2021, Valeo filed this case challenging Commerce's final scope determination. ECF Nos. 1, 4.

## SUMMARY OF THE ARGUMENT

Commerce's determination that Valeo's T-series aluminum sheet is covered by the scope of the *Orders* is supported by substantial evidence and in accordance with law.  Commerce

---

[2] Citations correspond with Commerce's April 21, 2021 regulations at 19 C.F.R. § 351.225, *et seq*.  In September 2021, Commerce amended certain of its scope regulations.  *See Regulations To Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws*, 86 Fed. Reg. 52,300 (Dep't of Commerce Sept. 20, 2021).  The scope regulations, as amended, do not apply because Valeo's complete scope ruling application was filed prior to November 4, 2021, the effective date of the amended regulations.

reasonably determined that Valeo's T-series aluminum sheet falls within the scope of the antidumping and countervailing duty orders on common alloy aluminum sheet from China because the product constitutes multi-alloy, clad aluminum sheet which is manufactured from a 3XXX-series alloy core as designated by the Aluminum Association.

Commerce lawfully made its determination pursuant to 19 C.F.R. § 351.225(d) based on Valeo's scope ruling application, the *Orders*' scope language, and sources identified in Commerce's scope regulations at 19 C.F.R. 351.225(k)(1) ((k)(1) sources). The (k)(1) sources include the descriptions of the merchandise contained in the petition, initial investigation, and prior determinations, including scope determinations, by Commerce and the International Trade Commission (ITC). Based on its examination of Valeo's product description, the *Orders*' scope language, and relevant (k)(1) sources, Commerce reasonably determined that the scope covers multi-alloy, clad aluminum sheet manufactured from a 3XXX-series core as designated by the Aluminum Association, regardless of whether the specific chemical composition is unregistered.

Commerce also complied with its statutory obligations regarding *ex parte* memoranda. Consistent with the 19 U.S.C. 1516a(b)(2)(A)(i) and 1677f(a)(3), Commerce maintained a record of *ex parte* meetings and provided on the record a summary of matters submitted. More specifically, Commerce summarized the matters submitted and expeditiously placed the *ex parte* memoranda on the record so that parties had a meaningful opportunity to respond. Although Valeo challenges as unlawful Commerce's *ex parte* memoranda, Valeo fails to support its challenge with record evidence and raises no evidence to overcome the presumption that Commerce officials lawfully performed their duty and acted in good faith.

## ARGUMENT

### I.      Standard Of Review

The Court may review a determination by Commerce as to "whether a particular type of merchandise is within the class or kind of merchandise described in an existing finding of dumping or antidumping or countervailing duty order." 19 U.S.C. § 1516a(a)(2)(B)(vi). Such a "class or kind" determination is known as a "scope ruling." 19 C.F.R. § 351.225. This Court "must uphold a scope ruling unless {it finds the ruling} to be 'unsupported by substantial evidence on the record or otherwise not in accordance with law.'" *Sango Int'l L.P. v. United States*, 484 F.3d 1371, 1378 (Fed. Cir. 2007) (quoting 19 U.S.C. § 1516a(b)(1)(B)). "'Substantial evidence' means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Crawfish Processors Alliance v. United States*, 483 F.3d 1358, 1361 (Fed. Cir. 2007) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

A scope ruling involves "a highly fact-intensive and case-specific determination," *King Supply Co. v. United States*, 674 F.3d 1343, 1345 (Fed. Cir. 2012), making it "particularly within the expertise of {Commerce}." *Sandvik Steel Co. v. United States*, 164 F.3d 596, 600 (Fed. Cir. 1998). When Congress has entrusted an agency to administer a statute that demands inherently fact-intensive inquiries, as in this case, the agency's conclusions may be set aside only if the record contains evidence "so compelling that no reasonable factfinder" could reach the same conclusion. *See INS v. Elias-Zacarias*, 502 U.S. 478, 483-84 (1992); *accord Nucor Corp. v. United States*, 612 F. Supp. 2d 1264, 1287 (Ct. Int'l Trade 2009).

"Even if it is possible to draw two inconsistent conclusions from evidence in the record, such a possibility does not prevent Commerce's determination from being supported by substantial evidence." *Am. Silicon Techs. v. United States*, 261 F.3d 1371, 1376 (Fed. Cir. 2001)

12

(citing *Fujitsu Gen. Ltd. v. United States*, 88 F.3d 1034, 1044 (Fed. Cir. 1996)).  "{T}he court may not substitute its judgment for that of the {agency} when the choice is between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo*."  *Goldlink Indus. Co. v. United States*, 431 F. Supp. 2d 1323, 1326 (Ct. Int'l Trade 2006) (citations and internal quotations omitted) (second alteration in original). The Court grants "'significant deference to Commerce's interpretation of a scope order,' so long as Commerce's interpretation is not 'contrary to the order's terms,' and does not 'change the scope of the order.'"  *Mid Continent Nail Corp. v. United States*, 725 F.3d 1295, 1300 (Fed. Cir. 2013) (citing *Global Commodity Grp. LLC v. United States*, 709 F.3d 1134, 1138 (Fed. Cir. 2013)).  After all, the interpretation of its own orders is "at the very heart of {Commerce's} expertise."  *Walgreen Co. of Deerfield v. United States*, 620 F.3d 1350, 1355 (Fed. Cir. 2010).

## II.   Commerce's Determination That Valeo's T-Series Aluminum Sheet Falls Within The *Orders*' Scope Is Supported By Substantial Evidence And In Accordance With Law

Commerce reasonably determined that Valeo's T-series aluminum sheet falls within the scope of the *Orders* as clad aluminum sheet produced from a 3XXX-series core.  *See* Final Scope Ruling at 10-22.  Valeo maintains that its product is non-clad and manufactured with heat-treated alloys which are not 1XXX, 3XXX, or 5XXX alloys, and therefore, it is not within the *Orders*' scope.  Valeo Br. at 2, 6.  Valeo argues that Commerce's determination is "procedurally and factually flawed."  *Id*. at 13.  Valeo's arguments are without merit.  As demonstrated below, Commerce's scope determination is lawful and supported by substantial evidence.

### A.   Legal Framework

Commerce is often called upon to determine whether a certain product is included within the scope of an antidumping or countervailing duty order because Commerce necessarily

determines scope language in general terms. *See* 19 C.F.R. § 351.225(a). The first step in considering whether a product is within the scope of an order is to consider the language of the order. *Arcelormittal Stainless Belgium N.V. v. United States*, 694 F.3d 82, 87 (Fed. Cir. 2012); *Whirlpool Corp. v. United States*, 890 F.3d 1302, 1308 (Fed. Cir. 2018) (*Whirlpool III*). "If the scope is unambiguous, the plain meaning of the Orders' language governs." *Whirlpool III*, 890 F.3d at 1308 (quoting *Meridian*, 851 F.3d at 1381); *see Arcelormittal*, 684 F.3d at 87 ("the first step in a scope ruling proceeding is to determine whether the governing language is in fact ambiguous, and thus requires analysis of the regulatory factors previously outlined"). "The question of whether a product meets the unambiguous scope terms then presents a question of fact reviewed for substantial evidence." *Whirlpool III*, 890 F.3d at 1308 (quoting *Meridian*, 851 F.3d at 1382).

