NON-CONFIDENTIAL

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

_____

VALEO NORTH AMERICA, INC.,　　　　　　 )
　　　　　　　　　　　　　　　　　　　　　 )
　　　　　　　　　Plaintiff,　　　　　　　 )
　　　　　　　　　　　　　　　　　　　　　 )
　　　　　　　　　　v.　　　　　　　　　　 )
　　　　　　　　　　　　　　　　　　　　　 )
UNITED STATES,　　　　　　　　　　　　 )
　　　　　　　　　　　　　　　　　　　　　 )
　　　　　　　　　Defendant,　　　　　　　 )　　　　Court No. 21-00581
　　　　　　　　　　　　　　　　　　　　　 )
　　　　　　　　　and　　　　　　　　　　　 )
　　　　　　　　　　　　　　　　　　　　　 )
ALUMINUM ASSOCIATION COMMON　　 )
ALLOY ALUMINUM SHEET TRADE　　　 )
ENFORCEMENT WORKING GROUP AND ITS )
INDIVIDUAL MEMBERS,　　　　　　　　 )
　　　　　　　　　　　　　　　　　　　　　 )
　　　　　　　　　Defendant-Intervenors.　 )
　　　　　　　　　　　　　　　　　　　　　 )
_____)

**DEFENDANT-INTERVENORS' RESPONSE BRIEF IN OPPOSITION TO
PLAINTIFF'S MOTION FOR JUDGMENT ON THE AGENCY RECORD**

JOHN M. HERRMANN
PAUL C. ROSENTHAL
JOSHUA R. MOREY
KELLEY DRYE & WARREN LLP
3050 K Street, N.W., Suite 400
Washington, DC  20007
(202) 342-8400

Counsel to the Aluminum Association Common
Alloy Aluminum Sheet Trade Enforcement
Working Group and Its Individual Members

July 5, 2022

NON-CONFIDENTIAL

## Table of Contents

**Page**

ADMINISTRATIVE DETERMINATION UNDER REVIEW ......................................1

ISSUES PRESENTED AND SUMMARY OF ARGUMENT ....................................1

STANDARD OF REVIEW ................................................................................3

STATEMENT OF FACTS ................................................................................3

ARGUMENT ..............................................................................................13

I.    THE DEPARTMENT'S SCOPE RULING IS SUPPORTED BY
      SUBSTANTIAL EVIDENCE AND IS OTHERWISE IN
      ACCORDANCE WITH LAW ................................................................13

      A.    The Department Lawfully Issued a Scope Ruling Without
            Initiating a Scope Inquiry Under 19 C.F.R. § 351.225(k)(1)...............13

      B.    Valeo's Arguments Wrongly Depend on the Company's Inaccurate
            Description of the Imported Merchandise Being Not Clad
            Aluminum Sheet ......................................................................16

      C.    Valeo's Arguments Concerning the U.S. International Trade
            Commission's Understanding of the Scope Are Wrong........................18

      D.    The Department's Determination That Valeo's Brazing Sheet Is
            Clad Aluminum Sheet Produced from a 3xxx-Series Core Is
            Supported by Substantial Evidence ..........................................20

II.   DEFENDANT-INTERVENORS INCORPORATE BY REFERENCE
      THE REMAINDER OF DEFENDANT'S RESPONSE BRIEF ......................21

III.  CONCLUSION...................................................................................22

NON-CONFIDENTIAL

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### Cases

<u>Cleo, Inc. v. United States</u>,
    2006 Ct. Intl. Trade LEXIS 143 (Ct. Int'l Trade Aug. 31, 2006),
    <u>aff'd</u>, 501 F.3d 1291 (Fed. Cir. 2007)......................................................................18

<u>Quiedan Co. v. United States</u>,
    294 F. Supp. 3d 1345 (Ct. Int'l Trade 2018),
    <u>aff'd</u>, 927 F.3d 1327 (Fed. Cir. 2019)...................................................................19

### Statutes and Regulations

19 C.F.R. § 351.225 ..........................................................................................................13

19 C.F.R. § 351.225(c)......................................................................................................14

19 C.F.R. § 351.225(c)(1).................................................................................................15

19 C.F.R. § 351.225(c)(1)(i)-(ii).......................................................................................14

19 C.F.R. § 351.225(k)(1)........................................................................................ *passim*

19 C.F.R. § 351.225(k)(2).......................................................................................1, 2, 13

### Administrative Determinations

<u>Common Alloy Aluminum Sheet From the People's Republic of China:</u>
    <u>Antidumping Duty Order</u>, 84 Fed. Reg.  2,813
    (Dep't Commerce Feb. 8, 2019) ("<u>AD Order</u>") ............................................ *passim*

<u>Common Alloy Aluminum Sheet From the People's Republic of China:</u>
    <u>Countervailing Duty Order</u>, 84 Fed. Reg. 2,157
    (Dep't Commerce Feb. 6, 2019) ("<u>CVD Order</u>") ......................................... *passim*

<u>Common Alloy Aluminum Sheet from China,</u>
    USITC Pub. 4757 (Prelim.) (Jan. 2018)  ........................................................ 19-20

<u>Common Alloy Aluminum Sheet from China,</u>
    USITC Pub. 4861 (Final) (Jan. 2019) ............................................................. 19-20

Low Enriched Uranium from France,
    USITC Pub. 3967 (Dec. 2007)....................................................................................18

Memo from USDOC to Associate DAS For Operations Pertaining to Valeo Scope
    Ruling BPI (CR 15) (PR 40) ("Final Ruling") .............................................. *passim*


