**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE**

| | |
|---|---|
| VALEO NORTH AMERICA, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Court No. 21-00581 |
| ) | |
| UNITED STATES, ) | |
| ) | |
| Defendant, ) | |
| ) | |
| and ) | |
| ) | |
| ALUMINUM ASSOCIATION COMMON ) | |
| ALLOY ALUMINUM SHEET TRADE ) | |
| ENFORCEMENT WORKING GROUP ) | |
| ET AL., ) | |
| ) | |
| Defendant-Intervenors. ) | |

## DEFENDANT'S COMMENTS SUPPORTING REMAND REDETERMINATION

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

REGINALD T. BLADES, JR.
Assistant Director

OF COUNSEL:

ALISON S. VICKS
Senior Trial Counsel
U.S. Dept. of Justice
Civil Division/National Courts
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044

JONZACHARY FORBES
Attorney
Office of the Chief Counsel
for Trade Enforcement and Compliance
U.S. Department of Commerce
Washington, D.C.

September 20, 2023

Attorneys for Defendant

# TABLE OF CONTENTS

BACKGROUND ....................................................................................................1

    I.      The Administrative Determination Under Review .....................................1

    II.     The Court's December 21, 2022 Remand Order .......................................2

    III.    Commerce's Remand Results ....................................................................3

ARGUMENT .......................................................................................................5

    I.      Standard Of Review ..................................................................................5

    II.     Commerce's Remand Results Are Supported By Substantial Evidence And In Accordance With Law ..............................................................................5

          A.     The Scope Is Ambiguous As To Whether Commerce Intended The Scope To Cover Unregistered Alloys .........................................................5

          B.     Commerce Properly Considered Relevant Sources When Evaluating The Term "As Designated By" Within The Context Of Its (k)(1) Analysis .................................................6

          C.     Commerce Properly Considered Its Separate Rate Determination Based On Sales Of An Unregistered Alloy During The Underlying Investigations .................................................9

          D.     Commerce Properly Conducted A (k)(2) Analysis .................................13

          E.     Commerce Properly Determined That Valeo's T-series Aluminum Sheet Is Not Heat Treatable .................................................16

          F.     Commerce's Determination Not To Revoke Its Customs Instructions Is In Accordance With Law ....................................................17

CONCLUSION ....................................................................................................19

## TABLE OF AUTHORITIES

**Cases**

*Consolidated Edison Co. of New York v. National Labor Relations Board*,
   305 U.S. 197 (1938) ..................................................................................................15

*Consolo v. Federal Maritime Comm'n*,
   383 U.S. 607 (1966) ..................................................................................................14

*Duferco Steel, Inc. v. United States*,
   296 F.3d 1087 (Fed. Cir. 2002) ..................................................................................7

*Fedmet Resources Corp. v. United States*,
   755 F.3d 912 (Fed. Cir. 2014) ........................................................................8, 9, 11

*MacLean-Fogg Co. v. United States*,
   100 F. Supp. 3d 1349 (Ct. Int'l Trade 2015) ..............................................................5

*Mid Continent Nail Corp. v. United States*,
   725 F.3d 1295 (Fed. Cir. 2013) ................................................................................11

*Star Pipe Prod. v. United States*,
   981 F.3d 1067 (Fed. Cir. 2020) ................................................................................11

*United Steel and Fasteners, Inc. v. United States*,
   947 F.3d 794 (Fed. Cir. 2020) ..................................................................................17

*Valeo North America, Inc. v. United States*,
   610 F. Supp. 3d 1322 (Ct. Int'l Trade 2022) ....................................................2, 4, 5

**Regulations**

19 C.F.R. § 351.225 ..........................................................................................passim

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE:  THE HONORABLE MARK A. BARNETT, CHIEF JUDGE**

| | |
|---|---|
| **VALEO NORTH AMERICA, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Court No. 21-00581** |
| ) | |
| **UNITED STATES,** ) | |
| ) | |
| **Defendant,** ) | |
| ) | |
| **and** ) | |
| ) | |
| **ALUMINUM ASSOCIATION COMMON ALLOY** ) | |
| **ALUMINUM SHEET TRADE ENFORCEMENT** ) | |
| **WORKING GROUP, *et al.*,** ) | |
| ) | |
| **Defendant-Intervenors.** ) | |

**DEFENDANT'S COMMENTS SUPPORTING REMAND REDETERMINATION**

Defendant, the United States, respectfully submits these comments in response to the comments of plaintiff, Valeo North America, Inc. (Valeo), supporting the final remand redetermination filed by the Department of Commerce (Commerce) in accordance with this Court's December 21, 2022 Remand Order and Opinion (Remand Order).  For the reasons set forth below, we respectfully request that the Court sustain Commerce's remand results and enter final judgment.

