## UNITED STATES COURT OF INTERNATIONAL TRADE

**BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE**

| | |
|---|---|
| VALEO NORTH AMERICA INC., | ) |
| Plaintiff, | ) |
| v. | ) Court No. 21-00581 |
| UNITED STATES, | ) |
| Defendant, | ) |
| and | ) |
| ALUMINUM ASSOCIATION COMMON ALLOY ALUMINUM SHEET TRADE ENFORCEMENT WORKING GROUP AND ITS INDIVIDUAL MEMBERS, ET AL., | ) |
| Defendant-Intervenors. | ) |

### DEFENDANT INTERVENORS' RESPONSE TO VALEO NORTH AMERICA INC.'S COMMENTS ON REMAND REDETERMINATION

                                                  **John M. Herrmann**
                                                  **Paul C. Rosenthal**
                                                  **Joshua R. Morey**
                                                  **Kelley Drye & Warren LLP**
                                                  **3050 K Street, N.W., Suite 400**
                                                  **Washington, DC 20007**
                                                  **(202) 342-8400**

                                                  **Counsel to Defendant-Intervenors**

**Dated: September 20, 2023**

Table of Contents

Page

DEFENDANT INTERVENORS' RESPONSE TO VALEO NORTH AMERICA
INC.'S COMMENTS ON REMAND REDETERMINATION ........................................................1

I.   THE DEPARTMENT REASONABLY DETERMINED THAT THE
     PHRASE "3XXX-SERIES" IS AMBIGUOUS AND LAWFULLY
     PROCEEDED TO AN EXAMINATION OF THE (K)(2) FACTORS ..............................1

     A.   This Court Has Already Held That the Scope Language Is
          Ambiguous ...........................................................................................................1

     B.   The Department's Reliance On Its Original Determination Is
          Lawful ..................................................................................................................4

     C.   The Department's Remand Redetermination Reasonably Defines
          The Term "As Designated" ..................................................................................7

II.  THE DEPARTMENT REASONABLY PROCEEDED TO A (K)(2)
     ANALYSIS, SUBSEQUENT TO DETERMINING THE (K)(1)
     ANALYSIS WAS AMBIGUOUS ....................................................................................9

III. THE PURPORTED HEAT-TREATABILITY OF T-SERIES SHEET IS
     IRRELEVANT TO THE DEPARTMENT'S SCOPE ANALYSIS ................................10

IV.  THE DEPARTMENT'S CUSTOMS INSTRUCTIONS ARE
     APPROPRIATE AND SHOULD NOT BE MODIFIED ................................................12

V.   CONCLUSION ................................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Cathedral Candle Co. v. United States ITC,
   400 F.3d 1352 (Fed. Cir. 2005).................................................................................. 6-7

Duferco Steel, Inc. v. United States,
   296 F.3d 1087 (Fed. Cir. 2002).......................................................................................3

Mid Continent Nail Corp. v. United States,
   725 F.3d 1295 (Fed. Cir. 2013)................................................................................5, 6, 8

Royal Thai Gov't v. United States,
   436 F.3d 1330 (Fed. Cir. 2006).......................................................................................6

Star Pipe Prods. v. United States,
   981 F.3d 1067 (Fed. Cir. 2020)...................................................................................5, 6

United Steel and Fasteners, Inc. v. United States,
   947 F.3d 794 (Fed. Cir. 2020)..................................................................................12, 13

Valeo N. Am., Inc. v. United States,
   610 F. Supp. 3d 1322 (Ct. Int'l Trade 2022) ...............................................................2, 7, 8

**Statutes and Regulations**

19 C.F.R. § 351.225(d) ........................................................................................................3, 6

19 C.F.R. § 351.225(e)......................................................................................................12, 13

19 C.F.R. § 351.225(k)(1)............................................................................................... passim

19 C.F.R. § 351.225(k)(2)..........................................................................................1, 5, 9, 10

**Administrative Determinations**

Common Alloy Aluminum Sheet From the People's Republic of China:
   Antidumping Duty Order, 84 Fed. Reg. 2,813
   (Dep't Commerce Feb. 8, 2019) ...............................................................................3, 8

Common Alloy Aluminum Sheet From the People's Republic of China:
 Countervailing Duty Order, 84 Fed. Reg. 2,157
 (Dep't Commerce Feb. 6, 2019) ....................................................................................3, 8