Even if the scope language is unambiguous, Commerce may still support its determination with the sources listed in 19 C.F.R § 351.225(k)(1), including the descriptions of the merchandise contained in the petition, the descriptions of the merchandise contained in the initial investigation pertaining to the order, and prior scope determinations by Commerce and determinations by the ITC.[3]  19 C.F.R. §§ 351.225(d), (k)(1). If Commerce determines that the scope ruling application and descriptions of the merchandise contained in (k)(1) sources are dispositive, Commerce issues a final scope ruling as to whether the product falls within the scope

---

[3] Resort to (k)(1) sources may be unnecessary in certain circumstances because the language of the order is unambiguous. *See Whirlpool III*, 890 F.3d at 1308 ("If the scope is unambiguous, the plain meaning of the Orders' language governs."). Nevertheless, Commerce may use (k)(1) sources to support its determination. In *Perfectus Aluminum, Inc. v. United States*, for example, the Court rejected plaintiff's argument that "reference to the 19 C.F.R. § 351.225(k)(1) factors – and particularly to prior scope rulings – means that Commerce must have determined that the text of the Orders is ambiguous." *Perfectus Aluminum, Inc. v. United States*, 391 F. Supp. 3d 1341, 1355 (Ct. Int'l Trade 2019), *aff'd*, 836 F. App'x 883 (Fed. Cir. 2020).

of the order.  *See* 19 C.F.R. § 351.225(d); *see also Tak Fat Trading Co. v. United States*, 396

F.3d 1378, 1382 (Fed. Cir. 2005).  Only when the (k)(1) sources are not dispositive will

Commerce consider the additional criteria set forth in 19 C.F.R. § 351.225(k)(2):  (i) the physical

characteristics of the product; (ii) the expectations of the ultimate purchasers; (iii) the ultimate

use of the product; (iv) the channels of trade in which the product is sold; and (v) the manner in

which the product is advertised and displayed.  19 C.F.R. § 351.225(k)(2).  In this case,

Commerce made its determination pursuant to sections 351.225(d) and (k)(1), expressly finding

analysis of 351.225(k)(2) factors unnecessary.  Final Scope Ruling at 10, 22.

> **B.     Commerce Lawfully Determined That Valeo's T-Series Aluminum Sheet Is
> Subject To The *Orders* Based On The Scope Language And (k)(1) Factors**

Upon Valeo's complete scope ruling application, Commerce determined that the *Orders*'

scope language and the descriptions of subject merchandise within (k)(1) sources were together

dispositive that Valeo's T-series aluminum sheet falls within the *Orders*' scope.  *Id*. at 10.

Specifically, Commerce determined that Valeo's T-series aluminum sheet "is a multi-alloy, clad

aluminum sheet produced from an aluminum alloy core that has a primary alloying element of

manganese, *i.e.*, a 3XXX-series core" and therefore falls with the *Orders*' scope.  *Id*. at 11 (citing

Valeo's Third Submission (P.R. 24) Attachment 2 at 5-6; Valeo's Scope Ruling Application

(P.R. 31) Attachment 2).

Commerce began with the *Orders*' scope language.  Final Scope Ruling at 3, 11.

Commerce first identified the relevant scope language:  the scope covers "flat-rolled aluminum

product having a thickness of 6.3 mm or less, but greater than 0.2 mm, in coils or cut-to-length,

regardless of width"; for not clad aluminum sheet, "common alloy sheet is manufactured from a

1XXX-, 3XXX-, or 5XXX- series alloy as designated by the Aluminum Association,"; and for

clad aluminum sheet, "common alloy sheet is produced from a 3XXX-series core, to which

cladding layers are applied to either one or both sides of the core." *Id*. at 11.  Parties did not

contest that Valeo's T-series aluminum sheet satisfies the scope thickness language. *Id*. at 21.

Therefore, the inquiry centered on whether Valeo's T-series aluminum sheet constitutes clad or

non-clad aluminum sheet and whether it is manufactured from a series alloy as designated by the

Aluminum Association.  *Id*. at 11, 13.

Valeo's complete scope ruling application, submitted on March 24, 2021, enabled

Commerce to decide whether the application, plain scope language, and (k)(1) sources were

dispositive, or whether further inquiry was warranted.  The administrative record for

Commerce's consideration included the information that Valeo submitted in its previous

incomplete applications, which Valeo included with each new submission, along with comment

submissions by Valeo and domestic parties. *See, e.g.*, *generally*, ECF No. 18; *see also* Final

Scope Ruling at 10 (acknowledging that Valeo's Second Submission and Valeo's Third

Submission are on the record of the scope segment); *e.g.*, Valeo's Second Submission (P.R. 14;

C.R. 5), Valeo's Third Submission (P.R. 24; C.R. 10), and Valeo's Scope Ruling Application

(P.R. 3; C.R. 14) (including its prior submissions when Valeo resubmitted each subsequent

application); Domestic Parties First Comments (P.R. 9 – P.R. 11; C.R. 2 -  C.R. 4);  Valeo

Rebuttal Comments (P.R. 15; C.R. 6); Domestic Parties Surrebuttal Comments (P.R. 17; C.R. 7);

Valeo Second Rebuttal Comments (P.R. 22); Domestic Parties Third Comments (P.R. 25; C.R.

11).  Commerce satisfied its statutory obligation to account for record evidence, including that

which fairly detracts from its weight, and based its determination on the entire record.

        1.      **Commerce Reasonably Determined That Valeo's T-Series Aluminum
Sheet Constitutes Clad Aluminum Sheet**

Commerce first analyzed whether Valeo's T-series aluminum sheet constitutes clad

aluminum sheet.  Final Scope Ruling at 11.  Commerce faced opposing views:  Valeo asserted

that its heat-treated T-series aluminum sheet is not a clad product, and domestic parties asserted that T-series aluminum sheet is clad. *See, e.g.*, Valeo's Scope Ruling Application (P.R. 31) at 21, Attachment 1 at 10; Domestic Parties Third Comments (P.R. 25) at 2; *see also* Final Scope Ruling at 7, 9.

  The scope language lacks an express definition for clad aluminum sheet.  However, both Valeo and domestic parties identified the same definition of clad aluminum sheet by the Aluminum Association as sheet consisting of an aluminum core to which a thin layer of aluminum or other metal is metallurgically bonded on one or both sides.  *See* Valeo's Second Submission at 10; Domestic Parties First Comments at 9; Domestic Parties Third Comments at 4; *see also* Final Scope Ruling at 11-12.  Valeo also described "clad" sheet as a composite product with discrete layers of distinct metals and alloys that are metallurgically bonded.  *See* Valeo's Scope Ruling Application (P.R. 31) Attachment 1 at 10; Final Scope Ruling at 11 (citing Valeo's Second Submission (P.R. 14) at 10).

  In its application, Valeo described its T-series aluminum sheet as produced using multiple layers of aluminum sheets with an inner aluminum core layer.  Valeo's Third Submission (P.R. 24) Attachment 2 at 3-4.  Notably, Commerce found that Valeo's T-series aluminum sheet constitutes a "multi-alloy" product based on Valeo's description that the intermediate input layers consist of an outer layer of aluminum alloy 4045 with a principal alloying element of silicon and an inner core layer of a proprietary aluminum alloy with a principal alloying element of manganese.  Final Scope Ruling at 12 (citing Valeo Third Submission (P.R. 24) Attachment 2 at 3-4).  However, Valeo described that these multiple layers bond during heat-treatment resulting in a new singular, not composite, aluminum product without discrete layers but "multiple phases of diffused alloys" where the manganese content is

higher near the center and the silicon content is higher near the surface of the product. *Id.* (citing Valeo Scope Ruling Application (P.R. 41) Attachment II at ¶¶ 5-11). Therefore, Valeo asserted that its T-series aluminum sheet is non-clad.

Domestic parties contested Valeo's assertion and placed on the record evidence of the industry standard to support their position that, although a clad product consists of a core and cladding layer that are metallurgically bonded, it is not the case that each layer keeps its original chemistry, *i.e.*, some diffusion takes place. *See* Domestic Parties First Comments (P.R. 9 – P.R. 11) at 4-5; Domestic Parties Third Comments (P.R. 25) at 3-5; *see also* Final Scope Ruling at 9, 12. According to the Aluminum Association's standards publication, "{t}he composition of the cladding may be subsequently altered by diffusion between the core and cladding due to thermal treatment." Domestic Parties' Third Comments (P.R. 25) at 4 (quoting Aluminum Association, "Aluminum Standards and Data 2017" at 6-4 n.1, reproduced as Attachment 2 of Domestic Parties' First Comments (P.R. 9)).