**Miscellaneous**

2020 HTSUS Basic Edition is available at:
    https://hts.usitc.gov/view/release?release=2020HTSABasicB ..................................5

Regulations To Improve Administration and Enforcement of Antidumping and
    Countervailing Duty Laws, 86 Fed. Reg. 52,300
    (Dep't Commerce Sept. 20, 2021) ...........................................................................13

NON-CONFIDENTIAL

On behalf of the Aluminum Association Common Alloy Aluminum Sheet Trade Enforcement Working Group and its individual members Aleris Rolled Products, Inc., Arconic Corporation, Commonwealth Rolled Products Inc., Constellium Rolled Products Ravenswood, LLC, Jupiter Aluminum Company, JW Aluminum Company, Novelis Corporation (collectively, "Defendant Intervenors"), this response brief is submitted in opposition to the Motion for Plaintiff Valeo North America, Inc., For Judgment on the Agency Record and the accompanying Memorandum In Support (hereinafter "Valeo's Br.") submitted on behalf of Valeo North America, Inc. ("Valeo") on March 21, 2022 (ECF No. 23).  For the reasons set forth below, we urge this Court to reject Valeo's claims and to sustain the underlying agency determination.

## ADMINISTRATIVE DETERMINATION UNDER REVIEW

Valeo challenges certain aspects of the U.S. Department of Commerce's (the "Department") final scope ruling involving a product that Valeo characterized for purposes of its scope ruling request as "T-Series Heat Treated Sheet."  See Memo from USDOC to Associate DAS For Operations Pertaining to Valeo Scope Ruling BPI (CR 15) (PR 40)[1] (hereinafter, "Final Ruling").

## ISSUES PRESENTED AND SUMMARY OF ARGUMENT

Valeo claims the Department's Final Ruling is not support by substantial evidence and is not otherwise in accordance with law because the Department:

1. Conducted an analysis under 19 C.F.R. § 351.225(k)(2) without initiating a scope inquiry;

2. Unlawfully interpreted scope terms "common" and "3xxx";

---

[1]   Documents in the administrative record are cited by their confidential and/or public record number (i.e., "(CR ___)" and "(PR ___)") provided in the Index to the Administrative Record filed with the Court on December 22, 2021 (ECF No. 18).

NON-CONFIDENTIAL

3. Failed to consider a U.S. International Trade Commission determination under 19 C.F.R. § 351.225(k)(1);

4. Unlawfully determined that Valeo's brazing sheet is not heat-treated; and

5. Unlawfully failed to disclose information presented in an ex-parte meeting.

Defendant-Intervenors agree with Defendant's response brief, which is incorporated herein by reference. Additional arguments and facts supporting the Department's conclusion are set forth below.

Valeo's claim that the Department's <u>Final Ruling</u> is unlawful because the Department conducted an analysis under 19 C.F.R. § 351.225(k)(2) without formally initiating a scope ruling is wrong. The Department's regulations require a scope application to include a clear description of the merchandise subject to the request, as well as documentation supporting the applicant's position on whether the merchandise is covered by the scope. Valeo's initial scope application failed to meet this standard, necessitating the Department's requesting additional information to clarify even the basic characteristics of the product for which Valeo requested a scope ruling. Moreover, Valeo's scope application included Aluminum Association publications and was required to include the technical characteristics of the merchandise at issue. As a result, the Department reliance on and analysis of these sources and facts is squarely within 19 C.F.R. § 351.225(k)(1).

In addition, several of Valeo's arguments depend on the incorrect antecedent fact that Valeo's brazing sheet imports are not a clad aluminum sheet product. These include Valeo's claims that: (1) because its imports are heat-treatable, they are outside the scope; and (2) the Department wrongly interpreted a U.S. International Trade Commission publication. As Defendant correctly explained in its response brief, the Department correctly found that Valeo's

NON-CONFIDENTIAL

imports are clad, a finding that is [

                                                                    ] – and a Valeo

representative's public testimony before the U.S. International Trade Commission.  If the Court

finds that substantial evidence supports the Department's finding that the imported product

identified by Valeo is a clad product, Valeo's other arguments must be dismissed.

Valeo also misunderstands references to "heat-treatable sheet" in the staff report

accompanying the U.S. International Trade Commission's final determination in the original

investigation.  Like the Department's analysis in the <u>Final Ruling</u> and in a scope ruling involving

6xxx-series alloy aluminum sheet, the U.S. International Trade Commission's report refers only

to not clad aluminum sheet.  Moreover, the U.S. International Trade Commission publication

cannot trump the plain language of the scope and, therefore, references in the staff report

accompanying the U.S. International Trade Commission's views are not binding.

## **STANDARD OF REVIEW**

Consistent with this Court's instructions, and to avoid repetition of the standard of

review, Defendant-Intervenors incorporate by reference the discussion of the applicable standard

of review in Defendant's response brief.  <u>See</u> Def.'s Resp. Pl.'s R. 56.2 Mot. J. Upon Agency R.

at 12-13 (June 27, 2022) (ECF No. 30) (hereinafter "Def.'s Resp.").

## **STATEMENT OF FACTS**

Consistent with this Court's instructions, and to avoid repetition of certain facts,

Defendant-Intervenors incorporate by reference the Statement of Facts in Defendant's response

brief (<u>see</u> Def.'s Resp. at 2-10), and provide additional relevant facts below.