**BACKGROUND**

**I.    The Administrative Determination Under Review**

The administrative determination under review is Commerce's final scope ruling on Valeo's T-series aluminum sheet pursuant to antidumping and countervailing duty orders (the

*Orders*) on common alloy aluminum sheet (aluminum sheet) from the People's Republic of

China (China).  *See Antidumping and Countervailing Duty Orders on Aluminum Sheet from the*

*People's Republic of China: Final Scope Ruling Determination: Valeo's Heat Treated T-Series*

*Aluminum Sheet* (Dep't of Commerce Oct. 15, 2021) (final scope ruling) (P.R. 40) and Factual

Information Memorandum (P.R. 41).[1]

## II.     The Court's December 21, 2022 Remand Order

On December 21, 2022, the Court remanded Commerce's final scope ruling for further

consideration in accordance with the Remand Order.  *See Valeo North America, Inc. v. United*

*States*, 610 F. Supp. 3d 1322 (Ct. Int'l Trade 2022).  The Court held that "the scope is ambiguous

{…} as to whether Commerce intended to cover any alloy that contains a major alloying element

corresponding to the Aluminum Association's alloy groups (including unregistered alloys), or

whether Commerce intended the scope to be limited to registered alloys within the enumerated

series with four-digit designations assigned by the Aluminum Association" and that

"Commerce's scope interpretation exceeded the limits of a (k)(1) analysis and is unsupported by

substantial evidence."  *Id.* at 1335.  The Court then held that, "Commerce's determination that

Valeo's product is a clad product is supported by substantial evidence," but that, "to the extent

necessary to its determination, Commerce must address evidence that Valeo's product undergoes

heat-treatment."  *Id.* at 1339-1341.  In its Remand Order, the Court stated, "{o}n remand, if

Commerce continues to rely on (k)(1) sources, it must reconsider and further explain it rulings

---

[1]  For ease of reference, the record citations refer to documents filed under the
antidumping duty case number, A-570-073 with P.R./C.R. designating citation to the initially
filed administrative record index, *see* ECF No. 18, and P.R.R./C.R.R. designating citation to the
remand record index.  *See* ECF No. 64.  Duplicate documents were filed under the countervailing
duty case number and both records were filed with the Court.  *See* Dkt. Nos. 18, 64.
Additionally, Federal Register short citation to the Orders' scope corresponds with the AD
Order, *i.e.*, 84 Fed. Reg. at 2,815.  The *Orders*' scope language is identical.

pursuant to 19 CFR 351.225(d)," or, "{a}lternatively, Commerce may determine to conduct a scope inquiry pursuant to 19 CFR 351.225(e)."  *Id.* at 1338.

### III.   **Commerce's Remand Results**

On February 15, 2023, in accordance with the Remand Order, after determining that the issue of whether Valeo's T-series aluminum sheet is included within the scope cannot be determined based solely upon the application and the descriptions of the merchandise referred to in 19 C.F.R. § 351.225(k)(1), Commerce initiated a scope inquiry under 19 C.F.R. § 351.225(e). *See* Commerce Scope Initiation (P.R.R. 1).  After reviewing record information under 19 C.F.R. § 351.225(k)(1) and other relevant information concerning trade usage, Commerce determined that the (k)(1) factors are not dispositive to determine whether Valeo's T-series sheet is covered by the *Orders*, and thus Commerce considered 19 C.F.R. § 351.225(k)(2) factors.  *See* Final Results of Redetermination Pursuant to Court Remand (Remand Results) at 3.  After review of the record (k)(2) factors, Commerce continued to find that the *Orders* cover Valeo's T-series aluminum sheet.  *Id.* at 3-4.