Final Results of Redetermination Pursuant to Court Remand
 (Dep't Commerce June 20, 2023) (Remand CR 31, Remand PR 51)
 (ECF No. 61) ("Remand Results") ................................................................... *passim*

## Miscellaneous

Regulations To Improve Administration and Enforcement of Antidumping and
 Countervailing Duty Laws, 86 Fed. Reg. 52,300
 (Dep't Commerce Sept. 20, 2021) ..............................................................................3

**DEFENDANT INTERVENORS' RESPONSE TO VALEO NORTH AMERICA INC.'S COMMENTS ON REMAND REDETERMINATION**

These comments, filed on behalf of the Aluminum Association Common Alloy Aluminum Sheet Trade Enforcement Working Group and its individual members[1] (collectively, "Defendant-Intervenors"), respond to comments filed on behalf of Valeo North America Inc. ("Valeo").  See Pl. Valeo N. America's Comments on Remand Redetermination (July 20, 2023) (ECF No. 66) (hereinafter, "Valeo's Cmts.").  For the reasons set forth below, the Court should sustain the U.S. Department of Commerce's ("Defendant" or "the Department") Final Results of Redetermination Pursuant to Court Remand (June 20, 2023) (Remand CR 31, Remand PR 51)[2] (ECF No. 61) (hereinafter, "Remand Results").

**I.    THE DEPARTMENT REASONABLY DETERMINED THAT THE PHRASE "3XXX-SERIES" IS AMBIGUOUS AND LAWFULLY PROCEEDED TO AN EXAMINATION OF THE (K)(2) FACTORS**

   **A.    This Court Has Already Held That the Scope Language Is Ambiguous**

As an initial matter, Valeo argues that "Commerce unlawfully claims the plain language of the scope {is} ambiguous," but faults the agency for "never indicat{ing} what words,

---

[1]    The individual members of Aluminum Association Common Alloy Aluminum Sheet Trade Enforcement Working Group are: Arconic Corporation; Commonwealth Rolled Products, Inc.; Constellium Rolled Products Ravenswood, LLC; Jupiter Aluminum Corporation; JW Aluminum Company; and Novelis Corporation.

[2]    Documents in the administrative record compiled in connection with the Remand Results are cited using the descriptions provided in the Index to the Administrative Record, filed with this Court on July 5, 2023 (ECF No. 64). Documents are cited by their confidential record number ("Remand CR __") and/or their public record number ("Remand PR __"), as appropriate. Additionally, documents in administrative record compiled in connection with the Department's original determination are cited using the descriptions provided in the Index to the Administrative Record, filed with this Court on December 22, 2021 (ECF No. 18).  These documents are cited by their confidential record number ("CR __") and/or their public record number ("PR __"), as appropriate.

precisely, it found to be ambiguous." Valeo's Cmts. at 3. Contrary to Valeo's claim, this Court held that "{t}he phrase '3XXX-series'" is

> ambiguous . . . as to whether Commerce intended the scope to cover any alloy that contains a major alloying element corresponding to the Aluminum Association's alloy groups (including unregistered alloys), or whether Commerce intended the scope to be limited to registered alloys within the enumerated series with four-digit designations assigned by the Aluminum Association.

Valeo N. Am., Inc. v. United States, 610 F. Supp. 3d 1322, 1335 (Ct. Int'l Trade 2022) (hereinafter, "Valeo v. U.S."). The Department recited the Court's holding in its Remand Results. See Remand Results, at 38, 102-103. Thus, because this Court has already held that the phrase "3XXX-series" is ambiguous, and the Department relied on the Court's holding in its Remand Results, the Court should reject Valeo's claim that Defendant failed to identify what "words, precisely" are ambiguous. Valeo's Cmts. at 3. Further, this entire litigation and the administrative proceeding below have been centered on the meaning of the phrase "3XXX-series."