Accordingly, based on record evidence of the industry standard, Commerce found that clad aluminum sheet may undergo some diffusion between the core and cladding layer. *See* Final Scope Ruling at 12 (citing Domestic Parties First Comments (P.R. 9) at 9 (citing Aluminum Association's "Aluminum Standards and Data 2017" at 6-4 n.1, reproduced as Attachment 2 (P.R. 9) at Table 6.1, note 1)); *see also ArcelorMittal Stainless Belgium*, 694 F.3d at 88 n.8 (antidumping orders' written language should consider industry usage). As a result, Commerce rejected Valeo's position that heat-treatment renders otherwise clad aluminum sheet, non-clad when some diffusion occurs.

Commerce next considered Valeo's description of T-series aluminum sheet to determine whether it constitutes clad aluminum sheet. Final Scope Ruling at 12. As stated above,

Commerce found T-series aluminum sheet to be a "multi-alloy" product based on Valeo's description that it has intermediate input layers of an outer layer of aluminum alloy 4045 with a principal alloying element of silicon and an inner layer of a proprietary aluminum alloy with a principal alloying element of manganese.  *Id*.  In the Final Scope Ruling, Commerce explained:

> Although Valeo claims that because the post-heat-treated product does not have discrete layers it cannot be considered a composite or clad product, we find that record evidence shows that, "the composition of the cladding may be subsequently altered by diffusion between the core and cladding due to thermal treatment." Additionally, Valeo's description of T-series aluminum sheet suggests that, while some diffusion may occur between the outer and center layers, these layers maintain their separate chemistries because the phases of diffused alloys have a larger manganese content toward the center of the product and a larger silicon content toward the surface of the product.

*Id*. at 12 (citing Valeo's Third Submission (P.R. 24) Attachment 2 at 3-4; Domestic Parties' First Comments (P.R. 9) Attachment 2 at Table 6.1, note 1; Valeo's Scope Ruling Application (P.R. 31) Attachment 2 at question 11).  Accordingly, Commerce found that the record did not support Valeo's product description as non-clad aluminum sheet.  *Id*. at 12-13.  Instead, Commerce found that T-series aluminum sheet, as described by Valeo, constitutes clad aluminum sheet because it is manufactured from an aluminum core and cladding resulting in sheet with multiple layers which "maintain their separate chemistries" and have separate phases of diffused alloys despite the diffusion that occurs from heat-treatment described by Valeo.  *Id*. at 12-13.

Valeo claims that Commerce misinterpreted the relationship between clad and heat-treated aluminum sheet.  Valeo's Br. at 31, 28-29.  To clarify, Commerce determined that Valeo failed to demonstrate based on record evidence that its product is heat-treated such that it cannot constitute clad product.  Final Scope Ruling at 12-13.  Specifically, Commerce found that Valeo's T-series aluminum sheet constitutes clad aluminum sheet based on record evidence that

diffusion of the core and cladding layers is not beyond the industry standard for clad products. *Id*. at 13.  Commerce made this finding contrary to Valeo's argument in the administrative scope segment that because its T-series aluminum sheet is heat-treated, it is not clad.  Final Scope Ruling at 11-13; Valeo's Second Submission at 10.

Notably, the term "heat-treated" does not appear in the scope language; however, "clad" is a scope term.  *Orders*, 84 Fed. Reg. at 2,815.  Valeo provided Commerce with a description of heat-treated and clad aluminum sheet.  Final Scope Ruling at 12.  According to Valeo, a heat-treated product is a singular, not clad, aluminum sheet product.  *Id*. (citing Valeo Second Submission at 10).  Valeo explained that the pre-heat-treated aluminum sheet layers bond during heat-treatment, resulting in elements precipitating the individual layers losing their original chemistries and forming a new alloy with a unique chemistry, *i.e.*, a singular, not composite aluminum sheet.  Valeo Second Submission at 10.  As stated above, Valeo described a clad product as a composite product with discrete layers of distinct metals and alloys that are metallurgically bonded.  *Id*.  Valeo asserted that its heat-treated T-series aluminum sheet cannot constitute clad aluminum sheet because it is heat-treated such that the multiple layers diffuse to form a new singular, not composite product.

Valeo makes much of the fact that Commerce stated in the Final Scope Ruling that it considered the product to be clad rather than heat-treated.  Valeo's Br. at 28-34, 31-32; *see also*, *e.g.,* Final Scope Ruling at 13.  It is reasonably discernable that Commerce's statements on Valeo's product as heat-treated versus clad product are responsive to Valeo's argument that its product is not clad because it is heat-treated.  *See Crawfish Processors*, 483 F.3d at 1361.  In fact, Commerce recognized that Valeo's product undergoes heat-treatment processes, and

nonetheless, determined that it constitutes *clad* aluminum sheet.  In the Final Scope Ruling,

Commerce explained:

> Valeo has not demonstrated that the finished T-series aluminum
> sheet is a non-clad product, *i.e.*, Valeo has not demonstrated that
> the integration between the outer layer and center core of T-series
> aluminum sheet has gone beyond "diffusion between the core and
> cladding due to thermal treatment," as described by the Aluminum
> Association.  As such, we find that Valeo has not demonstrated
> that the phases of diffused alloys within T-series aluminum sheet
> are not separate layers of a composite clad product.  Accordingly,
> we determine that the record evidence demonstrates the T-series
> aluminum sheet imported by Valeo can be considered to be a clad
> product rather than a heat-treated product.

Final Scope Ruling at 13.

Whether Valeo's product is covered by the *Orders*' scope language is the focus of

Commerce's inquiry and determination.  Commerce began with the scope language which

identifies certain Aluminum Association designated alloy series of clad and non-clad aluminum

sheet as subject merchandise.  Thus, Commerce's inquiry was to determine, based on record

evidence, whether Valeo's product constitutes clad or non-clad aluminum sheet and whether it is

manufactured with a series alloy as designated by the Aluminum Association.  Commerce

examined record evidence to make these determinations and reasonably explained its analysis.

*Id.* at 10-23.  Ultimately, Valeo disagrees with Commerce's determination based on the record

evidence.  But that disagreement is insufficient to warrant relief.  *See Am. Silicon Techs.*, 261

F.3d at 1376.

### 2. Commerce Reasonably Determined That Valeo's T-Series Aluminum Sheet Was Produced From A 3XXX-Series Core

Commerce also acknowledged that the *Orders*' scope specifies,

> With respect to not clad aluminum sheet, common alloy sheet is
> manufactured from a 1XXX-, 3XXX-, or 5XXX-series alloy as
> designated by the Aluminum Association.  With respect to multi-

> alloy, clad aluminum sheet, common alloy sheet is produced from
> a 3XXX-series core, to which cladding layers are applied to either
> one or both sides of the core.

Final Scope Ruling at 13; *see also Orders*, 84 Fed. Reg. at 2,815.  Thus, upon its finding that

Valeo's product constitutes multi-alloy, clad aluminum sheet, Commerce considered whether it

is produced from a 3XXX-series core "as designated by the Aluminum Association."  Final

Scope Ruling at 13.

As stated above, Valeo provided the Aluminum Association's designations ("Teal

Sheets") in its scope ruling application, which Commerce reproduced in the Final Scope Ruling:

> Alloy Groups
> The first four digits in the designation indicates the alloy group as
> follows:
> Aluminum, 99.0 percent and greater … 1XXX
> Aluminum alloys grouped by major alloying elements
> Copper … 2XXX;
> Manganese … 3XXX;
> Silicon … 4XXX;
> Magnesium … 5XXX;
> Magnesium and silicon … 6XXX;
> Zinc … 7XXX;
> Other elements … 8XXX;
> Unused series … 9XXX.