**NON-CONFIDENTIAL**

**Background**

In early February 2019, the U.S. Department of Commerce published antidumping and countervailing duty orders on imports of common alloy aluminum sheet ("CAAS") from China. See Common Alloy Aluminum Sheet From the People's Republic of China: Countervailing Duty Order, 84 Fed. Reg. 2,157 (Dep't Commerce Feb. 6, 2019) (hereinafter, "CVD Order"); Common Alloy Aluminum Sheet From the People's Republic of China: Antidumping Duty Order, 84 Fed. Reg. 2,813 (Dep't Commerce Feb. 8, 2019) (hereinafter, "AD Order") (collectively, "the Orders").[2] The Orders defined the scope as follows:

> The merchandise covered by this order is aluminum common alloy sheet (common alloy sheet), which is a flat-rolled aluminum product having a thickness of 6.3 mm or less, but greater than 0.2 mm, in coils or cut-to-length, regardless of width. Common alloy sheet within the scope of this order includes both not clad aluminum sheet, as well as multi-alloy, clad aluminum sheet. With respect to not clad aluminum sheet, common alloy sheet is manufactured from a 1XXX-, 3XXX-, or 5XXX-series alloy as designated by the Aluminum Association. With respect to multi-alloy, clad aluminum sheet, common alloy sheet is produced from a 3XXX-series core, to which cladding layers are applied to either one or both sides of the core.

> Common alloy sheet may be made to ASTM specification B209–14, but can also be made to other specifications. Regardless of specification, however, all common alloy sheet meeting the scope description is included in the scope. Subject merchandise includes common alloy sheet that has been further processed in a third country, including but not limited to annealing, tempering, painting, varnishing, trimming, cutting, punching, and/or slitting, or any other processing that would not otherwise remove the merchandise from the scope of the order if performed in the country of manufacture of the common alloy sheet.

---

[2]    For convenience, Defendant-Intervenors will cite only to the AD Order, as the scope definition in each order is identical.

NON-CONFIDENTIAL

> Excluded from the scope of this order is aluminum can stock, which is suitable for use in the manufacture of aluminum beverage cans, lids of such cans, or tabs used to open such cans. Aluminum can stock is produced to gauges that range from 0.200 mm to 0.292 mm, and has an H–19, H–41, H–48, or H–391 temper. In addition, aluminum can stock has a lubricant applied to the flat surfaces of the can stock to facilitate its movement through machines used in the manufacture of beverage cans. Aluminum can stock is properly classified under Harmonized Tariff Schedule of the United States (HTSUS) subheadings 7606.12.3045 and 7606.12.3055.

> Where the nominal and actual measurements vary, a product is within the scope if application of either the nominal or actual measurement would place it within the scope based on the definitions set for the above.

> Common alloy sheet is currently classifiable under HTSUS subheadings 7606.11.3060, 7606.11.6000, 7606.12.3090, 7606.12.6000, 7606.91.3090, 7606.91.6080, 7606.92.3090, and 7606.92.6080. Further, merchandise that falls within the scope of this order may also be entered into the United States under HTSUS subheadings 7606.11.3030, 7606.12.3030, 7606.91.3060, 7606.91.6040, 7606.92.3060, 7606.92.6040, 7607.11.9090. Although the HTSUS subheadings are provided for convenience and customs purposes, the written description of the scope of this order is dispositive.

AD Order, 84 Fed. Reg. at 2,815.

Effective January 1, 2020, one of the Harmonized Tariff Schedule of the United States ("HTSUS") statistical subheadings identified in the scope definition – specifically, HTSUS subheading 7606.12.3090 – that provided for not clad aluminum alloy sheet and strip with a thickness exceeding 0.2 millimeters and 6.3 millimeters or less (not including can stock), was sub-divided into two new subheadings.[3]  In particular, the two new subheadings were: (1) HTSUS subheading 7606.12.3091, which provides for "heat-treatable industrial alloys of a kind

---

[3]   The January 1, 2020 revision modified the HTSUS to incorporate changes decided by the Section 484(f) Committee and that are contained in Basic Edition of that year.  The 2020 HTSUS Basic Edition is available at: https://hts.usitc.gov/view/release?release=2020HTSABasicB.

described in statistical note 6" to Chapter 76; and (2) HTSUS subheading 7606.12.3096, which provides for the remaining merchandise previously covered under HTSUS subheading 7606.12.3090. The category for clad aluminum alloy sheet, which was also identified in the Orders' scope – HTSUS subheading 7606.12.6000 – was not modified and remained unchanged.

**Valeo's Scope Ruling Request**

On May 1, 2020, Valeo requested a scope ruling concerning a product it characterized as "heat-treated T-series sheet." See Letter from Crowell & Moring LLP to Sec of Commerce Pertaining to Valeo (REJECTED) Scope Ruling Req at 1 (CR 1) (PR 1). The product description in Valeo's request, however, demonstrated that the product at issue was in fact a form of brazing sheet, which is a clad aluminum sheet product that falls within the Orders' scope. In particular, Valeo's description of the merchandise indicated the brazing sheet at issue was an aluminum sheet product with "discrete layers," including "high silicon content and low melting temperature" outer layers, which were subjected to a hot-rolling process and annealed. Id. at 4 (CR 1) (PR 1). Further, Valeo admitted that the "major alloying element {in the core of the product at issue} is manganese, not magnesium," with the "center layer {} composed of manganese ranging from [          ] percent." Id. at 9 (CR 1) (PR 1) (emphasis in original). This admission by Valeo is significant because it indicates that the core of the brazing sheet product for which Valeo requested a ruling is manufactured from a 3xxx-series alloy (i.e., an alloy that has manganese as its principal alloying element).