In its Remand Results, Commerce made certain findings based on record information within its (k)(1) analysis.  First, to clarify its analysis with respect to heat-treated clad sheet, Commerce reviewed record information to determine a definition of heat-treatment most relevant for the purposes of classifying aluminum alloys under the scope, concluding that the correct definition for heat-treatment is a synonym for "solution heat-treatment" and that the broader definition of heat-treatment was inconsistent with record information.  Remand Results at 21-25. Proceeding from that definition, Commerce determined that Valeo's T-series sheet is not properly considered "heat-treatable" for purposes of analyzing whether it is covered by the scope because record information indicates that it does not undergo solution heat-treatment.  *Id.*  at 25-

29.  Commerce concluded that Valeo's T-series sheet is a clad product that undergoes a combination of annealing and cold-working for purposes of understanding whether it is covered by the scope of the *Orders*.  *Id.* at 28-29.  After determining that Valeo T-series sheet is not a heat-treated (or heat-treatable) clad sheet, Commerce concluded that it was no longer necessary to determine whether such a product would be covered by the *Orders*.  *Id.* at 29.

Commerce then determined whether (k)(1) factors and other information on trade usage is dispositive to determine whether the *Orders* cover non-registered alloys with a principle alloying element corresponding to the Aluminum Association's alloy groups listed in the scope. First, looking at the Aluminum Association's alloy designations and chemical composition publication, known as the "*Teal Sheets*," as a whole, Commerce determined that the *Teal Sheets* supported the interpretation that the scope is limited to registered alloys with four-digit designations assigned by the Aluminum Association.  *Id.* at 41-42.  However, Commerce found that a separate rate determination that it made during the original investigations determining that an exporter-producer combination was entitled to a separate rate indicated that Commerce understood the scope to cover any alloy that contains a major alloying element corresponding to the Aluminum Association's alloy groups, including unregistered alloys.  *Id.* at 42-43.  The exporter-producer combination produced sales documentation showing that it had sold an unregistered proprietary alloy as part of its separate rate application to support that it "has exported, or sold for export, subject merchandise to the United States during the period of investigation."  *Id.* at 43.  By determining that the exporter-producer combination was entitled to a separate rate during the investigations, Commerce considered the combination to be an exporter of subject merchandise based on its sales documentation for an unregistered alloy.  *Id.* at 44.  But because there was not explicit analysis of this determination during the investigations,

4

Commerce reasonably determined that when weighing record information that this fact in and of itself was not dispositive. *Id.* at 45.

After considering the contradictory (k)(1) sources and their respective weights, Commerce reasonably determined that the (k)(1) sources were not dispositive and proceeded with its (k)(2) analysis in accordance with the regulations. *Id* at 53. Under Commerce's (k)(2) analysis examining the physical characteristics of the merchandise, the expectations of the ultimate purchasers, the ultimate use of the product, the channels of trade in which the product is sold, and the manner in which the product is advertised and displayed, Commerce determined that Valeo's T-series aluminum sheet is covered by the scope of the *Orders*. *Id.* at 68.

Finally, Commerce declined to revoke its prior customs instructions that were properly transmitted following the final scope ruling pursuant to 19 C.F.R. § 351.225(l)(3). *Id.* at 71-72.

## ARGUMENT

## I.   Standard Of Review

In remand proceedings, the Court will sustain Commerce's determination if it is "in accordance with the remand order," and is "supported by substantial evidence and otherwise in accordance with law." *See MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d 1349, 1355 (Ct. Int'l Trade 2015) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)).

## II.   Commerce's Remand Results Are Supported By Substantial Evidence And In Accordance With Law

### A.   The Scope Is Ambiguous As To Whether Commerce Intended The Scope To Cover Unregistered Alloys

In accordance with the Court's *Remand Order*, Commerce determined that the scope language is ambiguous as to whether the scope covers any alloy that contains a major alloying element corresponding to the Aluminum Association's alloy groups and therefore a (k)(1)

analysis was required.  *See* Remand Results 102-103 (citing Remand Order, 610 F. Supp. 3d at

1335).  In its remand comments, Valeo argues that the scope language is unambiguous and that

Commerce unlawfully found the plain language of the scope ambiguous.  *See* Valeo Remand

Comments at 3.  Commerce explained that as a matter of law, this Court has already determined

the scope to be ambiguous as to whether it covers an unregistered alloy such as Valeo's T-series

sheet and therefore a (k)(1) analysis was warranted.  *See* Remand Results at 102-103.  Thus, if

Valeo is arguing that Commerce should have directly contradicted the Court's finding to find the

scope unambiguous and not conduct a (k)(1) analysis, Commerce reasonably did not do so.  If,

instead, Valeo is arguing that Commerce should have found certain sources to be dispositive in

its (k)(1) analysis, that argument is addressed below.  Regardless, Commerce followed the

Court's holding that the scope is ambiguous with respect to whether the scope covers

unregistered alloys.  Remand Order at 1335. Commerce's determination that the scope is

ambiguous is supported by substantial evidence and in accordance with law.