For similar reasons, the Court should reject Valeo's claim that the Department's Remand Results are unlawful because the Department "miscast" the Teal Sheets "as a k(1) source rather than a definitional source" and failed "to recognize the preeminence of definitional sources above other k(1) sources." Valeo's Cmts. at 4. In holding that the plain language of the scope was ambiguous, the Court considered the plain language of the scope, all of the record evidence submitted during the initial scope segment, and determined that the phrase "3XXX-series" is ambiguous. The Court specifically analyzed the Department's and the parties' interpretations of the Teal Sheets. See Valeo v. U.S., 610 F. Supp. 3d at 1335-36. Thus, the Department's

conclusion that the Teal Sheets do not resolve the ambiguity of the plain language of the scope is consistent with the Court's analysis in its prior decision.

Additionally, Valeo's implication that the Teal Sheets carry more weight than other (k)(1) factors is wrong. See Valeo's Cmts. at 4. Valeo submitted the Teal Sheets to the Department in connection with its scope application. See Letter from Crowell & Moring LLP to Sec of Commerce Pertaining to Valeo Req. for Scope Ruling at Exhibit 3 (CR 5) (PR 14). The Department's regulations provide that the agency will issue a decision under 19 C.F.R. § 351.225(d) if the agency can make its determination "based solely upon the application and the descriptions of the merchandise referred to in paragraph (k)(1) of this section." 19 C.F.R. § 351.225(d).[3] The Department's regulations do not elevate information submitted in connection with a scope ruling application (i.e., Teal Sheets) over the sources identified under 19 C.F.R. § 351.225(k)(1). Moreover, while case law instructs that any scope analysis must begin with and have a basis in the scope language,[4] the Teal Sheets are not the scope language. Thus, the Court should reject Valeo's attempt to elevate the probative value of the Teal Sheets over other sources the Department examined in the Remand Results. See Remand Results, at 101 ("Valeo's objection to the draft results of redetermination appears less centered on Commerce's interpretation of *Teal Sheets* (*i.e.,* that *Teal Sheets* weighs in favor of finding that the scope of the

---

[3] All citations are to the 2020 edition of the Department's regulations. The Department revised its scope regulations in September 2021 with an effective date of November 4, 2021. See Regulations To Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws, 86 Fed. Reg. 52,300 (Dep't Commerce Sept. 20, 2021).

[4] See, e.g., Duferco Steel, Inc. v. United States, 296 F.3d 1087, 1095 (Fed. Cir. 2002) (finding that "the scope of orders can{not} be interpreted to cover subject merchandise even if there is no language in the orders that includes or can be reasonably interpreted to include the merchandise").

*Orders* is limited to registered alloys) and more centered on the weight given to *Teal Sheets*.") (emphasis in original).

### B. The Department's Reliance On Its Original Determination Is Lawful

Valeo argues that the Department unlawfully relied on a separate rate application as a (k)(1) source. See Valeo's Cmts. at 5-9. Valeo's argument is wrong.

First, as discussed above, this Court has already held that the plain language of the scope and the information contained in Valeo's scope application, including the Teal Sheets, do not resolve the ambiguity of whether the phrase "3XXX-series" refers to only alloys specifically registered with the Aluminum Association, or any alloy that contains manganese as a principal or major alloying element.

Second, contrary to Valeo's claim, the Department did not rely on a separate rate application as a (k)(1) source. See Valeo's Cmts. at 5 (arguing that Commerce "adopts a third party's confidential submission . . . as an alternative (k)(1) source"). Rather, the Department relied on its original determination in the antidumping investigation – a source explicitly referenced under (k)(1). See Remand Results, at 42-43 (stating "we find that *Commerce's separate rate determination* in the underlying AD investigation regarding Alcha supports the interpretation that the scope term '3XXX-series' is intended to cover any alloy that contains a major alloying element corresponding to the Aluminum Association's alloy groups (including unregistered alloys)."); 19 C.F.R. § 351.225(k)(1) (providing that "{t}he descriptions of the merchandise contained in the petition, the initial investigation, and *the determinations of the Secretary* (including prior scope determinations) and the Commission") (emphasis added). As the Department explained in the Remand Results, "Commerce's determination regarding Alcha's separate rate is included within the preliminary and final determinations of the AD investigation

-4-

on *CAAS from China*" and, therefore, is a (k)(1) source that is specifically identified in the Department's regulations. Remand Results at 103.