*Id*. (citing Valeo's Second Submission (P.R. 14) Exhibit 3 at 28; Domestic Parties' First

Comments (P.R. 9 – P.R. 11) Attachment 6 (P.R. 11) at paragraph 6).  Commerce quoted the

Aluminum Association's Teal Sheets that "{t}he alloy designation in the 2XXX through 8XXX

groups is determined by the alloying element (Mg$_2$Si for 6XXX alloys) present in the greatest

mean percentage." *Id*. at 14.  Commerce again drew upon the *Orders*' scope language,

explaining that,

> {b}ecause the phrase "as designated by the Aluminum
> Association" is present in the express scope language, we can
> interpret a 1XXX series aluminum as being commercial pure
> aluminum, 3XXX-series alloy as having a major alloying agent of

> manganese, and a 5XXX-series alloy as having a major alloying
> agent of magnesium, consistent with the Aluminum Association's
> Teal Sheets publication.

*Id*. at 14-15 (citing Valeo's Second Submission (P.R. 14) Exhibit 3 at 28 (containing Aluminum

Association's Teal Sheets)).  Commerce explained that its interpretation is consistent with

records from the antidumping and countervailing duty investigations.  Final Scope Ruling at 15.

> In the product characteristics memorandum from the AD and CVD
> investigations resulting in the *Orders*, Commerce refers to a four-
> digit numerical designation as a "specific-alloy" and a one-digit
> alloy series an "alloy" and as a "series alloy."  The plain scope
> language uses the term "series alloy" rather than "specific alloy."

*Id*.  Accordingly, Commerce found that the *Orders*' scope term "series alloy" refers to a one-

digit alloy series designated by the Aluminum Association rather than to a registered specific

four-digit numerical alloy.  *Id*.

Drawing from the preliminary scope memorandum from the investigation of the

antidumping and countervailing proceedings, Commerce explained that there is no explicit

exclusion for proprietary alloys.  *Id*. at 16.  Valeo indicated that the proprietary core of its

product has a principal alloying element of manganese, and the *Orders*' scope contains no

explicit exclusion for proprietary alloys, yet the scope encompasses sheet produced with

manganese as a principal alloying element, *i.e.,* a 3XXX-series core.   Accordingly, Commerce

determined that Valeo's T-series aluminum sheet constitutes aluminum sheet produced from a

3XXX-series core as designated by the Aluminum Association.  *Id*. at 16, 14-16.

Based on these findings drawn from Valeo's scope ruling application, the *Orders*' scope

language and (k)(1) sources, Commerce reasonably determined that Valeo's T-series aluminum

sheet is covered by the *Orders*' scope because it is a multi-alloy, clad aluminum sheet produced

from a 3XXX-series core.  *Id*. at 16.  In the Final Scope Ruling, Commerce expressly found it

23

unnecessary to consider additional factors in accordance with 19 C.F.R. § 351.225(k)(2), given that the scope language and (k)(1) sources were together dispositive on whether T-series aluminum sheet as described by Valeo in its scope ruling application is covered by the *Orders*. *Id*. at 10, 22.  As such, Commerce issued its final ruling based on Valeo's scope ruling application pursuant to 19 C.F.R. § 351.225(d).  *Id*. at 10-11; *see also* 19 C.F.R. § 351.225(d) (ruling based on the application).

**C.    Commerce Did Not Conduct A (k)(2) Analysis**

In the Final Scope Ruling, Commerce expressly found it unnecessary to conduct an additional analysis of (k)(2) factors because it had determined that the *Orders*' scope language and (k)(1) sources were dispositive.  Final Scope Ruling at 10, 22.  Nonetheless, Valeo claims that Commerce unlawfully conducted a (k)(2) analysis in rendering its scope determination. Valeo's Br. at 15.  To support its claim, Valeo argues that Commerce relied on (k)(2) factors to discern the meaning of scope terms.  *Id*. at 16-17, 19.  Valeo is incorrect.  Commerce relied on the *Orders*' scope language and (k)(1) sources to make its final scope determination based on Valeo's scope ruling application.  Thus, Commerce lawfully conducted this scope inquiry pursuant to 19 C.F.R. § 351.225(d) and reasonably declined to conduct a (k)(2) analysis when Valeo's application, the *Orders*' scope language and (k)(1) sources were dispositive.

Valeo first asserts that Commerce unlawfully turned to materials by the Aluminum Association.  Valeo's Br. at 19 (identifying by citation the materials to which it refers).[4] According to Valeo, these materials include Valeo's own submission of the Aluminum Association Teal Sheets Designations and the domestic parties' submission of a declaration from

---

[4] Valeo also asserts that Commerce relied on non-(k)(1) sources to define terms like "clad," "heat-treated," and "3XXX-series," yet, nowhere identifies these allegedly non-(k)(1) sources.  *Id*.

Mr. John Weritz, the Aluminum Association's Vice President for Standards and Technology, to support Commerce's description of the Aluminum Association's alloy series designation by principal alloying agent, *see* Final Scope Ruling at 11, n. 86, 14, n. 111, 17, n.127;  the Aluminum Association's standards publication as support of the industry standard for clad products, *see id.* at 12, n. 100, 13, n. 102; and Valeo's own submission and domestic parties' submission of an affidavit in its discussion regarding covered alloys and heat-treatment, *see id.* at 18, n. 133-134. *See* Valeo's Br. at 19.  The materials identified by Valeo derive from information placed on the record by the parties and directly relate to the plain meaning of the scope language.

Contrary to Valeo's contention, Commerce is not required to make a final scope determination based on "self-evident" "scope terms standing on their own."  Valeo's Br. at 19. As discussed above, 19 C.F.R. § 351.225(d) requires the issuance of a final scope ruling, if Commerce can determine, based on the scope ruling application and the descriptions of the merchandise in the (k)(1) sources, whether the product falls within *Orders*' scope.  Valeo overlooks that Commerce's accounting for record evidence, including evidence placed on the record by Valeo or in response to Valeo's information, to make a determination and its consideration of industry standards to discern the meaning of scope terms does not render unlawful Commerce's determination.

Indeed, Commerce must account for record evidence, including that which fairly detracts from its weight, and make its determination based on the entire record.  *See Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951); *Atlantic Sugar Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984).  As discussed above, the record contains numerous party submissions and comments, and as acknowledged by Valeo, Commerce accounted for the record evidence and

25

explained its rationale in making a final determination based on Valeo's scope ruling application.

*See* Valeo's Br. at 19 (acknowledging that Commerce dedicates a significant portion of its scope

analysis to the interpretation of scope terms and that Commerce's Final Scope Ruling includes

156 footnote citations to record information).  Further, the Federal Circuit has held that

Commerce may draw upon industry or trade usage of a scope term in discerning that term's plain

meaning.  *ArcelorMittal Stainless*, 694 F.3d at 88 n.8 (antidumping orders' written language

should consider industry usage) ("{C}onsideration of industry jargon is not the same as

conducting a full-fledged analysis of the factors embodied in 19 C.F.R. § 351.225(k)(2).").

Thus, that Commerce considered information from Valeo's scope ruling application and record

evidence of an industry standard from the very organization to which the scope language refers

(*i.e.*, the Aluminum Association) does not make Commerce's analysis a (k)(2) analysis.

Neither does the fact that Commerce accounted for and addressed record evidence

regarding Valeo's argument about heat-treatment, which is a term that does not appear in the

*Orders*' scope, make Commerce's analysis a (k)(2) analysis.  Nevertheless, Commerce addressed

Valeo's arguments regarding non-scope terms in its final scope determination consistent with its

obligation to make determinations based on the entire record and to account for record evidence,

including that which fairly detracts from its weight.  *See* Final Scope Ruling at 11-13, 16-22

(analyzing record evidence in the context of arguments regarding "heat-treated," "heat-

treatment," and "heat-treatability"); *see also Universal Camera*, 340 U.S. at 488; *Atlantic Sugar*,

744 F.2d at 1562.

Valeo next asserts that Commerce requested that Valeo provide "detailed information"

regarding "highly specific physical characteristics" in reviewing its scope request, and, therefore,

"cannot now claim that this line of inquiry was superfluous to the inquiry."  Valeo's Br. at 19-20,

20.   First, Commerce requested no information from Valeo once Valeo submitted a complete

scope ruling application for Commerce to review on March 24, 2021.[5]  Final Scope Ruling at 2.