Valeo also asserted in its initial scope ruling that the correct HTSUS classification for the imported brazing sheet is HTSUS subheading 7606.12.3091. See id. at 4 (CR 1) (PR 1). This statistical subheading covers "aluminum plates, sheet and strip, of a thickness exceeding 0.2 mm; rectangular (including squares) of aluminum alloys; **not clad**; with a thickness of 6.3 mm or less;

other; heat-treatable industrial alloys of a kind described in statistical note 6" of Chapter 76. Letter from Kelley Drye & Warren LLP to Sec of Commerce Pertaining to Domestic Industry Cmts on Valeo's Scope Ruling Req at Attachment 1 (emphasis added) (CR 2-3) (PR 9-11) (containing relevant excerpts of HTSUS Chapter 76). Further, note 6 to Chapter 76 explains that "{f}or the purposes of statistical reporting numbers," including HTSUS subheading 7606.12.3091, "'heat-treatable industrial alloys' refers to aluminum containing by weight 3.0 percent or less of magnesium and 3.0 percent or less of silicon, and/or are designated as series 6xxx in the Aluminum Association's specifications of registered alloys." Id. (CR 2-3) (PR 9-11).

Valeo's claimed HTSUS classification (i.e., subheading 7606.12.3091) was clearly erroneous, however, based on Valeo's plain description of the imported merchandise as a clad product with an outer layer having a high silicon content and the inner (or core) layer involving an alloy with manganese as the principal alloying element (i.e., a 3xxx-series alloy). See Letter from Crowell & Moring LLP to Sec of Commerce Pertaining to Valeo (REJECTED) Scope Ruling Req at 4, 7 (CR 1) (PR 1). Contrary to Valeo's assertion, clad aluminum sheet (including brazing sheet) is properly classified under HTSUS subheading 7606.12.6000, the provision for "Aluminum plates, sheets and strip, of a thickness exceeding 0.2 mm: Rectangular (including square): . . . Of aluminum alloys: . . . Clad." See Letter from Kelley Drye & Warren LLP to Sec of Commerce Pertaining to Domestic Industry Cmts on Valeo's Scope Ruling Req at 6-7, Attachments 1, 3-4 (CR 2-3) (PR 9-11).

On May 27, 2020, Defendant-Intervenors submitted comments to the Department addressing Valeo's scope application, explaining that because Valeo's brazing sheet product is clad aluminum sheet with a 3XXX-series aluminum alloy core, it is covered by the scope's plain

**NON-CONFIDENTIAL**

language.  See Kelley Drye & Warren LLP to Sec of Commerce Pertaining to Domestic Industry

Cmts on Valeo's Scope Ruling Req (CR 2-3) (PR 9-11).  Defendant-Intervenors also urged the

Department to make a referral to U.S. Customs and Border Protection to determine how Valeo

had been classifying its imports of the brazing sheet product , given the company's claim that the

proper classification was subheading HTSUS subheading 7606.12.3091.  See id. at 7 n.5 (CR 2-

3) (PR 9-11).

      **Contrary to Its Initial Claim, Valeo's [**

                                        **]**

      On June 30, 2020, after the Department rejected Valeo's scope application as incomplete

and Valeo re-submitted its scope application, Valeo filed an amended APO application that

included a sample CBP Form 7501 Entry Summary dated [         ] to demonstrate its

standing as an importer of the subject brazing sheet.  See APO from Crowell & Moring LLP to

Sec of Commerce Pertaining to Valeo CBP Form 7501 (CR 8) (PR 20).  [



      ] See id at Exhibit 1 (CR 8) (PR 20).

      In a supplemental questionnaire, the Department instructed Valeo to clarify this apparent

discrepancy by:

      (1) Confirming "the accurate tariff subheading(s) used to import" Valeo's
           merchandise and to "explain why this is the appropriate subheading."

      (2) If Valeo continued to claim that the correct classification is subheading
           7606.12.3091, "explain{ing} why the product appears to have entered under
           HTSUS [             ]."

NON-CONFIDENTIAL

       (3) Submitting "a copy of a CF 7501 ***from 2020*** showing an importation of" the so-called "heat-treated T-series aluminum sheet."

Letter from USDOC to Crowell & Moring Pertaining to Valeo Scope Supplemental Qnaire at 4 (CR 9) (PR 23) (emphasis added).

      In response to the Department's questionnaire, Valeo stated that it believed the correct classification of the imported product was HTSUS subheading 7606.12.3091, [

       ] <u>See</u> Response from Crowell & Moring LLP to Sec of Commerce Pertaining to Valeo Req for Scope Ruling, Attachment 2 at 5-6 (CR 10) (PR 24).  Significantly, Valeo admitted that it had "been classifying its heat-treated T-series sheet under [     ]," but claimed that because subheading 7606.12.3091 was created in January 2020, "Valeo could not use the classification prior to that" date.  <u>Id.</u> at 6 (CR 10) (PR 24).

      As this Court is well aware, however, changes to the statistical reporting numbers in the HTSUS (<u>i.e.</u>, changes at the level of the ninth and tenth digits) have no legal significance for purposes of classification.  If Valeo's imports of brazing sheet were not classified under subheading 7606.12.3090 before January 1, 2020 (when that subheading was sub-divided into statistical subheadings 7606.12.3091 and 7606.12.3096), then the brazing sheet imported by Valeo was not properly classifiable under either of the two newly established statistical breakouts after January 1, 2020.  <u>See</u> Letter from Kelley Drye & Warren LLP to Sec of Commerce Pertaining to the Domestic Industry Response to Valeo's Resubmitted Scope Ruling Req at 13-14 (CR 11) (PR 25).