> **B.     Commerce Properly Considered Relevant Sources When Evaluating The Term "As Designated By" Within The Context Of Its (k)(1) Analysis**

Commerce properly considered all record information when evaluating the definition of

"as designated by" the Aluminum Association in accordance with law under (k)(1), and its

determination that there is no dispositive interpretation of "as designated by" is reasonable and

supported by substantial evidence.

Valeo argues that the *Teal Sheets* should have been treated as the preeminent definitional

source that unambiguously provides the definition for "as designated by the Aluminum

Association" and that Commerce improperly proceeded to analyze other (k)(1) sources and other

information indicating trade usage.  Valeo Remand Comments at 4.  There are several possible

interpretations of the argument being advanced by Valeo, each with its own flaw.

To the extent that Valeo is arguing that Commerce should have determined that the *Teal Sheets* provide a definition that renders the scope unambiguous as to whether unregistered alloys are covered thus obviating any need to conduct a (k)(1) analysis, as explained above, the Court has already held as a matter of law that the scope is ambiguous.  *See* Remand Order at 1335.

To the extent that Valeo is arguing Commerce improperly considered and weighed other record information in its (k)(1) analysis to reach its conclusion that the (k)(1) sources are not dispositive as to whether Valeo's T-series aluminum sheet is covered by the *Orders*, Valeo is incorrect.  Valeo contends that the *Teal Sheets* provide clear indication for how to interpret the words "as designated by the Aluminum Association" and that Commerce unlawfully disregarded the *Teal Sheets* in making its determination and ignored the word "by" in its analysis of "as designated by the Aluminum Association."  Valeo Remand Comments at 9-10, 12.  But Commerce properly considered all record information when conducting its (k)(1) analysis and provided a thorough evaluation of the potential meaning and weight of each source.

First, Commerce explained that scope language is written in general terms.  *See* Remand Results at 40 (citing 19 C.F.R. § 351.225(a)); *see also Duferco Steel, Inc. v. United States*, 296 F.3d 1087, 1096 (Fed. Cir. 2002).  Commerce's analysis shows that Commerce did not ignore any part of the phrase "as designated by" but rather reasonably concluded that "as designated by" could have more than one meaning.  Remand Results at 39-42.  Commerce discussed that the *Teal Sheets* when taken as a whole support the conclusion that the scope covers only registered alloys, but Commerce also explained that the general meaning of the phrase "as designated by the Aluminum Association," could reasonably be interpreted as directing to the location of the alloy series definitions where one could interpret a 1XXX-series alloy as being commercial pure aluminum, a 3XXXseries alloy as having a major alloying agent of manganese, and a 5XXX-

series alloy as having a major alloying agent of magnesium.  *See* Remand Results at 41.  Thus Commerce considered that there is a more general interpretation of the term "designated by" that is a reasonable alternative interpretation.  Remand Results at 39-42.  Commerce reasonably continued to find ambiguity in the scope as identified by this Court and, as such, proceeded with a more fulsome analysis of record (k)(1) factors.

As Commerce explained in its remand redetermination, Valeo conflates disregarding evidence with finding evidence not to be dispositive.  *See* Remand Results at 101.  As explained above, Commerce did not disregard *Teal Sheets*, but rather found that the *Teal Sheets* were not dispositive as to interpretation of the phrase "as designated by."  *Id.* at 39-42.  In any event, the gravamen of Valeo's contention that Commerce "disregarded" the *Teal Sheets* appears to be that Commerce should have ended all further inquiry and review after it concluded that the *Teal Sheets* support the conclusion that the term "as designated by" covers only registered alloys, and that Commerce unlawfully considered other relevant (k)(1) sources.  Valeo's argument is both factually and legally incorrect.

First, Valeo argues that Commerce must afford primacy to evidence of industry usage when interpreting the scope, when presented with such evidence, relying on *Fedmet Resources Corporation for* support.  *See* Valeo Remand Comment at 10-11 (quoting *Fedmet Resources Corp. v. United States*, 755 F.3d 912, 921 (Fed. Cir. 2014)).  But Valeo's citation omits the following relevant sentence of the Federal Circuit's opinion in *Fedmet Resources Corporation*, which explains that the (k)(1) sources generally, not just evidence of trade usage, are afforded primacy in the scope analysis:  "But the reason why the (k)(1) sources are afforded primacy in the scope analysis is because interpretation of the language used in the orders must be based on the meaning given to that language during the underlying investigations."  *Fedmet Resources*

*Corp.*, 755 F.3d at 921.  Therefore, contrary to Valeo's argument, evidence of trade usage definition does not have primacy in Commerce's scope analysis.  Instead, Commerce must consider and weigh relevant trade usage information presented, which is precisely what Commerce did by considering and weighing the *Teal Sheets*.