Third, Valeo cites to several cases for the prospect that "{t}o be a valid k(1) source," the "determination of the Secretary" must permit the public "to draw ascertainable standards from the source" and "must provide information publicly available at the time the order was issued." Valeo's Cmts. at 6-8. All of the cases Valeo cites in support of this claim, however, are inapposite. In both Mid Continent Nail[5] and Star Pipe,[6] the U.S. Court of Appeals for the Federal Circuit ("CAFC") reviewed scope rulings involving merchandise that was covered by an antidumping order's scope, but which was arguably out of scope based on the merchandise being incorporated into a larger item, i.e., a so-called "mixed media" item. See Mid Continent Nail, 725 F.3d at 1298 (stating "{t}his case presents the question of whether otherwise-subject merchandise (nails) that is packaged and imported together with non-subject merchandise (assorted household tools) as part of a so-called 'mixed media' item (a tool kit) is subject to an antidumping order"); Star Pipe, 981 F.3d at 1071 (stating "{t}his case presents the question of whether subject merchandise meeting the literal 'description' in the antidumping order can nevertheless be excluded from that order because the subject merchandise is packaged and imported together with non-subject merchandise").

Those cases are not relevant to this inquiry, which does not involve a mixed-media item. Indeed, in Star Pipe, the CAFC specifically held that because the merchandise was covered by

---

[5] Mid Continent Nail Corp. v. United States, 725 F.3d 1295, 1298 (Fed. Cir. 2013) (hereinafter, "Mid Continent Nail").

[6] Star Pipe Prods. v. United States, 981 F.3d 1067, 1071 (Fed. Cir. 2020) (hereinafter, "Star Pipe").

the scope's explicit terms, "there was no need {for the Department} to consult either the (k)(1) materials or the (k)(2) criteria in making this determination." Star Pipe, 981 F.3d 1073-74. As a result, those cases did not involve the type of analysis the Department is required to conduct here – which involves determining whether the plain language of the scope, Valeo's scope application, and the sources identified in (k)(1), are dispositive regarding scope coverage. See 19 C.F.R. § 351.225(d). The Department's analysis of its final determination granting Alcha a separate rate based on its sale of an alloy that "does not correspond with any of the registered alloys in *Teal Sheets*," therefore, is not contradicted by the CAFC's decisions in Mid Continent Nail or Star Pipe. Remand Results at 43 (emphasis in original).

Fourth, contrary to Valeo's claim that the Department's determination regarding Alcha's separate rate eligibility is not a (k)(1) source because there is no interpretative analysis of the scope, the Department correctly noted that the agency's regulations do not limit (k)(1) sources to determinations by the agency specifically discussing the scope language. See Remand Results, at 104. Section 351.225(k)(1) identifies all "*determinations of the Secretary* (including prior scope determinations)" as potential (k)(1) sources, and the regulation clearly indicates that such "determinations" are not limited to prior scope determinations, as the phase "*including* prior scope determinates" demonstrates such "prior scope determinations" cannot be comprehensive. 19 C.F.R. § 351.225(k)(1). The agency's reasonable interpretation of its own regulations is entitled to deference, and the Department's interpretation of the phrase "determinations of the Secretary (including prior scope determinations)" in the Remand Results as encompassing the agency's preliminary and final determinations is reasonable. See, e.g., Royal Thai Gov't v. United States, 436 F.3d 1330, 1340 (Fed. Cir. 2006) ("We accord substantial deference to Commerce's interpretations of its own regulations.") (quoting NSK, Ltd. v. Koyo Seiko Co., 190

F.3d 1321, 1326 (Fed. Cir. 1999); see also Cathedral Candle Co. v. United States ITC, 400 F.3d 1352, 1363 (Fed. Cir. 2005) ("{I}t is well settled that an agency's interpretation of its own regulations is entitled to broad deference from the courts.").

    **C.**    **The Department's Remand Redetermination Reasonably Defines The Term "As Designated"**

Valeo challenges the Department's definition of the term "as designated" in the Remand Results, asserting that the agency has "unlawfully define{d} the term . . . as a general term without industry-specific meaning." Valeo's Cmts. at 9-10; see also Remand Results at 40-41. Valeo's arguments should be rejected.