Nonetheless, Commerce's *requests* for information do not support Valeo's position that an

unlawful *analysis* was made.  Indeed, Valeo cannot demonstrate that Commerce conducted an

unlawful (k)(2) analysis because Commerce did not conduct a (k)(2) analysis.  As explained

above, Commerce expressly decided, based on the scope ruling application, that analysis of

(k)(2) factors was unnecessary because the scope language and (k)(1) sources were dispositive.

*Id*. at 10, 22.  Commerce's decision is consistent with the regulation: "If {Commerce} can

determine, based solely upon the application and the descriptions of merchandise referred to in

paragraph (k)(1) of this section, whether a product is included within the scope of an order,

{Commerce} will issue a final ruling . . . ."  19 C.F.R. § 351.225(d).

Nevertheless, Valeo, in its scope ruling application, described and distinguished from

subject merchandise its T-series aluminum sheet by the product's highly specific physical and

chemical properties.  *See e.g*., Valeo's Second Submission (P.R. 14) at 6-10 (arguing that its T-

series aluminum sheet is outside the *Orders*' scope language based on Valeo's description of the

product as non-clad because it undergoes chemical diffusion of alloys and is produced from a

proprietary, non-3XXX-series core); *see also* Final Scope Ruling at 22, 4-5 (describing chemical

---

[5] Valeo also claims that Commerce's scope determination is procedurally flawed because it had to "wait more than 18 months for a determination that Commerce is required to conduct in 45 days."  Valeo Br. at 13.  However, setting aside the fact that Commerce's 45-day regulatory timeline to conduct a scope ruling is not mandatory and that pursuant to 19 C.F.R. § 351.302(b) Commerce may extend for good cause certain deadlines, including that for a scope ruling, Valeo overlooks the fact that it did not submit a complete scope ruling application for Commerce's consideration until March 24, 2021.  Final Scope Ruling at 1-2.  Commerce issued a final scope determination on October 15, 2021.  *Id*. at 2.  Further, the subject matter of this particular scope ruling is complex and involved chemistry concepts, for example, the chemistry content of aluminum alloy.

and physical properties of the product at-issue).  To evaluate Valeo's scope ruling application, Commerce was required to analyze certain characteristics of the T-series aluminum sheet including its chemistry and metallurgical bonding.  *Id.* at 22.  To perform such an analysis, Commerce needed information from Valeo concerning its description of T-series aluminum sheet.  *Id.* (citing Commerce's First Notification (P.R. 23; C.R. 9)).  To the extent that such an analysis considered the physical characteristics of the merchandise, Commerce's analysis was in the context of Valeo's scope ruling application and the parties' positions about what the product was in light of the scope language.  Accordingly, such consideration was based on (k)(1) sources and the scope language, which were dispositive, thus eliminating any need for a (k)(2) analysis.

Finally, Valeo fails to identify what Commerce did that constituted conducting a (k)(2) analysis.  As explained above, when descriptions of the merchandise in (k)(1) sources are not dispositive, Commerce will further consider (k)(2) factors including (i) the physical characteristics of the merchandise; (ii) the expectations of the ultimate purchasers; (iii) the ultimate use of the product; (iv) the channels of trade in which the product is sold; and (v) the manner in which the product is advertised and displayed.  Final Scope Ruling at 4.  Commerce expressly found that analysis of these (k)(2) factors was unnecessary because the scope language and (k)(1) sources were dispositive such that Commerce could make a final scope determination based on Valeo's scope ruling application.  *Id.* at 10, 22.  Again, as explained above, that analyzing the (k)(1) sources involved consideration of the physical characteristics of the merchandise does not render Commerce's analysis a (k)(2) analysis.  The analysis is under (k)(2) only when Commerce cannot determine based on the application, scope language, and (k)(1) descriptions of merchandise whether a product is included within the scope of an order.  19 C.F.R. §§ 351.225(d), (e), (k)(2).  Contrary to Valeo's argument, neither Commerce's requests

28

for information nor its final scope determination demonstrate that Commerce "undertook a (k)(2) analysis."  Valeo's Br. at 20.

### D.      Commerce Reasonably Determined That The Scope Term "Common" Did Not Render Proprietary Alloys Excluded From The *Orders*' Scope

Valeo argues that Commerce failed to appropriately interpret the term "common" within the scope language.  Valeo Br. at 20-22 (citing *Whirlpool Corp.*, 890 F.3d at 1308).  Valeo is incorrect.  Commerce rejected Valeo's argument that the *Orders*' scope language excludes proprietary alloys, that is, those alloys for which the specific chemical composition has not been registered with the Aluminum Association, because the term "common" means "known to the community."  Final Scope Ruling at 21 (citing Valeo's Second Submission (P.R. 14; C.R. 5) at 16).

The scope language defines "common alloy sheet" covered by the *Orders* as that which "is a flat-rolled aluminum product having a thickness of 6.3 mm or less, but greater than 0.2 mm, in coils or cut-to-length, regardless of width" and "includes both not clad aluminum sheet, as well as multi-alloy, clad aluminum sheet."  As discussed above, the *Orders*' scope states:

> With respect to not clad aluminum sheet, common alloy sheet is manufactured from a 1XXX-, 3XXX-, or 5XXX-series alloy as designated by the Aluminum Association.  With respect to multi-alloy, clad aluminum sheet, common alloy sheet is produced from a 3XXX-series core.

*Orders*, 84 Fed. Reg. at 2,815.  Thus, common alloy sheet is defined by the *Orders*' scope language as that which is manufactured from certain alloy series *as designated* by the Aluminum Association.  *Id*.  Commerce clarified that "as designated by the Aluminum Association" is not so narrow as to reach only those alloys for which the specific chemical composition has been *registered* with the Aluminum Association.  Final Scope Ruling at 14.  Instead, Commerce found that "as designated by the Aluminum Association" covers those alloys with a principal alloying

29

element that corresponds to the Aluminum Association's alloy series designations. *Id*. at 14-15. Commerce also found no scope exclusion for proprietary alloys. *Id*. at 21. In the Final Scope Ruling, Commerce drew upon the Preliminary Scope Memorandum, which confirms that "{t}he scope includes all products which meet the physical description of the scope and do not otherwise qualify for an exclusion." *Id*. at 16, 21 (quoting Scope Comments Preliminary Decision Memorandum (P.R. 41) Attachment 4 at 6).

Commerce cannot interpret an antidumping order so as to change the scope of the order, nor can Commerce interpret an order in a manner contrary to its terms. *Wheatland Tube Co. v. United States*, 161 F.3d 1365, 1370 (Fed. Cir. 1998). As Commerce explained, "{b}ecause there is no exclusion listed in the scope for proprietary alloys, we continue to find that such alloys are included if they otherwise meet the physical description of the scope." Final Scope Ruling at 21. Thus, Commerce reasonably rejected Valeo's argument that the *Orders*' scope excludes proprietary alloys based on the plain meaning of the term "common." *Id*.