      Moreover, despite Valeo's claim that the reason it entered its so-called "heat-treated T-series sheet" under HTSUS subheading [     ] in [     ] was that HTSUS

NON-CONFIDENTIAL

statistical subheading 7606.12.3091 had not yet been created, Valeo a submitted an entry

summary from [

], in which Valeo

[

]   <u>See</u> Response from Crowell & Moring LLP to Sec of Commerce

Pertaining to Valeo Req for Scope Ruling, Attachment 2 at 6, Exhibit S-5 (CR 10) (PR 24).

**<u>The Commission's Original Injury Investigation</u>**

Valeo's conduct during the United States International Trade Commission's (hereinafter

"ITC") original investigation demonstrates it was well aware that its imported brazing sheet was

within the scope of the Orders, regardless of whether the core alloy was "proprietary" or

specifically registered with the Aluminum Association.   In public testimony before the ITC

during the preliminary phase of the investigation, a Valeo official testified that:

> Common alloy sheet cannot be used to replace the sophisticated
> brazing sheet that we import from China or other markets, for these
> specialized applications.
>
> . . .
>
> We need three layer alloys with a sacrificial and multilayer
> material, whose only function is corrosion resistance.
>
> . . .
>
> So what is so special about the alloys that we use? Like we say, ***we
> use proprietary alloys*** and processes developed by the aluminum
> manufacturers to meet the demanding requirements of the
> automotive sector.   In nearly all cases, the common 3000 series
> alloys have been replaced with high strength, highly corrosion
> resistant proprietary alloys developed specifically for the
> automotive market.
>
> Like I said before, the two main physical characteristics are the
> mechanical strength and the corrosion resistance.   And the two

NON-CONFIDENTIAL

> main elements that allow us to achieve that are copper and manganese.

Kelley Drye & Warren LLP to Sec of Commerce Pertaining to Domestic Industry Cmts on Valeo's Scope Ruling Req, Attachment 3 at 126-128 (CR 2-3) (PR 9-11) (emphasis added).

Additional testimony by the Valeo official emphasized the proprietary nature and higher copper content of the core alloy used in the imported brazing sheet:

> This one basically shows you the chemical composition of two of our proprietary alloys.  And you can see the main element is copper.  Like Mr. Cannistra mentioned, you can clearly see that the copper content in our alloys is almost 10 times higher than the common 3000 alloy.  And this is what we use for the core.
>
> Our brazing sheet is composed of a proprietary core alloy and one or more layers of braze clad.

Id., Attachment 3 at 128 (CR 2-3) (PR 9-11).

The testimony of the Valeo official describing the imported brazing sheet is nearly identical to the descriptions of the so-called "T-series heat-treated sheet" in Valeo's scope application.  This is not surprising, however, because both descriptions appear to involve the same product.

During the ITC's preliminary injury hearing, Valeo representatives were very clear that the imported brazing sheet that was the focus of their testimony was a clad product.  In explaining why public import statistics showed that brazing sheet is higher priced than other in-scope CAAS, Valeo's counsel explained:

> {T}he brazing sheet is exclusively on the clad side.  So we just began with a separation between clad and unclad.
>
> But as we pointed out, we're at the upper bound of the clad side . . . .

NON-CONFIDENTIAL

Id., Attachment 3 at 133 (CR 2-3) (PR 9-11).  Further, in responding to a question from an ITC

official concerning whether the brazing sheet imported by Valeo was classified under a unique

statistical subheading in the HTSUS that is specific to the clad sheet product imported by Valeo,

Valeo's attorney confirmed that it is not:

> There is – – there is not.  It is separated by thickness, alloyed or
> not alloyed, and clad or not clad. Those are the only degrees of
> separation.
>
> . . .
>
> The closest separation is between clad and not clad, us being in the
> clad category exclusively.

Id., Attachment 3 at 134 (CR 2-3) (PR 9-11).

During the ITC's preliminary proceedings, Valeo argued that brazing sheet should be

considered a separate like product from the remainder of in-scope merchandise.  See id., at

Attachment 4 (CR 2-3) (PR 9-11).  This is particularly relevant because the ITC's finding of a

separate like product is made only with respect to in-scope merchandise.[4]  In particular, in

seeking to advance its argument that brazing sheet should be found to be a separate like product,

Valeo highlighted differences in the chemical composition of brazing sheet and CAAS based on

the use of "{p}roprietary alloys super-saturated with elements to develop special properties" –

once again highlighting Valeo's clear understanding that the proprietary nature of the core alloy

did not remove the brazing sheet from the scope.  Id., Attachment 4 at 3.  Valeo did not pursue

its argument concerning the like product in the ITC's final phase injury proceedings.

---

[4]    In other words, Valeo did not argue the Commission should expand the domestic like
product beyond the scope.

NON-CONFIDENTIAL

**The Department's Final Scope Ruling**

On October 15, 2021, following Valeo's submission of responses to additional questions and re-filing of its scope application, the Department issued the final scope ruling concluding that the brazing sheet imported by Valeo is covered by the plain language of the Orders' scope. See Def.'s Resp. at 8-10. This appeal followed.

## ARGUMENT

I. **THE DEPARTMENT'S SCOPE RULING IS SUPPORTED BY SUBSTANTIAL EVIDENCE AND IS OTHERWISE IN ACCORDANCE WITH LAW**

A. **The Department Lawfully Issued a Scope Ruling Without Initiating a Scope Inquiry Under 19 C.F.R. § 351.225(k)(1)**

Valeo claims the process underlying the Department's scope ruling was unlawful because the Department failed to initiate a scope ruling pursuant to 19 C.F.R. § 351.225(k)(2). See Valeo's Br. at 15-20. In particular, Valeo claims the Department relied on "various publications by the Aluminum Association and declarations of the Vice President of Standards and Technology for the Aluminum Association" – sources, which Valeo argues, go beyond the sources identified in 19 C.F.R. § 351.225(k)(1). Valeo's Br. at 19. Valeo also points to the Department's analysis of physical characteristics of the imported brazing sheet, which it claims are reserved for an analysis under 19 C.F.R. § 351.225(k)(2). See id. at 20.