Valeo also argues that Commerce failed to address that the term "designate" is used and defined in the tariff schedule.  Valeo Remand Comments at 11-12.  This is plainly wrong because Commerce squarely and clearly addressed this argument.  *See* Remand Results at 112-113.  Commerce explained that the language used in the tariff schedule in Chapter 76 statistical note 6 does not disturb its conclusion that the words "designated by" could be interpreted in a general sense.  *Id.* at 12.  Further, as stated in the scope of the *Orders*, "{a}lthough the HTSUS subheadings are provided for convenience and customs purposes, the written description of the scope of the *Orders* is dispositive."  *Id.* at 5.  Commerce also explained that Chapter 76 statistical note 6 is not an appropriate source to look at for purposes of this scope inquiry because the note is only applicable to non-clad products and only references 6XXX-series aluminum.  *Id.* at 81-82.

Commerce properly considered and weighed the sources on the record, including the *Teal Sheets* taken as a whole, in compliance with the Court's Remand Order and in accordance with law.  Commerce's determination that the scope is ambiguous is supported by substantial evidence and should be sustained.

**C.**   **Commerce Properly Considered Its Separate Rate Determination Based On Sales Of An Unregistered Alloy During The Underlying Investigations**

Valeo contends that, during the remand, Commerce's consideration of a separate rate determination from the initial investigation was unlawful.  Valeo is incorrect.  During the underlying investigations, Commerce made a separate rate determination that an exporter-

producer combination was entitled to a separate rate based on sales information showing that it had exported an unregistered alloy during the period of investigation. During the remand in this case, Commerce properly found that this determination—made at the time of the underlying investigations—was probative of the question of whether Commerce understood the scope to cover unregistered alloys at the time of the underlying investigations. Commerce therefore properly considered this separate rate analysis within the context of Commerce's (k)(1) analysis.

As a threshold matter, Valeo misunderstands Commerce's analysis. Valeo argues that Commerce improperly treated the separate rate application of the exporter-producer combination itself as an interpretive (k)(1) source and, in fact, argues that Commerce may not consider *any* determinations made during the course of the investigation. *See* Valeo Comments at 5-6. This is incorrect. Commerce did not use the separate rate application itself as an interpretive source, but, as expressly allowed by (k)(1), Commerce considered descriptions of the merchandise in the initial investigation and determinations of Commerce (including prior scope determinations) when interpreting the scope. 19 C.F.R. § 351.225(k)(1). During the initial investigation, Commerce issued a separate rate determination for an unregistered alloy with a primary alloying element corresponding to the Aluminum Association's alloy groups, and the determination that the exporter-producer combination was eligible for a separate rate demonstrates that Commerce considered the sales of unregistered alloy to be, at the time of the underlying investigation, merchandise subject to the investigation. *See* Remand Results at 43-44. In the remand redetermination, Commerce explained that it was considering the separate rate application and determination "because they related to a determination of Commerce and the description of merchandise in the AD investigation." Remand Results at 52. Thus, when interpreting the scope in this case, Commerce appropriately considered descriptions of the merchandise as contained in

10

the separate rate application and determination during the initial investigation.  19 C.F.R.

§ 351.225(k)(1); Remand Results at 52-53.  Moreover, it is relevant to the scope issue before the

Court because it provides direct evidence of Commerce's understanding of the scope during the

underlying investigations.  *See* Remand Order at 1336 (citing *Fedmet Resources Corp.*, 755 F.3d

at 921).