In addressing relevant terms of the scope definition, this Court stated "{t}he phrase '3XXX-series' is not defined by the scope except in reference to the phrase 'as designated by the Aluminum Association,' which is also undefined." Valeo v. U.S., 610 F. Supp. 3d at 1335. In seeking to interpret the meaning of these terms in the Remand Results, the Department determined that the term "3XXX-series" is "an industry-specific term defined only by the industry publication Teal Sheets," while the term "designate" is a general term. Remand Results at 40 (citing 19 C.F.R. § 351.225(a)). While Valeo asserts that the Department must account for the Teal Sheets as a whole in interpreting "designate" and "3XXX-series," it does not specify how the Department failed to meet this standard. Indeed, the Remand Results explicitly rely on the Teal Sheets to conclude that

> The term "designate" could be understood not to refer only to registered alloys with a four-digit designation from the Aluminum Association but, rather, any alloy with a primary alloying element corresponding to the alloy series (e.g., "3XXX-series alloys" meaning any alloy with a primary alloying element of manganese regardless of registration).

Remand Results at 41; see also Remand Results at 39-40 (addressing alloy series identified in the Teal Sheets). Thus, the Department's analysis in the Remand Results is consistent with this Court's finding that the agency's earlier analysis "fails to account for the Teal Sheets as a whole." Valeo v. U.S., 610 F. Supp. 3d at 1335; see also Valeo's Cmts. at 10.

Even more flawed, however, is Valeo's argument that the Remand Results "fails to address that the term 'designate' is used and defined in the tariff schedule." Valeo's Cmts. at 11. Specifically, Valeo asserts that statistical note 6 to Chapter 76 of the Harmonized Tariff Schedule of the United States ("HTSUS") demonstrates that the term "designate" "carries significance in the industry and trade of aluminum alloys." Id. Unstated in Valeo's argument, however, is that the statistical note it references was not included in the HTSUS in 2017 when the Department was conducting its original investigation. Indeed, the statistical note identified by Valeo was not added to the HTSUS until Revision 8 of the 2019 version of the HTSUS, which was issued by the U.S. International Trade Commission on July 2, 2019 – approximately five months after the Department published the antidumping and countervailing duty orders on common alloy aluminum sheet from China.[7] As such, the statistical note identified by Valeo is irrelevant to Commerce's the meaning of the scope definition at the time of Commerce's investigation. See Valeo v. U.S., 610 F. Supp. 3d at 1336 (citing Mid Continent Nail Corp. v. United States, 725 F.3d 1295, 1303-04 (Fed. Cir. 2013) for the proposition that scope-related comments by a party are irrelevant under 19 C.F.R. § 351.225(k)(1) where "Commerce did not address the comments during the investigation"); see also Valeo's Cmts. at 15-16 ("Moreover,

---

7   See Common Alloy Aluminum Sheet From the People's Republic of China: Countervailing Duty Order, 84 Fed. Reg. 2,157 (Dep't Commerce Feb. 6, 2019); Common Alloy Aluminum Sheet From the People's Republic of China: Antidumping Duty Order, 84 Fed. Reg. 2,813 (Dep't Commerce Feb. 8, 2019).

the scope language of the <u>CAAS from Italy, et al.</u> orders is not a valid k(1) source for analyzing the intention of Commerce and the Domestic Industry at the time of the China CAAS investigations.").

Further, even if the language in statistical note 6 highlighted by Valeo were to be considered, that language is distinguishable from the language in the scope definition at issue in this action. Specifically, the language identified by Valeo addresses alloys "designated as series 6xxx in the Aluminum Association's specifications *of registered alloys*." Valeo's Cmts. at 11 (emphasis added). In contrast, the language in the scope definition contains no reference to "registered alloys." Indeed, if industry usage of the term "designated" truly had the meaning that Valeo seeks to attribute to it, there would be no need to include explicit language in statistical note 6 providing that the reference to 6xxx-series alloys refers to registered alloys.

\* \* \*

In sum, the Department reasonably concluded – as did this Court – that the meaning of the phrase "3XXX-series" is ambiguous – and neither Valeo's scope application, nor consideration of the (k)(1) factors, resolved the ambiguity. As a result, the Department lawfully conducted an analysis of the factors identified in 19 C.F.R. § 351.225(k)(2) and reasonably concluded evidence concerning those (k)(2) factors demonstrates Valeo's brazing sheet imports are subject merchandise.