The remainder of Valeo's arguments on this issue are based upon Valeo's misstatements that Commerce rejected the plain meaning of the term "common" and that Commerce's reference to a (k)(1) source (the Preliminary Scope Decision Memorandum) demonstrates that it found the term "common" ambiguous. Valeo's Br. at 21. Nowhere in its final scope determination does Commerce find that "common" is ambiguous. Further, this Court has held that Commerce may use (k)(1) sources to support its determination and rejected that reference to (k)(1) factors–particular prior scope rulings–means that Commerce determined that the scope term is ambiguous. *See Perfectus Aluminum*, 391 F. Supp. 3d at 1355 (stating that "it would be strange to penalize an agency's analytical thoroughness."), *aff'd*, 836 F. App'x 883 (Fed. Cir. 2020).

**E.   Commerce Reasonably Determined That The *Orders*' Scope Covers 3XXX-Series Alloys As Designated By The Aluminum Association Rather Than Specific Chemical Compositions Of Registered Alloys**

Valeo contends that Commerce erroneously determined that the scope term "3XXX" is not limited to specific registered chemical compositions. Valeo's Br. at 22-31. Valeo's contention is meritless. Although Valeo claims that the Aluminum Association's nomenclature is "limited to registered alloys and the chemical content of registered designations," Commerce reasonably determined that the *Orders*' scope language "as designated by the Aluminum Association" refers to certain alloy series which correspond with the major alloying element and not to only registered alloys with specific chemical content. Final Scope Ruling at 14-15. Indeed, if Commerce had intended the scope to be limited to only registered chemical compositions, it would have used that language in the *Orders*' scope. But it did not. Instead, the *Orders*' scope language states, "{w}ith respect to not clad aluminum sheet, common alloy sheet is manufactured from a 1XXX-, 3XXX-, or 5XXX-series alloy *as designated by the Aluminum Association*. With respect to multi-alloy, clad aluminum sheet, common alloy sheet is produced from a 3XXX-series core." *Orders*, 84 Fed. Reg. at 2,815 (emphasis added).

Valeo argued to Commerce that its product is not included in the scope because the chemical composition of the product's proprietary core is unregistered. Final Scope Ruling at 13. Based on record evidence, Commerce disagreed with the premise of Valeo's argument that proprietary alloys are excluded from the *Orders*' scope because they are not registered. *Id*. In the Final Scope Ruling, Commerce explained that the Aluminum Association's Teal Sheets specify that series alloy designations are determined by the "alloying element … present in the greatest mean percentage." *Id*. at 14 (quoting from the Aluminum Association's Teal Sheets). Commerce further drew upon record evidence of the industry standard placed on the record of

the administrative scope segment by domestic parties. Specifically, they placed on the record an affidavit from the Aluminum Association's vice president for Standards and Technology, in which he confirmed the Aluminum Association's industry standard that any alloy with a principal alloying element identified in the organization's Teal Sheets is generally referred to by the applicable series designation, even when the alloy is not registered. *See* Domestic Parties' First Comments (P.R. 9 – P.R. 11) Attachment 6 (P.R. 11) at paragraph 7). Commerce concluded that "{r}ecord information shows that an alloy with a principal alloying element corresponding to the Aluminum Association's alloy series is generally referred to by the applicable series designation even in instances where the alloy is not registered with the Aluminum Association." *Id*. (citing to Domestic Parties' First Comments (P.R. 9 – P.R. 11) Attachment 6 (P.R. 11) at paragraph 7). Thus, Commerce reasonably found that "as designated by the Aluminum Association" refers to alloy series which correspond with the major alloying element identified by the Aluminum Association, rather than specific registered chemical compositions. *Id*. As a result, Commerce determined that T-series aluminum sheet is not prevented from being identified within the one-digit 1XXX to 8XXX series alloy grouping just because it does not have identical chemical properties to any specific registered four-digit 3XXX-series alloy. *Id*. at 14.

Commerce also found that the phrase "as designated" refers to the series of the aluminum alloy, because without the phrase, the scope language would be unclear as to what is meant by a 1XXX, 3XXX, or 5XXX-series alloy. *Id*. at 14. Commerce also relied on the description of merchandise from the original investigations:

> In the product characteristics memorandum from the AD and CVD investigations resulting in the *Orders*, Commerce refers to a four-digit numerical designation as a "specific-alloy" and a one-digit

> alloy series as an "alloy" and as a "series alloy."  The plain scope
> language uses the term "series alloy" rather than "specific alloy."

*Id*. at 15 (citing *Antidumping Duty Investigation of Common Alloy Aluminum Sheet From China*,

83 Fed. Reg. 57,421 (Nov. 15, 2018) (affirm. final LTFV deter.); *Countervailing Duty*

*Investigation of Common Alloy Aluminum Sheet From China*, 83 Fed. Reg. 57,427 (Nov. 15,

2018) (affirm. final CVD deter.); Memorandum, "Factual Information Relevant to the Final

Scope Ruling Determination," dated Oct. 15, 2021 (containing Memorandum, "Product

Characteristics," dated Feb. 1, 2018) (P.R. 41).  From this analysis, Commerce found that the use

of the term "series alloy" indicates that the *Orders*' scope refers to a one-digit alloy series as

*designated* by the Aluminum Association based on the principal alloying element, rather than a

registered specific four-digit numerical alloy.  *Id.*

> Commerce concluded,

>> {b}ecause the phrase "as designated by the Aluminum
>> Association" is present in the express scope language, we can
>> interpret a 1XXX series aluminum as being commercial pure
>> aluminum, 3XXX-series alloy as having a major alloying agent of
>> manganese, and a 5XXX-series alloy as having a major alloying
>> agent of magnesium, consistent with the Aluminum Association's
>> Teal Sheets publication.

*Id.* at 14-15 (citing Valeo's Second Submission (P.R. 14) Exhibit 3 at 28 (containing Aluminum

Association's Teal Sheets)).

> Valeo argues that the recommendation header governs the Aluminum Association's

designations.  Valeo's Br. at 23-25.  The recommendation header states, "{a} numerical

designation assigned in conformance with this Recommendation should only be used to indicate

an aluminum or an aluminum alloy having chemical composition limits identical to those

registered."  *Id.* at 24.  Valeo overlooks that Commerce considered this information, yet

nonetheless found, based on record evidence, that unregistered alloys may be identified as falling

within the covered alloy series groupings based on the principal alloying element. *Id*. at 14.  It may be the case, as Valeo argues, that an alloy that is unregistered is "not governed by the Aluminum Association specifications, and cannot, therefore, be assigned a numerical value in accordance with those specifications."  Valeo's Br. at 25.  However, nowhere in the *Orders'* scope is there language requiring that an alloy be "registered" or "governed" by the Aluminum Association or that an alloy "be assigned a numerical value in accordance with those specifications."  Instead, the *Orders'* scope language defers to the Aluminum Association series alloy designations to define scope coverage.

Valeo claims that the lack of certain language, which appears in the scope for the antidumping and countervailing duty orders on common alloy aluminum sheet from Bahrain, Brazil, Croatia, Egypt, Germany, India, Indonesia, Italy, Oman, Romania, Serbia, Slovenia, South Africa, Spain, Taiwan, and the Republic of Turkey, in the *Orders'* scope reinforces that "as designated by the Aluminum Association" means the scope is limited to registered alloys.  Valeo's Br. at 26 (citing *Common Alloy Aluminum Sheet from Bahrain, Brazil, Croatia, Egypt, Germany, India, Indonesia, Italy, Oman, Romania, Serbia, Slovenia, South Africa, Spain, Taiwan, and the Republic of Turkey: Antidumping Duty Orders*, 86 Fed. Reg. 22,139 (Dep't of Commerce April 27, 2021) (common alloy aluminum sheet from Italy)).  Specifically, Valeo refers to language in the common alloy aluminum sheet from Italy antidumping and countervailing duty orders: "The use of a proprietary alloy or non-proprietary alloy that is not specifically registered by the Aluminum Association as a discrete 1XXX, 3XXX, or 5XXX-series alloy, but that otherwise has a chemistry that is consistent with these designations, does not remove an otherwise in-scope product from the scope."  *Id*. at 26.  In the Final Scope Ruling, Commerce explained that it does not agree that the lack of similar language in the *Orders'* scope

demonstrates that proprietary alloys are not included within the scope of the *Orders*.  Final Scope Ruling at 15.  Commerce determined that, "{b}ecause the scope of the *Orders* refers to the one-digit alloy series designated by the Aluminum Association and not specific four-digit alloys registered with the Aluminum Association, we find that an unregistered alloy (*i.e.*, a proprietary alloy) is still covered by the scope of the *Orders* if it corresponds to one of the one-digit alloy series identified in the scope language, *i.e.*, series 1XXX, 3XXX, or 5XXX."  *Id*.  Accordingly, the remainder of Valeo's arguments, *see* Valeo's Br. at 27-28, are baseless because "as designated by the Aluminum Association" refers to the series alloy which corresponds with the principal alloying element, not the proprietary equivalent to a registered alloy.  Final Scope Ruling at 15.