Defendant-Intervenors agree with Defendant's response to Valeo's claim and incorporate it by reference. See Def.'s Resp. at 24-29. Defendant-Intervenors provide additional arguments in response to Valeo's claim below.

As the beginning point for any scope ruling, the scope application should provide the Department with a clear description of the product in question. The Department's regulations[5] require that a scope ruling application contain "{a} detailed description of the product, including its technical characteristics and uses, and its current U.S. Tariff Classification number," as well as "{a}ny factual information supporting" the requestor's position as to whether the merchandise is covered by the scope. 19 C.F.R. § 351.225(c)(1)(i)-(ii).

Valeo's description of its product as "heat-treated T-series sheet," as well as its claim that the product was not clad and identification of the proper tariff classification as HTSUS subheading 7606.12.3091, all failed to meet a scope requestor's obligation under 19 C.F.R. § 351.225(c). See Letter from Crowell & Moring LLP to Sec of Commerce Pertaining to Valeo (REJECTED) Scope Ruling Req at 2, 4 (CR 1) (PR 1). Whether intentional or not, Valeo's initial descriptions of the imported merchandise were quite confusing. As discussed above in the Statement of Facts, Valeo classified its brazing sheet imports under HTSUS subheading

[

]  See APO from Crowell & Moring LLP to Sec of Commerce Pertaining to Valeo CBP Form 7501 (CR 8) (PR 20); Response from Crowell & Moring LLP to Sec of Commerce Pertaining to Valeo Req for Scope Ruling, Attachment 2 at 6, Exhibit S-5 (CR 10) (PR 24). Further, Valeo referred to this product throughout the ITC's preliminary phase injury investigation as brazing sheet – a form of clad aluminum sheet used in

---

[5] 19 C.F.R. § 351.225 was revised effective November 4, 2021. See Regulations To Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws, 86 Fed. Reg. 52,300, 52,300 (Dep't Commerce Sept. 20, 2021) (providing that the effective date for amendments to 19 C.F.R. § 351.225 is November 4, 2021). As a result, Defendant-Intervenors refer to the version of the Department's regulations in effect at that the time of Valeo's scope ruling application.

NON-CONFIDENTIAL

the manufacture of automotive heat exchangers.  <u>See</u> Kelley Drye & Warren LLP to Sec of Commerce Pertaining to Domestic Industry Cmts on Valeo's Scope Ruling Req, Attachment 3 at 126-128 and Attachment 4 (CR 2-3) (PR 9-11).  Thus, Valeo's scope ruling application required substantial clarification before the Department could even attempt to issue a ruling under 19 C.F.R. § 351.225(k)(1), and the Court should reject Valeo's complaint that the Department's reliance on information outside of its scope application and the sources listed in 19 C.F.R. § 351.225(k)(1) was unlawful.  If Valeo had submitted a clear scope ruling application supported by evidence, the agency would have been in a position to issue a swift ruling based on the application itself – without requiring Valeo to submit additional information and explanation regarding the imported product.

Valeo's claims that the Department's ruling is unlawful because the agency relied on Aluminum Association publications and physical characteristics of the merchandise is also wrong.  Valeo itself submitted copies of Aluminum Association publications to the Department in support of its application.  <u>See</u> Letter from Crowell & Moring LLP to Sec of Commerce Pertaining to Valeo (REJECTED) Scope Ruling Req at Exhs. 3-4, 8.  Moreover, scope requestors are required to submit "{a} detailed description of the product, including its technical characteristics and uses" as part of the scope application.  19 C.F.R. § 351.225(c)(1).  As a result, the Department's reliance on Aluminum Association publications – including any clarification of them, as well as information on the physical characteristics of Valeo's merchandise, are squarely within an appropriate analysis under 19 C.F.R. § 351.225(k)(1).  The Court, therefore, should reject Valeo's claim.

**B.    Valeo's Arguments Wrongly Depend on the Company's Inaccurate Description of the Imported Merchandise Being Not Clad Aluminum Sheet**

Valeo argues the Department misinterpreted the Orders' scope by concluding that clad aluminum sheet and aluminum sheet that has been heat-treated are mutually exclusive.  See Valeo's Br. at 31-34.   In particular, Valeo argues that heat-treated aluminum sheet is not aluminum sheet produced from 1xxx-, 3xxx-, and 5xxx-series alloys and, therefore, it is heat-treated aluminum sheet and excluded from the scope.  Valeo also argues the Department wrongly dismissed a sentence in the ITC's final determination in the original investigation because the Department "misstates and misunderstands the foundation upon which the Commission's factual finding regarding heat-treatable alloys was based."  Valeo's Br. at 34.   To the contrary, it is Valeo – not the Department – that is "confused," as Valeo misreads the plain language of the Orders' scope.

The Orders define in-scope merchandise under two broad categories: (1) not clad aluminum sheet that is produced from a 1xxx-, 3xxx-, and 5xxx-series alloy; and (2) clad aluminum sheet that has a core produced from a 3xxx-series aluminum alloy.  See AD Order, 84 Fed. Reg. at 2,815.  With respect to in-scope clad aluminum sheet, the cladding layers can be produced from any aluminum alloy, including alloys that are heat-treatable.