Valeo also contends that the separate rate determination is an invalid (k)(1) source

because it was not a publicly available document.  *See* Valeo Remand Comments at 6.  Valeo is

wrong and the case law that Valeo cites is inapposite.  First, as explained above, under (k)(1) on

remand, Commerce properly considered the description of the merchandise contained in the

separate rate determination issued during the underlying investigation.  Second, the case law that

Valeo relies on concerns mixed-media exceptions to express antidumping orders, and in both

cases, the Federal Circuit held that for Commerce to find that component merchandise that is

presumptively covered by an antidumping order is *not* subject to the order, it must rely on

publicly available sources to do so, for due process reasons.  *Star Pipe Prod. v. United States*,

981 F.3d 1067, 1074 (Fed. Cir. 2020) ("'Published guidance issued prior to the date of the

original antidumping order' may suffice to overcome the presumption that the literal language of

an antidumping order governs in mixed media cases." (citing *Mid Continent Nail Corp. v. United

States*, 725 F.3d 1295, 1304 (Fed. Cir. 2013)).  Thus, these cases do not stand for the proposition

that all (k)(1) sources must be publicly available, as Valeo contends.  Valeo Remand Comments

at 6.  Moreover, these cases are not applicable because this case does not involve a mixed-media

exception, and Commerce is not contemplating interpreting the scope contrary to its literal terms;

rather, it is interpreting ambiguous scope language.  As discussed above, the initial investigation

is uncontrovertibly allowed to be considered under the plain terms of (k)(1).

11

Valeo also contends that Commerce's separate rate determination in the underlying AD investigation is not an interpretative (k)(1) source because it does not discuss a scope issue. *See* Valeo Remand Comments at 8-9. This is also incorrect. As explained by Commerce in the remand redetermination, the meaning given to the scope language during the underlying investigations is reflected throughout the preliminary and final determinations of the AD and CVD investigations and is not limited to just scope determinations. *See* Remand Results at 104 (explaining that the parenthetical phrase within 19 C.F.R. § 351.225(k)(1), "determinations of the secretary (including prior scope determinations)," indicates that the determinations that Commerce may consider under a (k)(1) analysis are not limited to scope determinations). Thus, ascertaining the meaning given to the scope language during the underlying investigations is not limited to specific scope determinations. *Id.* Rather, the determinations made throughout the course of the underlying investigations, including separate rate determinations, may properly be taken into account in a (k)(1) analysis. *Id.* The application and Commerce's separate rate determination are indicative of Commerce's and other outside parties' understanding of the scope at the time of the investigation and was reasonably considered under (k)(1).

Moreover, Commerce's determination that the company was entitled to a separate rate weighs in favor of finding that Commerce understood the proof of sale listing an unregistered alloy to be applicable to "merchandise under consideration." In the Preliminary AD Determination, Commerce stated, "Commerce's policy is to assign all exporters of *merchandise under consideration* that are in an NME country this single rate unless an exporter can demonstrate that it is sufficiently independent so as to be entitled to a separate rate." Remand Results at 104. In the Final AD Determination, Commerce explained that it "determines whether an exporter has demonstrated an ability to control its own commercial decision-making

concerning exportation of the subject merchandise." *Id.*  Accordingly, Commerce's separate rate determinations are, in part, dependent upon the meaning Commerce gave the terms "merchandise under consideration" and "subject merchandise" during the underlying AD investigation and what parties understood those terms to mean. *Id.*  During the initial investigation, an outside party receiving a separate rate application for an unregistered alloy that has a major alloying element corresponding to the Aluminum Association's alloy groups. weighs in favor of finding that Commerce considered the scope of the orders to include unregistered alloys.  Remand Results at 44.

Finally, Valeo argues that Commerce contradicted itself, claiming that Commerce concluded that the unregistered alloy at issue in the separate rate application is not subject to the *Orders*.  *See* Valeo Remand Comments at 9.  However, Commerce's cited language is meant only to clarify that it is not making a separate scope ruling for the other company within this remand because the company is not a participant in this litigation and has not requested a scope ruling on that product.  *See* Remand Results at 108 ("Accordingly, because {the company} has not participated in a scope inquiry, it is not possible for Commerce's analysis to infer that {the specific} alloy is included within the scope of the Orders based on {the company}'s non-existent participation in a scope inquiry.").

In conclusion, Commerce properly considered the separate rate determination made during the underlying investigation indicating that Commerce and outside parties understood the scope to cover unregistered alloys for purposes of its (k)(1) analysis.

### D.    <u>Commerce Properly Conducted A (k)(2) Analysis</u>

Commerce's determination that the (k)(1) sources of information were not dispositive is supported by substantial evidence and in accordance with law.