## II. THE DEPARTMENT REASONABLY PROCEEDED TO A (K)(2) ANALYSIS, SUBSEQUENT TO DETERMINING THE (K)(1) ANALYSIS WAS AMBIGUOUS

Valeo asserts that the Teal Sheets are the "only lawful interpretative source" of the scope definition, and because there are no competing (k)(1) sources, the Department's undertaking a (k)(2) analysis is prohibited. <u>See</u> Valeo's Cmts. at 13. Valeo's entire argument, however, is

premised on its assertion that there is no available (k)(1) source other than the Teal Sheets.  See id.  For the reasons discussed in the Remand Results as well as above in Section I of these comments, however, Valeo's argument ignores the Department's determination to grant Alcha a separate rate application, and, equally importantly, reflects Alcha's and the Department's understanding that the product it exported to the United States (and that served as the basis for its application for a separate rate) involved in-scope merchandise despite being an unregistered alloy.  As such, Valeo's argument that the Department impermissibly proceeded to conducting a (k)(2) analysis after determining that the (k)(1) sources are not dispositive in resolving the ambiguity in the scope language[8] should be rejected.

### III. THE PURPORTED HEAT-TREATABILITY OF T-SERIES SHEET IS IRRELEVANT TO THE DEPARTMENT'S SCOPE ANALYSIS

Valeo asserts that the core layer used to manufacture T-series sheet is "heat-treatable" and claims this is relevant because 3XXX-series alloys are non-heat-treatable.  See, e.g., Valeo's Cmts. at 13.  Valeo's argument, however, relies on a conflation of the terms "anneal" and "heat-treatable" – and substantial record evidence demonstrates that T-series sheet is not solution-heat-treated.  As such, Valeo's argument that the core of T-series sheet is not manufactured from a 3XXX-series alloy fails.

First, it bears repeating that substantial record evidence demonstrates – and no party contests – that the Aluminum Association defines the various alloy series by the principal alloying element – in other words, by the elemental composition of the finished product.  See, e.g., Remand Results at 39-40.  Further, substantial record evidence demonstrates that the Aluminum Association defines 3XXX-series alloys as those aluminum alloys having manganese

---

[8]   See Remand Results at 53.

as the principal alloying element. See, e.g., id. Further, Valeo has acknowledged that the principal alloying element contained in the core of T-series sheet is manganese. See, e.g., Remand Results at 9, 40 (addressing statements by Valeo that the major alloying element of the core of T-series sheet is manganese). As such, based on its chemistry – the defining characteristic in classifying an aluminum alloy – the core of T-series sheet is a 3XXX-series alloy.

Valeo, however, seeks to undermine such a conclusion by asserting that the core layer used in T-series sheet is heat-treatable – and, thus, cannot be considered a 3XXX-series alloy because such alloys are not heat-treatable. See, e.g., Valeo's Cmts. at 13. As explained in extensive detail in the Remand Results, however, while Valeo asserts that the core layer of T-series sheet is heat-treatable, the Department properly concluded that:

> {t}he evidence on the record is insufficient to demonstrate that Valeo's product undergoes solution heat-treatment. Rather, we find the evidence on the record demonstrates that Valeo's T-series sheet is a clad product that undergoes a combination of annealing and cold-working.

Remand Results at 54 (referencing Remand Results at 21-37 (addressing "Relevance of Heat-Treatment")).

While the Department's analysis in the Remand Results is far too extensive and detailed to summarize in these comments, one point supporting the Department's determination that the core of T-series sheet is not solution heat treatable bears emphasis. Specifically, information placed on the record by Valeo demonstrates that T-series sheet is made available in "O" and "H24" tempers – designations that are reflective of products that have undergone annealing. See Remand Results at 88. In contrast, however, the temper designations of products that have undergone solution heat treatment are "W," "T3," "T4," "T6," "T7," "T8," or "T9." See id.

Accordingly, for these reasons and the additional reasons addressed at length in the <u>Remand Results</u>, the Department's rejection of Valeo's claims that the core layer of T-series sheet is something other than a 3XXX-series alloy because it is "heat treatable" should be affirmed.