## F.    Substantial Evidence Supports Commerce's Consideration And Interpretation Of The ITC's Determination

Valeo argues that Commerce, its final scope ruling, failed to consider the ITC's determination.  Valeo's Br. at 34-35 (referencing USITC Publication 4861, Common Alloy Aluminum Sheet from China, Investigation Nos. 701-TA-591 and 731-TA-1399 (ITC final injury report)).  Valeo is incorrect.  Commerce discussed the ITC's determination in its Final Scope Ruling.  Final Scope Ruling at 17-18 (citing the ITC's final injury report).  Moreover, Commerce correctly interpreted the ITC determination despite Valeo's preference for a different interpretation.  Valeo's Br. at 34.

Valeo contends that the ITC's final injury report demonstrates that the Aluminum Association organizes its alloy series designations based on heat-treatability and that there are no heat-treatable 1XXX, 3XXX, or 5XXX alloys.  Valeo's Br. at 34-35 (citing ITC's final injury report at I-18).  Neither the record of this scope segment nor the ITC's determination support Valeo's contentions.  To clarify, the ITC's final injury report provided that, "{d}epending on the

intended end use application and alloying metal present, certain flat{-}rolled aluminum products can undergo a heat-treating process known as annealing, however heat-treated aluminum sheet (*e.g.*, 6XXX alloy series) is not covered by Commerce's scope." Final Scope Ruling at 17 (citing ITC final injury report at I-18).

Before Commerce, Valeo asserted that the Aluminum Association organizes aluminum alloys by heat-treatable and by non-heat-treatable. *Id.* According to Valeo, the heat-treatable aluminum alloys are 2XXX, 6XXX, and 7XXX-series alloys. *Id.* at 17 (citing Valeo's second submission at 6 and Exhibit 4 (listing heat-treatable alloys according to Aluminum Association)); *see also id.* at 17 n.130-n.131 (citing ITC final injury report at I-13, classifying 6XXX as heat-treatable). Notably, these heat-treatable aluminum alloys do not appear in the *Orders'* scope language, which expressly covers certain aluminum sheet manufactured from a 1XXX, 3XXX, or 5XXX-series alloy or 3XXX-series core. Although Valeo argues that the ITC statement that "heat-treated aluminum sheet (*e.g.*, 6XXX alloy series) is not covered by Commerce's scope" demonstrates that heat-treatment removes a product from the *Orders'* scope, *see* Valeo's Br. at 34-35, Commerce explained in the final scope determination that Valeo did not demonstrate that the ITC's statement was applicable to 1XXX, 3XXX, and 5XXX-series alloys, which the ITC explicitly stated were included in the scope of the *Orders*. Final Scope Ruling at 17-18. In other words, Commerce found that Valeo did not demonstrate that the ITC's statement describing heat-treated aluminum sheet as not covered by the scope applies beyond the alloy series that the ITC identified as heat-treatable (*e.g.*, 6XXX). *Id.* at 18. Consequently, Commerce found that the ITC did not intend to create an exclusion for heat-treatable 1XXX, 3XXX, or 5XXX-series alloys. *Id.*

Relatedly, Valeo asserts that Commerce misunderstood the ITC's determination because there are no heat-treatable 1XXX, 3XXX, or 5XXX-series alloys. Valeo's Br. at 35. Commerce did not misunderstand the ITC's determination. Final Scope Ruling at 17-18. However, Commerce considered the ITC's determination along with record evidence indicating that whether a product is heat-treatable or non-heat-treatable is not dispositive to whether it falls within a covered series alloy as designated by the Aluminum Association.

Before Commerce, Valeo asserted that the Aluminum Association classifies 2XXX, 6XXX, and 7XXX-series alloys as heat-treatable and that 3XXX, 4XXX, and 5XXX-series alloys as non-heat-treatable. Final Scope Ruling at 6, 17. Valeo argued that, because its T-series aluminum sheet is heat-treated, the T-series aluminum sheet cannot be considered a 3XXX-series alloy. *Id*. As explained above, Commerce found that Valeo failed to demonstrate that its T-series aluminum sheet, which it acknowledges is produced from a core with a principal alloying element of manganese, should be considered a heat-treated product. *Id*. Commerce explained that, even if it is heat-treated, record evidence contradicts Valeo's assertion that heat-treatable alloys that otherwise fall within the 3XXX, 4XXX, or 5XXX-series are precluded from being classified as such. *Id*. Commerce based its finding on record information that the Aluminum Association "determines which of the eight groupings (or series) into which the alloy falls based on its aluminum content and/or principal alloying agent," and the lack of evidence demonstrating that the Aluminum Association considers heat-treatability in its determination of into which of the eight series an alloy is classified. In fact, Valeo submitted evidence concerning 4XXX-series aluminum (corresponding to a principal alloying agent of silicon) and aluminum alloy 4643, which has a principal alloying element of silicon and is heat-treatable. *Id*. In the Final Scope Ruling, Commerce explained that:

37

> Despite aluminum alloy 4643 being a heat-treatable alloy and the
> Aluminum Association classifying 4XXX-series alloys as non-
> heat-treatable, the Aluminum Association assigned a numerical
> designation of 4643 corresponding to the alloy series of the
> principal element, *i.e.*, silicon.

*Id*. Accordingly, Valeo failed to demonstrate why its proprietary aluminum alloy with a

principal alloying agent of manganese would be precluded from being considered a 3XXX-series

aluminum based on its heat-treatability in light of record evidence that shows that heat-

treatability of aluminum alloy 4643 did not preclude it from being considered a 4XXX-series

aluminum. *Id*.

## III.    Commerce Issued Lawful *Ex Parte* Meeting Memoranda

Valeo argues that Commerce twice violated its statutory and regulatory obligations

regarding *ex parte* meetings. Valeo Br. at 36. Specifically, Valeo asserts that Commerce failed

to summarize factual information presented in two *ex parte* meetings, and therefore, acted

contrary to law. Valeo Br. at 36-39. Valeo's allegations are baseless. As the record

demonstrates, Commerce placed *ex parte* memoranda on the record consistent with the law and

specifically addressed Valeo's concerns about one such memorandum during the administrative

scope segment.

The presumption in the conduct of an administrative proceeding is that Commerce has

followed its statutory and regulatory obligations. *See Hung Vuong Corp. v. United States*, 483 F.

Supp. 3d 1321, 1344-45 (Ct. Int'l Trade 2020) (setting forth the presumption of good faith that

attaches to official action). The applicable law is 19 U.S.C. § 1677f(a)(3), which requires that

Commerce maintain a record of any *ex parte* meetings between interested parties providing

factual information in connection with a proceeding and the decision-maker or any person

charged with making a recommendation to the decision-maker if information related to the proceeding was presented or discussed.  The statute specifies that,

> The record of such an ex parte meeting shall include the identity of the persons present at the meeting, the date, time, and place of the meeting, and a summary of the matters discussed or submitted. The record of the ex parte meeting shall be included in the record of the proceeding.