Valeo's brazing sheet is a clad aluminum sheet product that is properly classifiable under HTSUS subheading 7606.12.6000, [                                                      ]  As a result, the brazing sheet identified by Valeo is not coved by the Orders' scope because it is produced from a 1xxx-, 3xxx-, and 5xxx-series alloy.  Rather, the brazing sheet identified by Valeo is in-scope merchandise because it is clad aluminum sheet with a core produced from a 3xxx-series aluminum alloy.  See AD Order, 84 Fed. Reg. at 2,815.  The Department correctly understood

-16-

and explained this distinction in its scope ruling. <u>See</u> Memo from USDOC to Associate DAS For Operations Pertaining to Valeo Scope Ruling BPI at 6 (CR 15) (PR 40).

Indeed, the Department's analysis in the <u>Final Scope Ruling</u> is consistent with the Department's prior scope ruling involving not clad aluminum sheet produced from 6061 alloy aluminum. <u>See</u> Memo from USDOC to File Pertaining to Valeo Factual Information Memo at Attachment 5 (PR 41). In that determination, the Department specifically analyzed the phrase "not clad aluminum sheet" and concluded that "not clad aluminum sheet" manufactured from a 6xxx-series alloy is not covered by the scope. <u>Id.</u> (PR 41). The Department even noted references in the ITC's final determination concerning 6xxx-series alloys not being covered by the scope. <u>Id.</u> (PR 41). As the Department correctly recognized, however, those references are *only* to not clad aluminum sheet, and do not encompass the brazing sheet at issue in Valeo's scope request.

As Defendant explained in its response brief, the Department's finding that Valeo's brazing sheet is a clad product is supported by substantial evidence. <u>See</u> Def.'s Resp. at 16-21. Moreover, as discussed in detail above in the Statement of Facts, Valeo is well aware that the merchandise subject to its scope ruling request is a clad product, [



] <u>See</u> APO from Crowell & Moring LLP to Sec of Commerce Pertaining to Valeo CBP Form 7501 (CR 8) (PR 20); Response from Crowell & Moring LLP to Sec of Commerce Pertaining to Valeo Req for Scope Ruling, Attachment 2 at 6, Exhibit S-5 (CR 10) (PR 24). Once the fact that Valeo's brazing sheet is a clad product is

established, Valeo's arguments concerning "heat-treatable" alloys are irrelevant and should be dismissed by this Court.

**C.**     **Valeo's Arguments Concerning the U.S. International Trade Commission's Understanding of the Scope Are Wrong**

As discussed above, Valeo argues the Department wrongly dismissed a sentence in the ITC's final determination in the original investigation concerning heat-treatable sheet not being covered by the scope of the investigation. See Valeo's Br. at 34-36.  In addition to Valeo's argument being premised on an incorrect assertion that Valeo's imported brazing sheet is not a clad product, this argument is also wrong for the following additional reasons, as well as those identified in Defendant's brief, which is incorporated here by reference. See Def.'s Resp. at 35-38.

First, regardless of any statement in ITC publications, the Orders' scope definition includes no exclusion for heat-treated aluminum sheet.  The only merchandise that is excluded from the scope is aluminum can stock. See AD Order, 84 Fed. Reg. at 2,815.

Second, it is well established that the Department, not the ITC, defines the scope of an investigation. See Cleo, Inc. v. United States, 2006 Ct. Intl. Trade LEXIS 143, *7 1382 (Ct. Int'l Trade Aug. 31, 2006), aff'd, 501 F.3d 1291 (Fed. Cir. 2007) ("Commerce and the ITC have distinct functions in antidumping proceedings.  Upon receipt of a petition, Commerce determines the scope of investigation by 'determin{ing} that a class or kind of foreign merchandise is being, or is likely to be, sold in the United States at less than fair value.'  If Commerce finds that subject merchandise is being sold at LTFV, the ITC then must determine whether a U.S. industry is being injured, threatened with injury, or materially retarded by reason of imports of that merchandise.") (citations omitted); see also Low Enriched Uranium from France, USITC Pub.

3967 at 8 (Review) (Dec. 2007) ("The courts have consistently held that Commerce has exclusive authority to define the scope of an investigation.") (citing e.g., NEC Corp. v. Department of Commerce, 36 F. Supp. 2d 380, 383 (Ct. Int'l Trade 1998); Usinor Industeel v. United States, 26 CIT 1402, 1405 (2002); Algoma Steel Corp. v. United States, 688 F. Supp. 639, 645 (Ct. Int'l Trade 1988), aff'd, 865 F.2d 240 (Fed. Cir. 1988), cert. denied, 492 U.S. 919 (1989); Makita Corp. v. United States, 974 F. Supp. 770, 783 (Ct. Int'l Trade 1997); Nippon Steel Corp. v. United States, 19 CIT 450, 467 (Ct. Int'l Trade 1995); United Engineering & Forging v. United States, 779 F. Supp. 1375, 1391 (Ct. Int'l Trade 1991)).  As a result, while the Department considers the "descriptions of the merchandise contained in . . . the determinations of . . . the Commission" pursuant to 19 C.F.R. § 351.225(k)(1) – in addition to other materials – in considering a scope application, any sentences in ITC publications cannot overcome the plain scope language or the Department's own scope interpretation.  See Quiedan Co. v. United States, 294 F. Supp. 3d 1345, 1355-56 (Ct. Int'l Trade 2018) (stating that "{t}he Court of Appeals for the Federal Circuit has stated that the (k)(1) factors are helpful in determining whether merchandise is within the scope of an Order, but cannot substitute for the plain language of the Order itself"), aff'd, 927 F.3d 1327 (Fed. Cir. 2019) (citing Meridian Meridian Prods., LLC v. United States, 851 F.3d 1375, 1382 (Fed. Cir. 2017)).