The most important point for purposes of review of this remand is that Commerce did not find that its separate rate determination made during the underlying investigation was dispositive.  Remand Results at 44 ("{T}his (k)(1) source weighs in favor of finding that the scope includes any alloy that contains a major alloying element corresponding to the Aluminum Association's alloy groups (including unregistered alloys).").  Instead, Commerce weighed this determination against its finding that the *Teal Sheets* supports an interpretation that the scope is limited to registered alloys.  *Id.* at 46.  Commerce explained that, although the separate rate determination was initially given "greater weight" because "it reflects Commerce's interpretation of the scope at the time of the investigation," Commerce then detracted weight from the determination because the separate rate determination had limited discussion as to whether the scope covers unregistered alloys.  *Id.*  Thus, in Commerce's view, neither source was preeminent, and Commerce therefore reasonably concluded that the (k)(1) sources, after weighing, were not dispositive in resolving the scope ambiguity.  *Id.*

Notably, Commerce's conclusion included consideration of the arguments that Valeo has raised, including the concern that the separate rate determination had minimal discussion of whether the scope covers unregistered alloys.  Recognizing this limitation, Commerce found that the separate rate determination should be given less weight, even though it is record information indicating Commerce's understanding of the scope at the time of the underlying investigations.  *Id.* at 44-46.  Valeo argues that Commerce improperly weighed the evidence, but even if the Court were to find that certain evidence should have been weighed more heavily or would itself draw the conclusion that one source of information could have been found to be dispositive, that does not warrant reversing Commerce's conclusion.  *See Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 620 (1966) ("{T}he possibility of drawing two inconsistent conclusions from the

evidence does not prevent an administrative agency's finding from being supported by substantial evidence."). In the remand redetermination, Commerce considered the arguments presented by the parties as well as its own analysis and explained that it was presented with contradictory information that prevented it from resolving the scope ambiguity. Remand Results at 44-53. Commerce reasonably determined that its analysis of (k)(1) factors and other information concerning trade usage was not dispositive to resolve the ambiguity. *Id.* Commerce's determination is well-documented and presents "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. of New York v. National Labor Relations Board*, 305 U.S. 197, 229 (1938). Accordingly, Commerce's determination that the scope's ambiguity is not resolved by (k)(1) factors, and its determination to proceed to analysis under 19 C.F.R. § 351.225(k)(2), which exists squarely for the regulatory purpose of further analysis when (k)(1) sources are not dispositive, is supported by substantial evidence and should be sustained.

Valeo makes a final pass at the (k)(2) analysis, again contending that Commerce erred by considering any other record information beside the *Teal Sheets* and that Commerce must find that the *Orders* cover only registered alloys. Valeo Remand Comments at 13. As explained above, Commerce properly found that the phrase "as designated by" was ambiguous and then properly considered (k)(1) sources. Commerce also properly weighed all record information in its (k)(1) analysis. Commerce's determination that such information was not dispositive is in accordance with law and supported by substantial evidence.

Further, Valeo presents no arguments that Commerce's (k)(2) analysis and conclusion was not supported by substantial evidence and in accordance with law. Therefore, if the Court sustains Commerce's determination that the (k)(1) factors were not dispositive, the Court should

also find that Commerce's (k)(2) finding is supported by substantial evidence and in accordance with law.

E.     **Commerce Properly Determined That Valeo's T-series Aluminum Sheet Is Not Heat Treatable**

Commerce's determination that Valeo's T-series aluminum sheet is not heat treatable is based on review of record information and is supported by substantial evidence. Commerce explained in detail that, based on the definition of heat-treatment, Valeo's product is not heat-treated and non-heat-treatable. *See* Remand Results at 25-37. Based on this determination, Commerce explained that it is not necessary to further consider the question of whether the scope covers heat-treatable alloys for purposes of this scope inquiry. *Id.* at 37.

Valeo's brief has one sentence merely claiming that its T-Series sheet is heat-treatable but otherwise does not present any arguments challenging Commerce's conclusion that Valeo's T-series sheet is not heat treatable. *See* Valeo Remand Comments at 13-16. Thus, Commerce's determination that Valeo's sheet is not heat treated and non-heat-treatable is unchallenged, and it should be sustained. Moreover, Valeo's arguments that the scope covers only non-heat-treatable alloys, *id.*, also supports Commerce's conclusion that Valeo's sheet is covered by the *Orders* because Commerce determined that Valeo's sheet is not heat treated and non-heat-treatable.

Commerce provided some analysis in its Remand Results on whether the scope can include heat-treatable alloys, but Commerce made clear that, because Valeo's T-series sheet is non-heat-treatable, the question of whether a heat-treated (or heat-treatable) clad sheet can be classified as having a 3XXX-series core, and, therefore, be classified as in-scope merchandise, is moot. *Id.* at 76, 78. Commerce explained that it was providing such analysis to the extent the Court may find it helpful and necessary in response to Valeo's arguments. *Id.* Further Commerce's only conclusion with regard to heat-treatment generally was that record information

was not dispositive that the scope excludes heat-treatable sheet as defined in the Remand Results. *Id*. at 78.