**IV.     THE DEPARTMENT'S CUSTOMS INSTRUCTIONS ARE APPROPRIATE AND SHOULD NOT BE MODIFIED**

Valeo also asserts that the Department must revoke the instructions issued to U.S. Customs and Border Protection subsequent to its final scope ruling on October 15, 2021.  <u>See</u> Valeo's Cmts. at 16-18.  The premise underlying Valeo's argument is that because the Department initiated a broader scope inquiry under 19 C.F.R. § 351.225(e) on remand, and because the United States Court of Appeals for the Federal Circuit has issued a decision holding that the Department's regulations only allow it to issue Customs instructions when a scope inquiry has been initiated, the Department's suspension of liquidation of Valeo's entries prior to February 15, 2023 is unlawful.  <u>See</u> <u>id.</u> at 16 (citing <u>United Steel and Fasteners, Inc. v. United States</u>, 947 F.3d 794, 801 (Fed. Cir. 2020)).  Valeo's argument should be rejected.

As addressed in the <u>Remand Results</u>, Valeo's reliance on <u>United Steel and Fasteners</u> is flawed because that action involved a challenge to the suspension of liquidation retroactive to the initial date of the suspension of liquidation under the underlying order.  <u>See</u> <u>Remand Results</u> at 121.  That circumstance, however, is not relevant here.  Rather, Commerce's Customs instructions – consistent with the holding of <u>United Steel and Fasteners</u> – suspended liquidation of the relevant entries starting on the day the final scope ruling was issued.  <u>See</u> <u>id.</u>

Valeo identifies no authority for the proposition that Commerce may not continue to suspend liquidation pursuant to a final scope ruling, where it initiates a broader scope inquiry on remand pursuant to 19 C.F.R. § 351.225(e) of merchandise that has already been finally

determined to fall within an order's scope. Nor does Valeo rebut the provision in the Department's regulations providing that when a scope inquiry is conducted pursuant to 19 C.F.R. § 351.225(e), and the product at issue in the scope inquiry is already subject to the suspension of liquidation, the suspension of liquidation will be continued pending a preliminary or final scope ruling. See Remand Results at 121 (quoting 19 C.F.R. § 351.225(k)(1)). Accordingly, because Valeo's arguments fail to account for the significance of the Department's suspension of liquidation in connection with the Final Scope Ruling, and because its reliance on United Steel and Fasteners is inappropriate given the circumstances at issue in this action, the Court should reject Valeo's arguments that the Department must revoke its prior instructions to U.S. Customs and Border Protection.

## V.   CONCLUSION

For the reasons stated above, Defendant-Intervenors urge this Court to affirm the Remand Results in their entirety.

Respectfully submitted,

*/s/ John M. Herrmann*

JOHN M. HERRMANN
PAUL C. ROSENTHAL
JOSHUA R. MOREY

Counsel to Defendant-Intervenors

Dated: September 20, 2023

# CERTIFICATE OF COMPLIANCE
# WITH COURT OF INTERNATIONAL TRADE
# STANDARD CHAMBERS PROCEDURES

Pursuant to the Court of International Trade Standard Chambers procedures, and the U.S. Court of International Trade's ("CIT") decision in <u>Valeo N. Am., Inc. v. United States</u>, 610 F. Supp. 3d 1322, 1343 (Ct. Int'l Trade 2022) (ECF No. 47) setting the word limitation for comments on Remand to 5,000 words, counsel to Defendant-Intervenors Aluminum Association Common Alloy Aluminum Sheet Trade Enforcement Working Group and its individual members (Arconic Corporation; Commonwealth Rolled Products, Inc.; Constellium Rolled Products Ravenswood, LLC; Jupiter Aluminum Corporation; JW Aluminum Company; and Novelis Corporation) (collectively, "Defendant-Intervenors"), certifies that these Comments in Support of the U.S. Department of Commerce's <u>Final Results of Redetermination Pursuant to Court Remand</u> (June 20, 2023) (Remand CR 31, Remand PR 51) (ECF No. 61), contain 3,916 words, including footnotes. The word count certification is made in reliance on the word-count feature contained in Microsoft Word Office 2013.

Respectfully submitted,

<u>/s/ John M. Herrmann</u>
JOHN M. HERRMANN
PAUL C. ROSENTHAL
JOSHUA R. MOREY
KELLEY DRYE & WARREN LLP
3050 K Street, NW, Suite 400
Washington, DC 20007
(202) 342-8400

Counsel to Defendant-Intervenors

Dated: September 20, 2023