19 U.S.C. § 1677f(a)(3); *see also* 19 C.F.R. §351.104(a) (requiring the placement of *ex parte* memoranda on the administrative record).  The *ex parte* memoranda must be included on the record for judicial review.  19 U.S.C. §1516a(b)(2)(A).

Commerce complied with its obligation to maintain a record of all *ex parte* meetings and to disclose information that is submitted during the meeting.  19 U.S.C. §§ 1677f(a)(3), (4).  As the record establishes, on June 17, 2020, and April 22, 2021, Commerce placed on the record *ex parte* meeting memoranda identifying *ex parte* meetings that took place on June 12, 2020, and April 19, 2021, respectively.[6]  In the April 22, 2021 *ex parte* memorandum, Commerce identified a virtual meeting attended by counsel for the domestic parties and Commerce in which domestic parties indicated that record information from the first administrative review could be relevant to the scope segment and inquired into placing this information on the scope record for Commerce's consideration.  *See* April 22, 2021, *Ex Parte* Memo (P.R. 33); Commerce's Response to Valeo's Ex Parte Comments (P.R. 36).  Commerce also included in the memorandum citation to the information that the domestic parties' counsel referenced, *id*. (P.R.

---

[6] In the June 17, 2020, ex parte memorandum, Commerce identified a June 12, 2020, telephone call with Commerce officials and counsel for the domestic parties in which "the domestic industry discussed its May 29, 2020, comments on the Valeo Group's scope request." *See* June 17, 2020, Ex Parte Memorandum (P.R. 16) at 1.  However, because Valeo's argument pertaining to the unlawfulness of the June 17, 2020 *ex parte* memorandum is conclusory and identifies no supporting evidence or argument other than blanket, undeveloped assertions, the Court should not entertain it.  *See, e.g.*, Valeo's Br. at 36-39; *see also Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1296 (Fed. Cir. 2009).

33) at 1, n.2 and n.3 (citing Alcha Group's U.S. sales database submissions from the first administrative review of the proceeding), and a summary that, "counsel for the domestic industry discussed Jiangsu Alcha Aluminum Co. Ltd. and Alcha International Holdings Limited (collectively, Alcha Group)'s questionnaire responses in the first administrative review of the antidumping order.  In particular, counsel for domestic industry discussed how Alcha Group's U.S. sales database related to the Heat-Treated T-Series Aluminum Sheet scope inquiry requested by Valeo Group." *Id*. at 1.

Commerce's *ex parte* memoranda complied with the statutory and regulatory requirements and also Commerce's policy that *ex parte* memoranda be drafted expeditiously and placed on the record as soon as possible so that parties may respond effectively on the factual matters presented, and that memoranda are required whether or not the factual information had been received previously, or is expected to be used or relied on.  *See Policy Statement Regarding Issuance of Ex Parte*, 66 Fed. Reg. 16,906 (Dep't of Commerce Mar. 28, 2001); *see also* Valeo's Br. at 39.  In this case, the *ex parte* meeting was held on April 19, 2021, and Commerce placed the memorandum on the record on April 22, 2021.  Notably, the referenced information from the first administrative review was never submitted to the scope record for Commerce's consideration, and Commerce relied on only scope record information to make its determination. Nonetheless, Commerce summarized the matter presented and expeditiously placed the *ex parte* memorandum on the record so that parties had a meaningful opportunity to respond.  *See Hyundai Elecs. Indus. Co. v. United States*, 28 Ct. Int'l Trade 517, 527 (2004) (finding that disclosure of an *ex parte* meeting within 18 days of the meeting provided parties a "meaningful opportunity to respond").

Valeo contends that Commerce's summary of the April 19, 2021 *ex parte* meeting provides "only a very cursory statement of the factual information discussed and submitted at that meeting." Valeo's Br. at 36; *see also id.* at 37 (asserting that the "meeting discussed information and issues relevant to two separate proceedings."); *id*. ("The statute requires a complete and fulsome discussion of the facts presented at an ex-parte meeting."). Contrary to Valeo's contention, neither the statute nor regulations require that Commerce provide more than a "summary of the matters discussed or submitted." 19 U.S.C. § 1677f(a)(3); 19 C.F.R. § 351.104(a). Regardless, Valeo assumes without evidence that Commerce's summary is inadequate despite contrary record evidence and Commerce's specifically addressing Valeo's same concerns during the scope proceeding.

During the scope proceeding, in response to Valeo's request that Commerce "provide a more thorough explanation of the issues and information discussed in that meeting," Commerce confirmed that its *ex parte* memorandum summary is in accordance with 19 U.S.C. § 1677f(a)(3) as "a summary of the matters discussed or submitted." *See* Valeo's Ex Parte Comments (P.R. 35); Commerce's Response to Valeo's Ex Parte Comments (P.R. 36). Commerce added that,

> To the extent that parties find it helpful, we clarify that during the April 19, 2021 meeting, counsel for the domestic industry indicated that information from one segment might be relevant to the other segment, and inquired about the logistics of filing information from one segment of a proceeding to another segment of the same proceeding. Commerce officials referred the counsel for the domestic industry to Enforcement and Compliance (E&C)'s APO office.

Commerce's Response to Valeo's Ex Parte Comments (P.R. 36) at 1. Commerce also addressed Valeo's request that Commerce provide a "list of the facts submitted, any associated referenced documents, and particularly the relevance to each proceeding":

> {d}uring the meeting{,} counsel for domestic industry did not submit any facts or reference any documents not currently on the record of the first administrative review of the antidumping duty order on common aluminum sheet from the People's Republic of China.  In Commerce's analysis of the scope inquiry for Valeo's heat-treated t-series aluminum sheet, Commerce will only consider factual information filed under the corresponding segment of this proceeding, *i.e.*, the segment for Valeo's heat-treated t-series aluminum sheet scope inquiry.

*Id*. at 1-2.  Additionally, Commerce instructed:

> If interested parties believe information from one segment of a proceeding is relevant to another segment of the same proceeding, it is incumbent upon them to explain the relevance and follow the appropriate APO regulations.  Under this scenario, interested parties would have the opportunity to submit factual information to rebut, clarify or correct information contained in the submission.

*Id*.  No party submitted to the scope segment record information from another segment of this proceeding beyond certain (k)(1) record evidence discussed above, and Commerce relied on only information contained the scope segment's record to make its final scope determination.

Accordingly, Valeo's argument fails because Commerce's *ex parte* memoranda comply with the statutory and regulatory requirements and Valeo raises no evidence to overcome the presumption that Commerce officials lawfully performed their duty and acted in good faith.  *See Carolina Tobacco Co. v. Bureau of Customs & Border Prot.*, 402 F.3d 1345, 1350 (Fed. Cir. 2005) ("Government officials are presumed to do their duty, and one who contends they have not done so must establish that defect by 'clear evidence.'" (citations omitted)).

## <u>CONCLUSION</u>

For these reasons, we respectfully request that the Court deny Valeo's motion for judgment on the agency record and sustain Commerce's final scope determination.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/ Reginald T. Blades, Jr.

OF COUNSEL:                    REGINALD T. BLADES, JR.
                               Assistant Director
LESLIE M. LEWIS
Attorney                       /s/ Kyle S. Beckrich
Office of the Chief Counsel    KYLE S. BECKRICH
    for Trade Enforcement and Compliance   Trial Attorney
U.S. Department of Commerce    Department of Justice
                               Civil Division
                               Commercial Litigation Branch
                               PO Box 480, Ben Franklin Station
                               Washington, D.C. 20044
                               Tel:  (212) 616-9322
                               E-mail:  Kyle.Beckrich@usdoj.gov

June 27, 2022                  Attorneys for Defendant United States

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing brief complies with the Rules of this Court and the Court's scheduling order in that it contains 12,557 words, including text, footnotes, and headings.

<u>/s/Kyle S. Beckrich</u>
Kyle S. Beckrich

44