Third, Valeo describes the sentence from the ITC staff report as a "factual finding" of the ITC in its brief.  Valeo's Br. at 34.  The noted references to Commerce's scope in the staff report accompanying the Commission's final determination are not "factual findings" of the ITC.  Indeed, the ITC's final views (as opposed to the staff report accompanying such publication) do not include a single reference to "heat-treatable sheet."  Thus, there is no basis for this Court to

remand the Department's scope ruling based on the agency's treatment of the ITC's determinations.

Fourth, it bears noting that the record before the ITC was absolutely clear that Valeo's brazing sheet was a clad product.  See Kelley Drye & Warren LLP to Sec of Commerce Pertaining to Domestic Industry Cmts on Valeo's Scope Ruling Req, Attachments 3-4 (CR 2-3) (PR 9-11).  During the ITC's preliminary phase investigation, Valeo argued that brazing sheet should be considered a separate domestic like product, and testified extensively that brazing sheet is a clad product.   See Kelley Drye & Warren LLP to Sec of Commerce Pertaining to Domestic Industry Cmts on Valeo's Scope Ruling Req, Attachments 3-4 (CR 2-3) (PR 9-11). While the ITC rejected Valeo's arguments in its preliminary determination, Valeo abandoned its argument in the final phase when it failed to continue pursuing its argument concerning brazing sheet in the ITC's final phase proceedings.  See Common Alloy Aluminum Sheet from China, USITC Pub. 4757 (Prelim.) at 7-9 (Jan. 2018); Common Alloy Aluminum Sheet from China, USITC Pub. 4861 (Final) at 7 n.22 (Jan. 2019).  Valeo should not be rewarded for abandoning this line of argument and then subsequently attempting re-package its merchandise with a new name before a different agency to obtain a determination that it is not subject to the assessment of AD/CVD duties.

**D.    The Department's Determination That Valeo's Brazing Sheet Is Clad Aluminum Sheet Produced from a 3xxx-Series Core Is Supported by Substantial Evidence**

Defendant-Intervenors incorporate by reference sections II.B., II.D., and II.E. of Defendant's response brief, which demonstrate that the Department reasonably interpreted the scope, and that the Department's determination that Valeo's brazing sheet is covered by the scope is supported by substantial evidence. See Def.'s Resp. at 15-24, 29-35.

NON-CONFIDENTIAL

## II.    DEFENDANT-INTERVENORS INCORPORATE BY REFERENCE THE REMAINDER OF DEFENDANT'S RESPONSE BRIEF

Valeo argues the Department "twice . . . violated its statutory obligation and its policy regarding ex-party meetings."  Valeo's Br. at 36.  Further, Valeo argues that "this case must be remanded to Commerce so that is {sic} may issue a meaningful ex-parte meeting summary and provide Valeo with an opportunity to comment effectively on that factual information."  Id. at 39.

Contrary to Valeo's claim, and consistent with Defendant's brief, the Department did not violate any statute or policy, because the agency prepared and placed on the record ex-parte meeting memoranda concerning each meeting.  Defendant-Intervenors agree with the Department's response to Valeo's claim and incorporate Defendant's response by reference.  See Def.'s Resp. at 38-42.

NON-CONFIDENTIAL

III.   **CONCLUSION**

For the reasons set forth above and in Defendant's response brief, Defendant-Intervenors respectfully urge this Court to reject Valeo's arguments and to affirm the Department's final scope ruling.

Respectfully submitted,

/s/ John M. Herrmann
JOHN M. HERRMANN
PAUL C. ROSENTHAL
JOSHUA R. MOREY
KELLEY DRYE & WARREN LLP
3050 K Street, N.W., Suite 400
Washington, DC 20007
(202) 342-8400

Counsel to the Aluminum Association Common Alloy Aluminum Sheet Trade Enforcement Working Group and Its Individual Members

Dated: July 5, 2022

## CERTIFICATE OF COMPLIANCE
## WITH U.S. COURT OF INTERNATIONAL TRADE
## STANDARD CHAMBERS PROCEDURES

Pursuant to the United States Court of International Trade Standard Chambers procedures and this Court's January 24, 2022 Order (ECF No. 22) setting the word limitation for Defendant-Intervenors Aluminum Association Common Alloy Aluminum Sheet Trade Enforcement Working Group and its individual members Aleris Rolled Products, Inc., Arconic Corporation, Commonwealth Rolled Products Inc., Constellium Rolled Products Ravenswood, LLC, Jupiter Aluminum Company, JW Aluminum Company and Novelis Corporation's Response Brief in Opposition to Motion for Plaintiff Valeo North America, Inc. for Judgment On the Agency Record to 10,000 words, counsel for Defendant-Intervenors certifies that this Brief contains 6,052 words, including footnotes.  The word count certification is made in reliance on the word-count feature contained in Microsoft Word Office 2016.

/s/ John M. Herrmann
JOHN M. HERRMANN
PAUL C. ROSENTHAL
JOSHUA R. MOREY
KELLEY DRYE & WARREN LLP
3050 K Street, N.W., Suite 400
Washington, DC  20007
(202) 342-8400

Counsel to the Aluminum Association Common Alloy Aluminum Sheet Trade Enforcement Working Group and Its Individual Members

Dated:  July 5, 2022