Because Valeo does not present any challenge to Commerce's determination that its T-series aluminum sheet is not heat treated and non-heat-treatable, this Court should find that Commerce's determination is supported by substantial evidence. Further, this Court should find that the question of whether the scope covers heat-treatable alloys is moot.

**F.**     **Commerce's Determination Not To Revoke Its Customs Instructions Is In Accordance With Law**

Commerce lawfully determined that it must wait until after the pendency of appeals in this litigation to issue any revised customs instructions that may be warranted. *See* Remand Results at 121. Valeo argues that Commerce must revoke the customs instructions issued after the final scope ruling dated October 15, 2021, because Commerce initiated a formal scope inquiry under 19 C.F.R. § 351.225(e) on remand. *See* Valeo Remand Comments at 16-18. This argument lacks merit.

First, Commerce properly transmitted customs instructions following the final scope ruling on October 15, 2021, pursuant to 19 C.F.R. § 351.225(l)(3). Valeo contends that Commerce may not suspend entries pursuant to its affirmative final scope ruling but may only suspend liquidation following the initiation date of a scope inquiry on remand, relying on *United Steel and Fasteners*. *See* Valeo Remand Comments at 16 (citing *United Steel and Fasteners, Inc. v. United States*, 947 F.3d 794, 801 (Fed. Cir. 2020). But *United Steel and Fasteners* involved a challenge to the retroactive suspension of liquidation to the initial suspension date of entries under the order and held that Commerce may begin suspension of liquidation of the relevant entries starting on the day that the final scope ruling was issued pursuant to 19 C.F.R. § 351.225(d). *See* 947 F.3d at 800-03. Commerce has done so in this case. Although Commerce

initiated a broader scope inquiry under 19 C.F.R. § 351.225(e) on remand, that does not disturb Commerce's authority to suspend liquidation pursuant to a final scope ruling under 19 C.F.R. § 351.225(d).  Further there are no retroactivity concerns present in this proceeding because the suspension of liquidation has been implemented since the day of the final scope ruling, not some prior date before parties were aware of the scope ruling.

Valeo argues that Commerce should itself determine that the Remand Order from the Court compels Commerce to revoke its customs instructions issued in accordance with 19 C.F.R. § 351.225(l)(3).  *See* Valeo Remand Comments at 16-17.  However, no language in the Remand Order directs Commerce to revoke its customs instructions.  Moreover, the argument that Commerce has an obligation to modify customs instructions as a result of a remand order that does not provide such direction would present multiple issues beyond the scope proceeding presently before the Court.

Commerce additionally explained that Commerce's regulations support not revoking its instructions during the remand proceeding.  Pursuant to 19 C.F.R. § 351.225(l)(1) "{w}hen the Secretary conducts a scope inquiry under paragraph (b) or (e) of this section, and the product in question is already subject to suspension of liquidation, that suspension of liquidation will be continued, pending a preliminary or a final scope ruling, at the cash deposit rate that would apply if the product were ruled to be included within the scope of the order."  Therefore, the initiation of the scope inquiry under consideration would lawfully continue the suspension of liquidation that was made pursuant to 19 C.F.R. § 351.225(l)(3) as a result of the initial final scope ruling. *See* Remand Results at 121-22.

Under either rationale, Commerce's determination not to revoke its customs instructions was in accordance with law.

**CONCLUSION**

For the foregoing reasons, we respectfully request that the Court sustain Commerce's

Remand Results and enter judgment for the United States.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA MCCARTHY
Director

/s/ Reginald T. Blades Jr.
REGINALD T. BLADES JR.
Assistant Director

OF COUNSEL:                                    /s/ Alison S. Vicks
JonZachary Forbes                              ALISON S. VICKS
Attorney                                       Senior Trial Counsel
Office of the Chief Counsel                    U.S. Department of Justice
for Trade Enforcement and Compliance          Civil Division
U.S. Department of Commerce                    Commercial Litigation Branch
Washington, D.C.                               P.O. Box 480
                                               Ben Franklin Station
                                               Washington, D.C. 20044
                                               Telephone: (202) 305-7573
                                               E-mail: Alison.S.Vicks@usdoj.gov

September 20, 2023                              Attorneys for Defendant

19